## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., <br><br> Plaintiff, <br><br> v. <br><br> RELIANT ENERGY, INC.; RELIANT ENERGY RETAIL SERVICES, LLC; PEPCO HOLDINGS, INC.; PHI SERVICE COMPANY; DELMARVA POWER & LIGHT COMPANY; DUKE ENERGY CORPORATION; CINERGY CORP., <br><br> Defendants. | CASE NO.: 1:06-CV-00543 (GMS) <br><br><br> **DEMAND FOR JURY TRIAL** |

## DEFENDANTS PEPCO HOLDINGS, INC., PHI SERVICE COMPANY, AND DELMARVA POWER & LIGHT COMPANY'S ANSWER AND COUNTERCLAIM

Defendants Pepco Holdings, Inc., PHI Service Company, and Delmarva Power & Light Company (hereinafter collectively referred to as "PHI"), pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, respond to Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement (hereinafter "Complaint") as follows:

### ANSWER

### FIRST DEFENSE

### THE PARTIES

1.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 1 of the Complaint, and as such denies the allegations contained therein.

2.      PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 2 of the Complaint, and as such denies the allegations contained therein.

3.      PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 3 of the Complaint, and as such denies the allegations contained therein.

4.      PHI admits the allegations set forth in Paragraph 4 of the Complaint.

5.      PHI admits the allegations set forth in Paragraph 5 of the Complaint.

6.      PHI admits the allegations set forth in Paragraph 6 of the Complaint.

7.      PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 7 of the Complaint, and as such denies the allegations contained therein.

8.      PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 8 of the Complaint, and as such denies the allegations contained therein.

## JURISDICTION AND VENUE

9.  PHI admits the allegations set forth in Paragraph 9 of the Complaint.

10. PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 10 of the Complaint, and as such denies the allegations contained therein.

11.     PHI admits that Pepco Holdings, Inc., PHI Service Company, and Delmarva Power & Light Company are Delaware corporations.  PHI denies the rest of the allegations set forth in Paragraph 11 of the Complaint.

12.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 12 of the Complaint, and as such denies the allegations contained therein.

13.    PHI denies the allegations set forth in Paragraph 13 of the Complaint.

## BACKGROUND

14.    PHI denies the allegations set forth in Paragraph 14 of the Complaint.

15.    PHI denies the allegations set forth in Paragraph 15 of the Complaint.

16.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 16 of the Complaint, and as such denies the allegations contained therein.

17.    PHI denies the allegations set forth in Paragraph 17 of the Complaint.

18.    PHI admits that a patent issued on December 20, 1988.  PHI denies all remaining allegations set forth in Paragraph 18 of the Complaint.

19.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 19 of the Complaint, and as such denies the allegations contained therein.

20.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 20 of the Complaint, and as such denies the allegations contained therein.

21.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 21 of the Complaint, and as such denies the allegations contained therein.

22.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 22 of the Complaint, and as such denies the allegations contained therein.

23.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 23 of the Complaint, and as such denies the allegations contained therein.

24.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 24 of the Complaint, and as such denies the allegations contained therein.

25.     PHI denies the allegations set forth in Paragraph 25 of the Complaint.

## THE ASSERTED PATENTS

26.     PHI admits that United States Patent No. 4,792,968 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 26 of the Complaint.

27.     PHI admits that United States Patent No. 4,930,150 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 27 of the Complaint.

28.     PHI admits that United States Patent No. 5,128,984 was issued. PHI denies all remaining allegations set forth in Paragraph 28 of the Complaint.

29.     PHI admits that United States Patent No. 5,251,252 was issued. PHI denies all remaining allegations set forth in Paragraph 29 of the Complaint.

30.    PHI admits that United States Patent No. 5,351,285 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 30 of the Complaint.

31.    PHI admits that United States Patent No. 5,684,863 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 31 of the Complaint.

32.    PHI admits that United States Patent No. 5,815,551 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 32 of the Complaint.

33.    PHI admits that United States Patent No. 5,828,734 was issued.  PHI denies all remaining allegations set forth in Paragraph 33 of the Complaint.

34.    PHI admits that United States Patent No. 5,898,762 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 34 of the Complaint.

35.    PHI admits that United States Patent No. 5,917,893 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 35 of the Complaint.

36.    PHI admits that United States Patent No. 5,974,120 was issued.  PHI denies all remaining allegations set forth in Paragraph 36 of the Complaint.

37.    PHI admits that United States Patent No. 6,148,065 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 37 of the Complaint.

38.    PHI admits that United States Patent No. 6,335,965 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 38 of the Complaint.

39.    PHI admits that United States Patent No. 6,349,134 was issued and is currently expired. PHI denies all remaining allegations set forth in Paragraph 39 of the Complaint.

40.     PHI admits that United States Patent No. 6,424,703 was issued and is currently expired.  PHI denies all remaining allegations set forth in Paragraph 40 of the Complaint.

41.     PHI admits that United States Patent No. 6,434,223 was issued and is currently expired.  PHI denies all remaining allegations set forth in Paragraph 41 of the Complaint.

42.     PHI admits that United States Patent No. 6,512,415 was issued and is currently expired.  PHI denies all remaining allegations set forth in Paragraph 42 of the Complaint.

43.     PHI admits that United States Patent No. 6,678,360 was issued and is currently expired.  PHI denies all remaining allegations set forth in Paragraph 43 of the Complaint.

## FIRST CLAIM
### (PATENT INFRINGEMENT BY RELIANT DEFENDANTS)

44.     PHI incorporates by reference, Paragraphs 1 through 43 as if fully set forth herein.

45.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 45 of the Complaint, and as such denies the allegations contained therein.

46.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 46 of the Complaint, and as such denies the allegations contained therein.

47.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 47 of the Complaint, and as such denies the allegations contained therein.

48.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 48 of the Complaint, and as such denies the allegations contained therein.

49.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 49 of the Complaint, and as such denies the allegations contained therein.

50.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 50 of the Complaint, and as such denies the allegations contained therein.

51.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 51 of the Complaint, and as such denies the allegations contained therein.

## SECOND CLAIM
## (PATENT INFRINGEMENT BY PEPCO DEFENDANTS)

52.     PHI incorporates by reference, Paragraphs 1 through 51 as if fully set forth herein.

53.     PHI denies the allegations set forth in Paragraph 53 of the Complaint.

54.     PHI denies the allegations set forth in Paragraph 54 of the Complaint.

55.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 55 of the Complaint, and as such denies the allegations contained therein.

56.     PHI denies the allegations set forth in Paragraph 56 of the Complaint.

57.     PHI denies the allegations set forth in Paragraph 57 of the Complaint.

58.     PHI denies the allegations set forth in Paragraph 58 of the Complaint.

59.    PHI denies the allegations set forth in Paragraph 59 of the Complaint.

## THIRD CLAIM
### (PATENT INFRINGEMENT BY DUKE ENERGY DEFENDANTS)

60.    PHI incorporates by reference, Paragraphs 1 through 59 as if fully set forth herein.

61.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 61 of the Complaint, and as such denies the allegations contained therein.

62.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 62 of the Complaint, and as such denies the allegations contained therein.

63.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 63 of the Complaint, and as such denies the allegations contained therein.

64.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 64 of the Complaint, and as such denies the allegations contained therein.

65.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 65 of the Complaint, and as such denies the allegations contained therein.

66.    PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 66 of the Complaint, and as such denies the allegations contained therein.

67.     PHI is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph 67 of the Complaint, and as such denies the allegations contained therein.

### SECOND DEFENSE
### (Failure to State Claim)

68.     The Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE
### (Non-Infringement)

69.     PHI does not infringe, and has not infringed, either directly or indirectly, any of the '065, '120, '134, '150, '223, '252, '285, '360, '415, '551, '703, '734, '863, '893, '965, '968 and '984 patents ("Asserted Patents").

### FOURTH DEFENSE
### (Invalidity under 35 U.S.C. §§ 101, 102, 103 and 112)

70.     The Asserted Patents are invalid or unenforceable, or both, for failure to comply with one or more provisions of the patent laws and regulations of the United States set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

### FIFTH DEFENSE
### (Patent Misuse)

71.     Plaintiff's claims against PHI are barred by the doctrine of patent misuse.

### SIXTH DEFENSE
### (Statute of Limitations)

72.     Plaintiff's claims against PHI are barred under the applicable statute of limitations.

### SEVENTH DEFENSE
### (Estoppel)

73.     Plaintiff's claims against PHI are barred by the doctrine of estoppel.

## EIGTH DEFENSE
### (Laches)

74.     Plaintiff's claims against PHI are barred in whole or in part by laches.


## NINTH DEFENSE
### (Prosecution Laches)

75.     Plaintiff's claims against PHI are barred by the doctrine of prosecution laches.


## TENTH DEFENSE
### (Prosecution History Estoppel)

76.     Plaintiff's claims against PHI are barred by the doctrine of prosecution history estoppel.

## ELEVENTH DEFENSE
### (Failure to Name all Proper Inventors)

77.     The Asserted Patents are invalid due to Plaintiff's failure to name all proper inventors.


## TWELFTH DEFENSE
### (Inequitable Conduct)

78.     Upon information and belief, the Asserted Patents are unenforceable in whole or in part due to inequitable conduct committed before the United States Patent and Trademark Office (PTO) during the prosecution of the applications that issued as the Asserted Patents and/or related applications.


79.     Upon information and belief, during the prosecution of the applications that ultimately led to the issuance of the Asserted Patents or the applications upon which priority is claimed, Plaintiff, prior assignees of some of the Asserted Patents, the named inventor, Ronald A. Katz, and/or their attorneys and appointed representatives (hereinafter collectively referred to as "Katz") committed inequitable conduct by failing to comply with the duty of candor in the PTO.

80.    Upon information and belief, Katz breached the duty of candor by intentionally withholding material information from the PTO regarding prior art as well as making false and misleading statements to the PTO regarding prior art.

### I.    The Withholding of Material Information

### A.    The Periphonics References

81.    Upon information and belief, Katz intentionally withheld from the Patent and Trademark Office highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled.

82.    Upon information and belief, in April of 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.,* CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").

83.    Upon information and belief, the Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, including those which would later issue as the Asserted Patents.

84.    Upon information and belief, included in the West materials were a number of Periphonics references, including 1)  Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (Bates numbers W73055-W73095) and 2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (Bates numbers W73219-W73302).

85.    Upon information and belief, both the Bank-From-Home reference and VoicePac reference are highly relevant and material to many claims of the Asserted Patents.  The Bank-From-Home reference describes such limitations of claims of the Asserted Patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and

designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of the Asserted Patents as interfacing callers to the system and transferring callers to a customer service representative.

86.     Upon information and belief, during the prosecution of U.S. Patent Application No. 08/306,456, which ultimately issued as the '965 patent, Katz stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

87.     Upon information and belief, Katz made the same statements in at least those applications that later issued as the '285 patent, '893 patent, and U.S. Patent No. 5,561,707 ("the '707 patent").

88.     Upon information and belief, at least the applications for the '863 and '551 patents refer the examiner to the references disclosed during the prosecution of the '707 patent.

89.     Upon information and belief, while other references in the West materials were submitted to the PTO during prosecution of the '707, '965, '285, '893, '863, and '551 patents, the Bank-From-Home and VoicePac references were withheld despite knowledge of their materiality.

90.     Upon information and belief, at least the '134, '065, and '360 patents have specifications substantially identical to those of the '707, '863, and '551 patents, and contain claims with subject matter that was at issue during the prosecution of the '707, '863, and '551 patents.

91.    Katz's failure to disclose this material prior art during the prosecution of the '707, '965, '285, '893, '863, and '551 patents was a violation of the duty of candor owed to the PTO, and constitutes inequitable conduct.

92.    Due to the inequitable conduct that occurred during the prosecution of the '707, '965, '285, '893, '863, and '551 patents, at least the '134, '065, and '360 patents are also rendered unenforceable through infectious unenforceability.

93.    Due to the inequitable conduct that occurred during the prosecution of their respective applications, at least the '965, '285, '893, '863, '551, '134, '065, and '360 patents are rendered unenforceable.

**B.    The Barger Reference**

94.    Upon information and belief, Katz committed inequitable conduct in failing to disclose U.S. Patent No. 4, 071,698 to Barger, Jr. et al (the "Barger patent") to the PTO during the prosecution of many of the Asserted Patents as well as applications that some of the Asserted Patents claim priority to.

95.    The Barger patent was filed on January 10, 1977, eight years before Katz's first application.

96.    The Barger patent teaches an interactive voice system for marketing merchandise, and is material because it discloses many features relevant to Katz's claims in many of the Asserted Patents.  These include the storing of data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

97.    Upon information and belief, Katz became aware of the Barger patent and its materiality in December 1988, when the European Patent Office sent to Katz's European patent attorney a search report for one of Katz's corresponding European patent applications.  This search report identified the Barger patent as being "particularly relevant" to Katz's application.

98.    Upon information and belief, despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the Barger patent to the PTO during the prosecution of at least the '984, '150, '285, and '965 patents, as well as during the substantive prosecution of at least the '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents.

99.    Upon information and belief, Katz withheld the disclosure of the Barger patent with intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '984, '150, '285, '965, '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents unenforceable.

### C.    The DeBruyn Reference

100.    Upon information and belief, Katz committed inequitable conduct in failing to disclose European Patent Specification No. 0032410 to DeBruyn ("the DeBruyn patent"), to the PTO during the prosecution of many of the Asserted Patents as well as applications that some of the Asserted Patents claim priority to.

101.    Upon information and belief, the DeBruyn Patent was published July 22, 1981, and discloses an interactive voice system for implementing a lottery.

102.    Upon information and belief, the DeBruyn patent is material because it discloses many features relevant to Katz's claims, including receiving the caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

103.    Upon information and belief, Katz became aware of the DeBruyn patent and its materiality in December 1988, when the European Patent Office sent to Katz's European patent attorney a search report for one of Katz's corresponding European patent applications, the same search report that disclosed the Barger Patent.  This search report also identified the DeBruyn patent as being "particularly relevant" to Katz's application.

104.    Upon information and belief, despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the DeBruyn patent to the PTO during the prosecution of at least the '150, '252, '863 and '984 patents, as well as during the substantive prosecution of at least the '285, '893, '551, '065, '360, '734, '120, '223, and '965 patents.

105.    Upon information and belief, Katz withheld the disclosure of the DeBruyn patent with an intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '150, '252, '863, '984, '285, '893, '551, '065, '360, '734, '120, '223, and '965 patents unenforceable.

**D.    The Katz PCT Reference**

106.    Upon information and belief, Katz failed to disclose the publication of PCT application WO 87/00375 ("the '375 application") during the prosecution of U.S. Patent No. 4,845,739 ("the '739 patent").

107.    Upon information and belief, the '375 application was published on January 15, 1987, and is therefore considered prior art for any claims with a filing date more than a year after the publication date.

108.    Upon information and belief, because the '739 patent was filed on May 16, 1988, the '375 application constitutes prior art to all claims that incorporated any new subject matter added in the '739 application.

109.    Upon information and belief, the published '375 application is material information because it would have been relevant to many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

110.    Upon information and belief, despite knowledge of the '375 patent and its materiality, Katz did not disclose the '375 application to the patent examiner during the prosecution of the '739 patent.

111.    Katz's failure to disclose this material prior art was a violation of the duty of candor owed to the PTO, and constitutes inequitable conduct.

112.    Upon information and belief, many of the Asserted Patents contain claims with subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant.

113.    Upon information and belief, the '739 patent is strongly related to the '893, '863, '551, '065, '360, and '134 patents, so much so that Katz has disclaimed for each of the '893, '863, '551, '065, '360, and '134 patents any patent term subsequent to the patent term of the '739 patent.

114.    Due to the inequitable conduct that occurred during the prosecution of the '739 patent, at least the '739, '893, '863, '551, '065, '360, and '134 patents are rendered unenforceable.

## II.    False and Misleading Statements

115.    Upon information and belief, Katz made false and misleading statements to the PTO regarding the priority dates to which the claims of pending applications were entitled.

116.    Upon information and belief, Katz made these false and misleading statements with the intent to prevent certain references from being considered prior art to Katz's pending applications.

### A.    Statements Regarding International Application 87/00375

117.    Upon information and belief, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz falsely stated that "the international application [87/00375] is not properly a reference against the present case."

118.    Upon information and belief, this assertion is false because international application 87/00375 was filed more than a year prior to the filing of the '734 patent.  Contrary to Katz's statement, international application 87/00375 is a prior art reference to any new matter claimed in the '734 patent, which was based on a continuation-in-part application.

119.    Upon information and belief, Katz's statement was knowingly false and was made with the intent to deceive the PTO into issuing patent claims of a scope beyond any to which Katz was entitled in the '984 patent, and constituted inequitable conduct.

120.    The inequitable conduct committed by Katz during the prosecution of the '984 patent renders at least the '984, and '734 patents unenforceable, as well as the '223 patent, which is closely related to the '984 patent.

### B.    Statements Regarding the Brown Patent

121.    Upon information and belief, Katz made false and misleading statements during the prosecution of the '734 patent with respect to U.S. Patent No. 4,972, 461, issued to Brown ("the Brown patent").

122.    Upon information and belief, during prosecution of the '734 patent, Katz identified the Brown Patent to the PTO, but stated in an amendment "the Brown patent has an issue date of November 20, 1990, and a filing date of September 20, 1989.  It should be noted that the present application ultimately claims priority from Applicant's parent patent U.S. Patent No. 4,930,150 ("the '150 patent"), which predates the Brown patent with respect to disclosure of alternate access possibilities (e.g., "800" or "900")."

123.    Upon information and belief, the reference parent patent, the '150 patent, does not contain any disclosure of the multiple call modes as claimed in the '734 patent, and, therefore, could not be used to predate the Brown patent for that claimed subject matter in the '734 patent.

124.    Upon information and belief, therefore, Katz knowingly, falsely claimed priority to parent application in order to antedate the Brown patent.

125.    The inequitable conduct committed by Katz during the prosecution of the '734 patent renders at least the '734 patent unenforceable, as well as the '120 and '223 patents, which claim priority to the '734 patent.

### C.    Statements Regarding the Hester Reference

126.    Upon information and belief, during prosecution of the '734 patent, Katz made a false and misleading statement about a prior art reference by Hester ("the Hester reference").

127.    Katz stated to the patent examiner that "the reference by Hester bears a date of 1985, apparently 'September.'  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."

128.    Upon information and belief, this statement is false because the parent application that Katz referenced does not disclose toll free calls and does not disclose 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such  limitations are entitled to claim priority to that parent application's filing date.

129.    Upon information and belief, Katz knowingly and falsely claimed priority to the parent application in order to deceive the PTO into antedating the Hester reference.

130.    The inequitable conduct committed by Katz during the prosecution of the '734 patent with regards to the Hester reference renders at least the '734 patent unenforceable.

**D.     Statements Regarding the Kaplan Patent**

131.     Upon information and belief, during prosecution of the '734 patent Katz also made false statements about his pending application with respect to U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent").

132.     Upon information and belief, the Kaplan patent was filed on August 4, 1987 and is prior art to the '734 patent.

133.     Upon information and belief, Katz falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference."

134.     Upon information and belief, this statement is false because at the time it was made there were claims in Katz's application that contained new subject matter, and were therefore not entitled to an earlier priority date.

135.     Upon information and belief, Katz knowingly and falsely claimed an earlier priority date in order to deceive the PTO into antedating the Kaplan patent.

136.     Upon information and belief, Katz violated the duty of good faith and candor by making the foregoing false and misleading statements.

137.     Upon information and belief, these false and misleading statements were made to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '734, '120, and '223 patents unenforceable.

138.     Upon information and belief, Katz's inequitable conduct was repeated during the prosecution of other applications leading to the Asserted Patents and infected either directly or indirectly all of the applications, and thereby rendered all of the Asserted Patents unenforceable in their entirety.

**WHEREFORE,** PHI respectfully requests that the Court dismiss the Complaint with prejudice, enter judgment in PHI's favor, and award to PHI the costs, including reasonable attorneys' fees, it incurred in responding to the Complaint.

## PHI'S COUNTERCLAIMS AGAINST PLAINTIFF FOR DECLARATORY JUDGMENT

Defendants/Counterclaimants PHI Holdings, Inc., PHI Service Company, and Delmarva Power & Light Company (hereinafter collectively referred to as "PHI"), pursuant to Rule 13 of the Federal Rules of Civil Procedure, assert the following counterclaims against Plaintiff/Counterclaim Defendant Ronald A. Katz Technology Licensing, L.P.:

1.      PHI Holdings, Inc. is a Delaware corporation with its principal place of business at 701 Ninth Street, Northwest, Washington, District of Columbia 20068.

2.      PHI Service Company is a Delaware corporation with its principal place of business at 701 Ninth Street, Northwest, Washington, District of Columbia 20068.

3.      Delmarva Power & Light Company is a Delaware corporation with its principal place of business at 800 King Street, Wilmington, Delaware 19899.

4.      Both PHI Service Company and Delmarva Power & Light Company are subsidiaries of PHI Holdings, Inc.

5.      On information and belief, Ronald A. Katz Technology Licensing, L.P. is a limited partnership organized under the laws of the State of California, and having a principal place of business at 9220 Sunset Blvd., Suite 315, Los Angeles, California 90069.

6.      These counterclaims arise under the laws of the United States, 35 U.S.C. § 100, *et seq.* and the declaratory judgment provisions of 28 U.S.C. §§ 2201 and 2202.

7.    As a result of the actions and statements of Plaintiff, an actual controversy now exists between the parties regarding the invalidity and unenforceability of U.S. Patent Nos. 6,148,065 ("the '065 patent"); 5,974,120 ("the '120 patent"); 6,349,134 ("the '134 patent"); 4,930,150 ("the '150 patent"); 6,434,223 ("the '223 patent"); 5,251,252 ("the '252 patent"); 5,351,285 ("the '285 patent"); 6,678,360 ("the '360 patent"); 6,512,415 ("the '415 patent"); 5,815,551 ("the '551 patent"); 6,424,703 ("the '703 patent"); 5,828,734 ("the '734 patent"); 5,684,863 ("the '863 patent"); 5,917,893 ("the '893 patent"); 6,335,965 ("the '965 patent"); 4,792,968 ("the '968 patent"); and 5,128,984 ("the '984 patent"), which are hereafter collectively referred to as the "Asserted Patents."

8.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§1331, 1338, and 2201.

9.    This Court has personal jurisdiction over Plaintiff because Plaintiff has consented to the jurisdiction of this Court by filing suit herein.

10.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400, and because Plaintiff has filed this action in this district.

## COUNT 1
## (DECLARATION OF NON-INFRINGEMENT)

11.    PHI realleges and incorporates by reference Paragraphs 1 through 7 as though fully incorporated herein.

12.    Plaintiff has alleged that PHI has infringed the Asserted Patents.

13.    PHI has not directly or indirectly infringed, induced infringement of, or contributed to the infringement of any claim of the Asserted Patents.

14.    There is a justiciable controversy between Plaintiff and PHI as to the allegations of infringement.

15.     PHI is entitled to a declaratory judgment from this Court that it does not infringe any claim of the Asserted Patents.

## COUNT II
## (DECLARATION OF INVALIDITY)

16.     PHI realleges and incorporates by reference Paragraphs 1 through 15 as though fully incorporated herein.

17.     The Asserted Patents are invalid or unenforceable, or both, for failure to comply with one or more provisions of the patent laws and regulations of the United States set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

18.     There is a justiciable controversy between Plaintiff and PHI as to the validity of the Asserted Patents.

19.     PHI is entitled to a declaratory judgment that one or more of the Asserted Patents are invalid.

## COUNT III
## (DECLARATION OF UNENFORCEABILITY BASED ON PATENT MISUSE)

20.     PHI realleges and incorporates by reference Paragraphs 1 through 19 as though fully incorporated herein.

21.     Plaintiff's Complaint alleges infringement that goes well beyond the scope of the claims in the asserted patents.

22.     Upon information and belief, Plaintiff alleged infringement of systems having a live operator.

23.    According to prior admissions by Plaintiff, systems with live operators cannot infringe the claims of the asserted patents.

24.    Broadening the claim scope of the asserted patents beyond that which is provided for in the claims constitutes patent misuse.

25.    Because Plaintiff has and continues to commit patent misuse, the asserted patents are unenforceable.

26.    There is a justiciable controversy between Plaintiff and PHI as to the enforceability of the Asserted Patents.

27.    PHI is entitled to a declaration from this Court that, in asserting the Asserted Patents against PHI, Plaintiff has committed patent misuse, and as such the asserted patents are unenforceable.

**COUNT IV**
**(DECLARATION OF UNENFORCEABILITY DUE TO**
**INEQUITABLE CONDUCT)**

28.    PHI realleges and incorporates by reference Paragraphs 1 through 27 as though fully incorporated herein.

29.    Upon information and belief, the Asserted Patents are unenforceable in whole or in part due to inequitable conduct committed before the United States Patent and Trademark Office (PTO) during the prosecution of the applications that issued as the Asserted Patents and/or related applications.

30.    Upon information and belief, during the prosecution of the applications that ultimately led to the issuance of the Asserted Patents or the applications upon which priority is claimed, Plaintiff, prior assignees of some of the Asserted Patents, the named inventor, Ronald A. Katz, and/or their attorneys and appointed representatives (hereinafter collectively referred to

as "Katz") committed inequitable conduct by failing to comply with the duty of candor in the PTO.

31.     Upon information and belief, Katz breached the duty of candor by intentionally withholding material information from the PTO regarding prior art as well as making false and misleading statements to the PTO regarding prior art.

## II.     The Withholding of Material Information

### A.     The Periphonics References

32.     Upon information and belief, Katz intentionally withheld from the Patent and Trademark Office highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled.

33.     Upon information and belief, in April of 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.,* CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").

34.     Upon information and belief, the Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, including those which would later issue as the Asserted Patents.

35.     Upon information and belief, included in the West materials were a number of Periphonics references, including 1)    Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (Bates numbers W73055-W73095) and 2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (Bates numbers W73219-W73302).

36.     Upon information and belief, both the Bank-From-Home reference and VoicePac reference are highly relevant and material to many claims of the Asserted Patents.  The Bank-From-Home reference describes such limitations of claims of the Asserted Patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.  The VoicePac reference describes such limitations of claims of the Asserted Patents as interfacing callers to the system and transferring callers to a customer service representative.

37.     Upon information and belief, during the prosecution of U.S. Patent Application No. 08/306,456, which ultimately issued as the '965 patent, Katz stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  Paper no. 3, filed November 4, 1994.  Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.

38.     Upon information and belief, Katz made the same statements in at least those applications that later issued as the '285 patent, '893 patent, and U.S. Patent No. 5,561,707 ("the '707 patent").

39.     Upon information and belief, at least the applications for the '863 and '551 patents refer the examiner to the references disclosed during the prosecution of the '707 patent.

40.     Upon information and belief, while other references in the West materials were submitted to the PTO during prosecution of the '707, '965, '285, '893, '863, and '551 patents, the Bank-From-Home and VoicePac references were withheld despite knowledge of their materiality.

41.     Upon information and belief, at least the '134, '065, and '360 patents have specifications substantially identical to those of the '707, '863, and '551 patents, and contain

claims with subject matter that was at issue during the prosecution of the '707, '863, and '551 patents.

42.    Katz's failure to disclose this material prior art during the prosecution of the '707, '965, '285, '893, '863, and '551 patents was a violation of the duty of candor owed to the PTO, and constitutes inequitable conduct.

43.    Due to the inequitable conduct that occurred during the prosecution of the '707, '965, '285, '893, '863, and '551 patents, at least the '134, '065, and '360 patents are also rendered unenforceable through infectious unenforceability.

44.    Due to the inequitable conduct that occurred during the prosecution of their respective applications, at least the '965, '285, '893, '863, '551, '134, '065, and '360 patents are rendered unenforceable.

### B.    The Barger Reference

45.    Upon information and belief, Katz committed inequitable conduct in failing to disclose U.S. Patent No. 4, 071,698 to Barger, Jr. et al (the "Barger patent") to the PTO during the prosecution of many of the Asserted Patents as well as applications that some of the Asserted Patents claim priority to.

46.    The Barger patent was filed on January 10, 1977, eight years before Katz's first application.

47.    The Barger patent teaches an interactive voice system for marketing merchandise, and is material because it discloses many features relevant to Katz's claims in many of the Asserted Patents.  These include the storing of data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

48.    Upon information and belief, Katz became aware of the Barger patent and its materiality in December 1988, when the European Patent Office sent to Katz's European patent

attorney a search report for one of Katz's corresponding European patent applications. This search report identified the Barger patent as being "particularly relevant" to Katz's application.

49.    Upon information and belief, despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the Barger patent to the PTO during the prosecution of at least the '984, '150, '285, and '965 patents, as well as during the substantive prosecution of at least the '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents.

50.    Upon information and belief, Katz withheld the disclosure of the Barger patent with intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '984, '150, '285, '965, '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents unenforceable.

###    C.    The DeBruyn Reference

51.    Upon information and belief, Katz committed inequitable conduct in failing to disclose European Patent Specification No. 0032410 to DeBruyn ("the DeBruyn patent"), to the PTO during the prosecution of many of the Asserted Patents as well as applications that some of the Asserted Patents claim priority to.

52.    Upon information and belief, the DeBruyn Patent was published July 22, 1981, and discloses an interactive voice system for implementing a lottery.

53.    Upon information and belief, the DeBruyn patent is material because it discloses many features relevant to Katz's claims, including receiving the caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

54.    Upon information and belief, Katz became aware of the DeBruyn patent and its materiality in December 1988, when the European Patent Office sent to Katz's European patent attorney a search report for one of Katz's corresponding European patent applications, the same

search report that disclosed the Barger Patent.  This search report also identified the DeBruyn patent as being "particularly relevant" to Katz's application.

55.    Upon information and belief, despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the DeBruyn patent to the PTO during the prosecution of at least the '150, '252, '863 and '984 patents, as well as during the substantive prosecution of at least the '285, '893, '551, '065, '360, '734, '120, '223, and '965 patents.

56.    Upon information and belief, Katz withheld the disclosure of the DeBruyn patent with an intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '150, '252, '863, '984, '285, '893, '551, '065, '360, '734, '120, '223, and '965 patents unenforceable.

### D.    The Katz PCT Reference

57.    Upon information and belief, Katz failed to disclose the publication of PCT application WO 87/00375 ("the '375 application") during the prosecution of U.S. Patent No. 4,845,739 ("the '739 patent").

58.    Upon information and belief, the '375 application was published on January 15, 1987, and is therefore considered prior art for any claims with a filing date more than a year after the publication date.

59.    Upon information and belief, because the '739 patent was filed on May 16, 1988, the '375 application constitutes prior art to all claims that incorporated any new subject matter added in the '739 application.

60.    Upon information and belief, the published '375 application is material information because it would have been relevant to many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

61.     Upon information and belief, despite knowledge of the '375 patent and its materiality, Katz did not disclose the '375 application to the patent examiner during the prosecution of the '739 patent.

62.     Katz's failure to disclose this material prior art was a violation of the duty of candor owed to the PTO, and constitutes inequitable conduct.

63.     Upon information and belief, many of the Asserted Patents contain claims with subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant.

64.     Upon information and belief, the '739 patent is strongly related to the '893, '863, '551, '065, '360, and '134 patents, so much so that Katz has disclaimed for each of the '893, '863, '551, '065, '360, and '134 patents any patent term subsequent to the patent term of the '739 patent.

65.     Due to the inequitable conduct that occurred during the prosecution of the '739 patent, at least the '739, '893, '863, '551, '065, '360, and '134 patents are rendered unenforceable.

## II.     False and Misleading Statements

66.     Upon information and belief, Katz made false and misleading statements to the PTO regarding the priority dates to which the claims of pending applications were entitled.

67.     Upon information and belief, Katz made these false and misleading statements with the intent to prevent certain references from being considered prior art to Katz's pending applications.

### A.   Statements Regarding International Application 87/00375

68.   Upon information and belief, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz falsely stated that "the international application [87/00375] is not properly a reference against the present case."

69.   Upon information and belief, this assertion is false because international application 87/00375 was filed more than a year prior to the filing of the '734 patent. Contrary to Katz's statement, international application 87/00375 is a prior art reference to any new matter claimed in the '734 patent, which was based on a continuation-in-part application.

70.   Upon information and belief, Katz's statement was knowingly false and was made with the intent to deceive the PTO into issuing patent claims of a scope beyond any to which Katz was entitled in the '984 patent, and constituted inequitable conduct.

71.   The inequitable conduct committed by Katz during the prosecution of the '984 patent renders at least the '984, and '734 patents unenforceable, as well as the '223 patent, which is closely related to the '984 patent.

### B. Statements Regarding the Brown Patent

72.   Upon information and belief, Katz made false and misleading statements during the prosecution of the '734 patent with respect to U.S. Patent No. 4,972, 461, issued to Brown ("the Brown patent").

73.   Upon information and belief, during prosecution of the '734 patent, Katz identified the Brown Patent to the PTO, but stated in an amendment "the Brown patent has an issue date of November 20, 1990, and a filing date of September 20, 1989. It should be noted that the present application ultimately claims priority from Applicant's parent patent U.S. Patent No. 4,930,150 ("the '150 patent"), which predates the Brown patent with respect to disclosure of alternate access possibilities (e.g., "800" or "900")."

74.     Upon information and belief, the reference parent patent, the '150 patent, does not contain any disclosure of the multiple call modes as claimed in the '734 patent, and, therefore, could not be used to predate the Brown patent for that claimed subject matter in the '734 patent.

75.     Upon information and belief, therefore, Katz knowingly, falsely claimed priority to parent application in order to antedate the Brown patent.

76.     The inequitable conduct committed by Katz during the prosecution of the '734 patent renders at least the '734 patent unenforceable, as well as the '120 and '223 patents, which claim priority to the '734 patent.

### C. Statements Regarding the Hester Reference

77.     Upon information and belief, during prosecution of the '734 patent, Katz made a false and misleading statement about a prior art reference by Hester ("the Hester reference").

78.     Katz stated to the patent examiner that "the reference by Hester bears a date of 1985, apparently 'September.'   In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."

79.     Upon information and belief, this statement is false because the parent application that Katz referenced does not disclose toll free calls and does not disclose 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such  limitations are entitled to claim priority to that parent application's filing date.

80.     Upon information and belief, Katz knowingly and falsely claimed priority to the parent application in order to deceive the PTO into antedating the Hester reference.

81.     The inequitable conduct committed by Katz during the prosecution of the '734 patent with regards to the Hester reference renders at least the '734 patent unenforceable.

### D.  Statements Regarding the Kaplan Patent

82.    Upon information and belief, during prosecution of the '734 patent Katz also made false statements about his pending application with respect to U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent").

83.    Upon information and belief, the Kaplan patent was filed on August 4, 1987 and is prior art to the '734 patent.

84.    Upon information and belief, Katz falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference."

85.    Upon information and belief, this statement is false because at the time it was made there were claims in Katz's application that contained new subject matter, and were therefore not entitled to an earlier priority date.

86.    Upon information and belief, Katz knowingly and falsely claimed an earlier priority date in order to deceive the PTO into antedating the Kaplan patent.

87.    Upon information and belief, Katz violated the duty of good faith and candor by making the foregoing false and misleading statements.

88.    Upon information and belief, these false and misleading statements were made to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '734, '120, and '223 patents unenforceable.

89.    Upon information and belief, Katz's inequitable conduct was repeated during the prosecution of other applications leading to the Asserted Patents and infected either directly or indirectly all of the applications, and thereby rendered all of the Asserted Patents unenforceable in their entirety.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PHI respectfully requests that this Court:

(a) Declare that PHI does not and has not infringed the asserted patents;

(b) Declare that the asserted patents are invalid because they fail to satisfy the requirements of 35 U.S.C. §§101, 102, 103, and/or 112;

(c) Declare that the asserted patents are unenforceable because Plaintiff has committed patent misuse;

(d) Declare that the asserted patents are unenforceable because Plaintiff has committed inequitable conduct upon the PTO.

(e) Find that this is an exceptional case, pursuant to 35 U.S.C. § 285, and award PHI its reasonable attorney's fees incurred in this action;

(f) Grant PHI such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

PHI demands a jury trial of all issues triable by right of jury.

Respectfully submitted,

Joanne Ceballos (#2854)
BIFFERATO GENTILOTTI BIDEN & BALICK
711 King Street
Wilmington, DE 19801
Phone: (302) 429-1900
Fax: (302) 658-1682
jceballos@bgbblaw.com

Jeffrey S. Standley, Ohio Bar No. 0047248
James L. Kwak, Ohio Bar No. 0066485
F. Michael Speed, Jr., Ohio Bar No. 0067541
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, Ohio 43017
Tel: (614) 792-5555
Fax: (615) 792-5536
jstandley@standleyllp.com
jkwak@standleyllp.com
mspeed@standleyllp.com

Dated: October 26, 2006                COUNSEL FOR DEFENDANTS PEPCO HOLDINGS,
                                       INC., PHI SERVICE COMPANY, and DELMARVA
                                       POWER & LIGHT COMPANY

## CERTIFICATE OF SERVICE

I, Joanne Ceballos, hereby certify that on the 26th day of October 2006, the foregoing Answer, Defenses and Counterclaim was filed electronically with the Clerk of Court and served as follows:

### VIA CM/ECF ELECTRONIC FILING

Mary B. Graham, Esquire
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
mbgefiling@mnat.com

Dale A. Rice, Esquire
Michael K. Plimack, Esquire
HELLER ERHMAN LLP
333 Bush Street
San Francisco, CA 94104
dale.rice@hellerehrman.com
michael.plimack@hellerehrman.com

Andrew C. Byrnes, Esquire
Robert T. Haslam, Esquire
HELLER ERHMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
andrew.byrnes@hellerehrman.com
robert.haslam@hellerehrman.com

### VIA E-MAIL

Richard M. McDermott, Esquire
Patrick J. Flinn, Esquire
Dwayne C. Norton, Esquire
Alston & Bird LLP
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC  28280-4000
rick.mcdermott@alston.com
patrick.flinn@alston.com
dwayne.norton@alston.com

Mitchell D. Lukin, Esquire
Amanda W. Mayor, Esquire
Scott F. Partridge, Esquire
Larissa Piccardo, Esquire
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
mitch.lukin@bakerbotts.com
amanda.mayor@bakerbotts.com
scott.partridge@bakerbotts.com
larissa.piccardo@bakerbotts.com

Joanne Ceballos