IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 1:06-cv-00543-GMS |
| RELIANT ENERGY, INC., RELIANT ENERGY RETAIL SERVICES, LLC; PEPCO HOLDINGS, INC.; PHI SERVICE COMPANY; DELMARVA POWER & LIGHT COMPANY; DUKE ENERGY CORPORATION; CINERGY CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MOTION TO STAY ACTION
PENDING THE U.S. PATENT AND TRADEMARK OFFICE'S
REEXAMINATION OF PLANTIFF'S PATENTS**

Defendants Reliant Energy, Inc. and Reliant Energy Retail Services, LLC

(collectively, the "Reliant Defendants"), Pepco Holdings, Inc., PHI Service Company,

and Delmarva Power & Light Company (collectively, the "Pepco Defendants"), and

Duke Energy Corporation and Cinergy Corporation (collectively, the "Duke

Defendants") hereby move the Court to stay this action in its entirety pending the

Reexamination proceedings by the United States Patent and Trademark Office relating to

patents asserted in this action by Plaintiff Ronald A. Katz Technology Licensing, L.P.

("RAKTL" or "Plaintiff").

By this motion, Defendants incorporate herein by reference the Motion to Stay

filed by the Defendants in Civil Action No. 1:06-cv-000546-GMS (the "546 action") on

Monday, December 18, 2006, and their opening brief in support of the motion, copies of which are attached hereto as Exhibits 1 and 2, respectively.

On September 1, 2006, Plaintiff filed five actions in this District[1] accusing a total of ninety-five defendants of infringing one or more of twenty-six U.S. patents.[2] Plaintiff has asserted eighteen of the twenty-six patents against Defendants in this action[3], including sixteen patents asserted against the Duke Defendants[4], sixteen patents asserted against the Reliant Defendants[5], and seventeen patents asserted against the Pepco Defendants.[6]

---

[1] *Ronald A. Katz Technology Licensing, L.P. v. Reliant Energy, Inc., et al.* (Civil Action No. 1:06-cv-00543), *Ronald A. Katz Technology Licensing, L.P. v. TD Banknorth, Inc., et al.* (Civil Action No. 1:06-cv-00544), *Ronald A. Katz Technology Licensing, L.P. v. Ahold USA, Inc., et al.* (Civil Action No. 1:06-cv-0545), *Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable, Inc., et al.* (Civil Action No. 1:06-cv-0546), and *Ronald A. Katz Technology Licensing, L.P. v. American International Group, Inc., et al.* (Civil Action No. 1:06cv-00547).

[2] The twenty-six asserted patents are U.S. Patent No. 4,792,968 ("the '968 patent); 4,930,150 ("the '150 patent"); 4,939,773 ("the '773 patent"); 4,987,590 ("the '590 patent"); 5,128,984 ("the '984 patent"); 5,251,252 ("the '252 patent"); 5,297,197 ("the '197 patent"); 5,351,285 ("the '285 patent"); 5,442,688 ("the '688 patent"); 5,684,863 ("the '863 patent"); 5,787,156 ("the '156 patent"); 5,815,551 ("the '551 patent"); 5,828,734 ("the '734 patent"); 5,835,576 ("the '576 patent"); 5,898,762 ("the '762 patent"); 5,917,893 ("the '893 patent"); 5,974,120 ("the '120 patent"); 6,035,021 ("the '021 patent"); 6,148,065 ("the '065 patent"); 6,335,965 ("the '965 patent"); 6,349,134 ("the '134 patent"); 6,424,703 ("the '703 patent"); 6,434,223 ("the '223 patent"); 6,449,346 ("the '346 patent"); 6,512,415 ("the '415 patent"); and 6,678,360 ("the '360 patent") (collectively, "the asserted patents").

[3] The eighteen patents asserted against the Defendants in this case include the '065 patent, the '120 patent, the '134 patent, the '150 patent, the '223 patent, the '252 patent, the '285 patent, the '360 patent, the '415 patent, the '551 patent, the '703 patent, the '734 patent, the '762 patent, the '863 patent, the '893 patent, the '965 patent, the '968 patent, and the '984 patent.

[4] The sixteen patents asserted against the Duke Defendants include all of the patents listed in footnote 3, with the exception of the '703 patent and the '762 patent.

[5] The sixteen patents asserted against the Reliant Defendants include all of the patents listed in footnote 3, with the exception of the '415 patent and the '703 patent.

[6] The seventeen patents asserted against the Pepco Defendants include all of the patents listed in footnote 3, with the exception of the '762 patent.

Currently, eleven RAKTL patents are involved in reexamination proceedings before the U.S. Patent and Trademark Office.[7] Of these eleven patents, six patents that are asserted against each of the Duke Defendants, the Reliant Defendants, and the Pepco Defendants are in reexamination proceedings before the U.S. Patent and Trademark Office.[8] Thus, six of the sixteen patents asserted against the Duke Defendants, six of the sixteen patents asserted against the Reliant Defendants, and six of the seventeen patents asserted against the Pepco Defendants are involved in reexamination proceedings. In addition, since many of Plaintiff's patents are related to each other and also involve very similar technology, it is likely that others of Plaintiff's patents will be affected by the results of the currently pending reexamination proceedings.

For all the reasons cited in the Motion to Stay and supporting opening brief filed by the Defendants in the 546 action, attached hereto at Exhibits 1 and 2, and incorporated herein by reference, Defendants respectfully request that the Court stay this action in its entirety pending the completion of all of the reexamination proceedings by the U.S. Patent and Trademark Office involving Plaintiff's U.S. patents that have been asserted in this action as well as other related but unasserted patents. Specifically, this Court should stay this action in its entirety because (1) Plaintiff will not be prejudiced, much less unduly prejudiced by such a stay; (2) such a stay will simplify the proceedings as a result of the findings of the reexamination proceedings, and thus conserve this Court's and the parties' resources relating to the investigation, discovery, analysis, and construction

---

[7] The eleven patents currently involved in reexamination proceedings include U.S. Patent Nos.: 5,255,309, 5,259,023, 5,351,285, 5,561,707, 5,684,863, 5,787,156, 5,815,551, 5,828,734, 5,974,120, 6,292,547, and 6,434,223. In addition, a request for reexamination of U.S. Patent No. 5,128,984 has been submitted to the U.S. Patent and Trademark Office, but the PTO has not yet acted on that request.

[8] The six patents currently asserted against each of the Duke Defendants, the Reliant Defendants, and the Pepco Defendants, that are simultaneously involved in reexamination proceedings, include the '120 patent, the '223 patent, the '285 patent, the '551 patent, the '734 patent, and the '863 patent.

related to patent claims which are likely to be amended or even cancelled during reexamination; and (3) this action has not progressed past the initial pleading stage, discovery has not yet begun, and no trial date has been set.

For all of these reasons, Defendants respectfully request that the Court stay this action in its entirety pending the completion of all of the reexamination proceedings by the U.S. Patent and Trademark Office involving Plaintiff's U.S. patents that have been asserted in this action as well as other related but unasserted patents. A proposed form of order is attached hereto.

Plaintiff's counsel has been contacted regarding this motion, and counsel has indicated that Plaintiff is opposed to the requested stay.

Dated: December 19, 2006

Joanne Ceballos
DE Bar ID No. 2854
BIFFERATO GENTILOTTI BIDEN &
BALICK
711 North King Street
Wilmington, DE 19801-3503
(302) 429-1900
Email: jceballos@bgbblaw.com

ATTORNEYS FOR DEFENDANTS
RELIANT ENERGY, INC., RELIANT
ENERGY RETAIL SERVICES, LLC, PEPCO
HOLDINGS, INC., PHI SERVICE
COMPANY, DELMARVA POWER & LIGHT
COMPANY, DUKE ENERGY
CORPORATION, CINERGY
CORPORATION

OF COUNSEL:

Patrick J. Flinn
    Email: patrick.flinn@alston.com
Richard M. McDermott
    Email:
rick.mcdermott@alston.com
Dwayne C. Norton
    Email:
dwayne.norton@alston.com
ALSTON & BIRD, LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC  28280
704-444-1000

ATTORNEYS FOR
DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS
DUKE  ENERGY CORPORATION
and CINERGY CORPORATION

OF COUNSEL:

Jeffrey S. Standley
    Email:
jstandley@standleyllp.com
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, Ohio  43017
(614) 792-5555

ATTORNEYS FOR
DEFENDANTS AND
COUNTERCLAIM PLANTIFFS
PEPCO HOLDINGS, INC., PHI
SERVICE COMPANY,
DELMARVA POWER & LIGHT
COMPANY

OF COUNSEL:

Mitchell D. Lukin
    Email:
    mitch.lukin@bakerbotts.com
BAKER BOTTS LLP

One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1733

ATTORNEYS FOR DEFENDANTS
  AND COUNTERCLAIM
  PLANTIFFS RELIANT ENERGY,
  INC., RELIANT ENERGY
  RETAIL SERVICES, LLC

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., )<br><br>Plaintiff, )<br><br>v. )<br><br>TIME WARNER CABLE INC., et al., )<br><br>Defendants. ) | C.A. No. 06-546-GMS<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO STAY ACTION PENDING THE PATENT AND
TRADEMARK OFFICE'S REEXAMINATION OF KATZ PATENTS**

All of the Defendants, (*i.e.*, Time Warner Cable Inc., Time Warner NY Cable LLC, Time Warner Entertainment Company LP, AOL LLC, Compuserve Interactive Services Inc., Netscape Communications Corporation, United States Cellular Corporation, TDS Telecommunications Corporation, TDS Metrocom LLC, Qwest Communications International Inc., Qwest Wireless, L.L.C., Qwest Communications Corporation, Qwest LD Corp., Qwest Broadband Services, Inc., and Qwest Interprise America, Inc. (collectively, "Defendants")) hereby move this Court to stay this action pending reexamination by the United States Patent and Trademark Office of seven of the patents-in-suit, at least four other related but unasserted patents, and the possible reexamination of another patent-in-suit. The grounds for this Motion are more fully set forth in the Defendants' Opening Brief in Support of Their Motion to Stay Action

1

ATL01/12225995v1
RLF1-3093503-1
RLF1-3095354-1

Pending the Patent and Trademark Office's Reexamination of the Katz Patents filed contemporaneously herewith.

Defendants hereby certify pursuant to District of Delaware Local Rule 7.1.1 that they have conferred with counsel for Plaintiff and that Plaintiff has indicated it does not consent to the relief sought in the motion.


_/s/ Jeffrey L. Moyer_____
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com

OF COUNSEL:

David K. Callahan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Richards, Layton and Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
_Attorneys for Qwest Communications_
_International Inc., Qwest Wireless, L.L.C.,_
_Qwest Communications Corporation, Qwest_
_LD Corp., Qwest Broadband Services, Inc.,_
_and Qwest Interprise America, Inc._

Dated: December 18, 2006

_/s/ Frederick L. Cottrell, III_____

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware  19801
(302) 651-7700
*Attorneys for Defendants Time Warner
Cable Inc., Time Warner NY Cable LLC,
Time Warner Entertainment Company LP,
AOL LLC, Compuserve Interactive
Services Inc., Netscape Communications
Corporation, United States Cellular
Corporation, TDS Telecommunications
Corporation, TDS Metrocom, LLC,
Cablevision Systems Corporation, CSC
Holdings, Inc., Cablevision Systems New
York City Corporation, Cablevision of
Brookhaven, Inc., Cablevision of
Connecticut Corporation, Cablevision of
Hudson County, Inc., Cablevision of
Litchfield, Inc., Cablevision of Monmouth,
Inc., Cablevision of New Jersey, Inc.,
Cablevision of Oakland, LLC, Cablevision
of Rockland/Ramapo, LLC, Charter
Communications, Inc., Charter
Communications Holding Company, LLC,
Charter Communications Operating, LLC,
and Charter Communications
Entertainment I, LLC*

Dated:  December 18, 2006

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

**BY ELECTRONIC MAIL AND HAND DELIVERY**

Mary B. Graham
Julia Heaney
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19899-1347

I hereby certify that on December 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**

Patrick J. Flinn
Kristen L. Melton
Jeffrey A. Cooper
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

David Maxwell
William R. Hubbard
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Angela Payne James
Cherri Gregg
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC  28280-4000

John W. Kozak
Steven P. Petersen
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601

Josh Krevitt
Charles J. Boudreau
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166-0193

1

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA 94104-2878

Jeffrey S. Standley
James L. Kwak
F. Michael Speed, Jr.
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH 43017


_Kelly E. Farnan_
Kelly E. Farnan (#4395)
farnan@rlf.com

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§  C.A. No. 06-546-GMS<br>§<br>§  JURY TRIAL DEMANDED<br>§<br>§<br>§<br>§<br>§ |

## ORDER

On this ___ day of _____, 2007, came for consideration Defendants'
Motion To Stay Action Pending The Patent And Trademark Office's Reexamination Of
The Katz Patents.  Having reviewed Defendants' Motion and Brief, Ronald A. Katz
Technology Licensing L.P.'s Response thereto, and Defendants' Reply, the Court is of
the Opinion that Defendants' Motion should be granted and this case stayed at least until
the PTO's reexamination of patents assigned to Ronald A. Katz Technology Licensing
L.P. is complete.

1

IT IS THEREFORE ORDERED that Defendants' Motion for a stay is GRANTED. Accordingly, all aspects of this case are stayed.

SO ORDERED on this _____ day of _____, 2007.

_____
THE HONORABLE GREGORY M. SLEET
U.S. DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 06-546-GMS<br>)<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION TO STAY ACTION PENDING THE PATENT
AND TRADEMARK OFFICE'S REEXAMINATION OF THE KATZ PATENTS**

OF COUNSEL:

David K. Callahan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Qwest
Communications Int'l Inc., Qwest Wireless,
L.L.C., Qwest Communications Corp., Qwest LD
Corp., Qwest Broadband Services, Inc., and
Qwest Interprise America, Inc.*

Dated: December 18, 2006

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware  19801
(302) 651-7700
*Attorneys for Defendants Time Warner
Cable Inc., Time Warner NY Cable
LLC, Time Warner Entertainment
Company LP, AOL LLC, Compuserve
Interactive Services Inc., Netscape
Communications Corporation, United
States Cellular Corporation, TDS
Telecommunications Corporation, TDS
Metrocom, LLC, Cablevision Systems
Corporation, CSC Holdings, Inc.,
Cablevision Systems New York City
Corporation, Cablevision of
Brookhaven, Inc., Cablevision of
Connecticut Corporation, Cablevision
of Hudson County, Inc., Cablevision of
Litchfield, Inc., Cablevision of
Monmouth, Inc., Cablevision of New
Jersey, Inc., Cablevision of Oakland,
LLC, Cablevision of Rockland/Ramapo,
LLC, Charter Communications, Inc.,
Charter Communications Holding
Company, LLC, Charter
Communications Operating, LLC, and
Charter Communications
Entertainment I, LLC*

# **TABLE OF CONTENTS**

I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ...............1

II.   SUMMARY OF ARGUMENT ........................................................................3

III.  STATEMENT OF FACTS ..............................................................................4

   A.   Katz and Katz Patents ...........................................................................4

   B.   History of Katz's Licensing/Litigation Campaign .................................5

   C.   Present Status of Pending Katz Litigation .............................................6

   D.   Patent Office Reexamination Proceedings .............................................7

IV.   LEGAL STANDARDS ...................................................................................7

V.    ARGUMENT .................................................................................................8

   A.   A Stay Would Neither Prejudice, Much Less Unduly Prejudice
        Katz, Nor Would A Stay Present Katz With A Clear Tactical
        Disadvantage ........................................................................................8

   B.   A Stay Will Simplify The Issues In Question And Trial Of This
        Case .....................................................................................................10

        1.    A Stay Will Conserve Judicial Resources And Party
              Resources ...................................................................................12

        2.    The Issues Will Be Narrowed And Simplified After The
              PTO Completes Reexamination ....................................................14

              a.    Reexamination Will Affect Claim Construction ...............15

              b.    Reexamination Will Impact the Prior Art Analysis ..........18

              c.    Reexamination Will Also Impact Priority Issues ..............18

              d.    Amendments Made During Reexamination Will
                    Directly Impact Whether Certain Patents Remain In
                    This Litigation .................................................................19

   C.   Discovery Has Not Begun And A Trial Management Order Has
        Not Been Issued ...................................................................................20

VI.   CONCLUSION ..............................................................................................22

i

# TABLE OF AUTHORITIES

**Cases**

*Abbott Diabetes Care, Inc., v. Dexcom, Inc ,*
  C.A. No. 05-590 GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006)........... 3, 8, 13

*Abtox, Inc  v  Exitron Corp.,*
  131 F.3d 1009 (Fed. Cir. 1997).............................................................................. 17

*Alloc, Inc  v  Unilin Decor N.V.,*
  No. Civ.A. 03-253-GMS, 2003 WL 21640372
  (D. Del. July 11, 2003)................................................................................. 3, 11, 22

*Applera Corp  v  Thermo Electron Corp.,*
  04-CV-1230 (GMS), (D. Del. Dec. 28, 2005) (ORDER)................................. 3, 12

*ASCII Corp  v  STD Entertainment USA, Inc ,*
  844 F. Supp. 1378 (N.D. Cal. 1994)........................................................................ 8

*Bausch & Lomb, Inc. v. Alcon Labs , Inc ,*
  914 F. Supp. 951 (W.D.N.Y. 1996).................................................................. 16, 22

*Cost Bros., Inc. v  Travelers Indem  Co ,*
  760 F.2d 58 (3d Cir. 1985)........................................................................................ 7

*E.I. du Pont de Nemours & Co  v  Phillips Petroleum Co.,*
  849 F.2d 1430 (Fed. Cir. 1988)............................................................................... 16

*eBay v. Mercexchange, L.L.C ,*
  126 S. Ct. 1837 (2006).............................................................................................. 9

*Emhart Indus., Inc  v  Sankyo Seiki Mfg. Co., Ltd.,*
  No. 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987)........................................ 22

*Ethicon, Inc  v. Quigg,*
  849 F.2d 1422 (Fed. Cir. 1988)................................................................................. 7

*Gioello Enters. Ltd  v. Mattel, Inc.,*
  No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan 29 2001) .................... 3, 10

*Grayling Indus., Inc. v. GPAC, Inc ,*
  Civ. No. 1:89-CV-451-ODE, 1991 WL 236196
  (N.D. Ga. Mar. 25, 1991)........................................................................................ 22

*Guthy-Renker Fitness L.L.C  v. Icon Health & Fitness Inc.,*
  48 U.S.P.Q.2d 1058 No. CV 97-7681 LGB (Ex),
  1998 WL 670240 (C.D. Cal. July 15, 1998) ....................................... 10, 12, 17, 21

ii

*Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.*,
   No. 89 C 8696, 1990 WL 37642 (N.D. Ill Mar. 20, 1990) ...................................... 8

*Hewlett-Packard Co. v. Acuson Corp.*,
   No. C-93-0808 MHP, 1993 WL 149994 (N.D. Cal. May 5, 1993)..................14

*Intest Corp. v. Reid-Ashman Mfg., Inc.*,
   66 F. Supp. 2d 576 (D. Del. 1999) ........................................................................20

*Laitram Corp. v. Morehouse Indus., Inc.*,
   143 F.3d 1456 (Fed. Cir. 1998)............................................................................ 16

*Loffland Bros. Co. v. Mid-Western Energy Corp.*,
   No. Civ-83-2255-E, 1985 WL 1483 (W.D. Okla. 1985) ................................. 14, 22

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004)............................................................................ 16

*Middleton, Inc. v. Minn. Mining & Mfg., Co.*,
   No. 4:03-CV-40493, 2004 WL 1968669
   (S.D. Iowa Aug. 24, 2004)..................................................................................... 16

*Paice LLC v. Toyota Motor Corp.*,
   No. 2:04-CV-211, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) ......................... 9

*Pegasus Dev. Corp. v. DirectTV, Inc.*,
   No. Civ.A. 00-1020-GMS, 2003 WL 21105073
   (D. Del. May 14, 2003).................................................................................. *passim*

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)............................................................................ 15

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*,
   68 U.S.P.Q. 2d 1765, No. 02-74796, 2003 WL 22870902
   (E.D. Mich. Oct. 7, 2003) ............................................................................... 13, 22

*Robert H. Harris Co. Inc. v. Metal Mfg. Co. Inc.*,
   Civ. No. J-C-90-179, 1991 WL 2176664
   (E.D. Ark. June 21, 1991)..................................................................................... 22

*Seattle Box Co. v. Indus. Crating & Packaging Inc.*,
   731 F.2d 818 (Fed. Cir. 1984)..............................................................................20

*Softview Computer Prods. Corp. v. Haworth Inc.*,
   No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471
   (S.D.N.Y. Aug. 10, 2000) ............................................................................... 13, 22

iii

*Target Therapeutics, Inc v Scimed Life Sys , Inc ,*
No. C-94-20775, 1995 WL 20470 (N.D. Cal. Jan. 13, 1995)................. 14, 15, 21

*United Sweetener USA, Inc. v. Nutrasweet Co ,*
766 F. Supp. 212 (D.Del.1991)................................................................................. 8

*Vitronics Corp v Conceptronic Inc ,*
36 F. Supp.2d 440 (D. N.H. 1997).................................................................... 13, 17

*Xerox Corp v 3 Com Corp ,*
69 F. Supp. 2d 404 (W.D.N.Y.1999)....................................................................... 8

*z4 Tech , Inc v Microsoft Corp.,*
434 F. Supp. 2d 437 (E.D. Tex. 2006)..................................................................... 9

**Statutes**

35 U.S.C. § 302 ...................................................................................................... 7

35 U.S.C. § 303........................................................................................................ 7

35 U.S.C. § 307...................................................................................................... 10, 20

**Treatises**

4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][b][iv]
(Mathew Bender & Co. 2004) ........................................................................ 20, 21

iv

## I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

After delaying for almost eighteen years[1] and after waiting until after the expiration of at least eighteen of the patents-in-suit, on September 1, 2006, Plaintiff, Ronald A. Katz Technology Licensing L.P. ("Katz"), filed this action asserting that the thirty named Defendants individually infringe one or more of twenty-six United States Patents.[2]  As of the date of this Motion, all of the Defendants have served and filed their Answer to the Complaint with Counterclaims and Katz has submitted Answers to Defendants' Counterclaims.  Also on September 1, 2006, Katz filed four other patent infringement actions in this Court and asserted many of the same patents against sixty-five additional defendants.

All of the named Defendants (*i.e.*, Time Warner Cable Inc., Time Warner NY Cable LLC, Time Warner Entertainment Company LP, AOL LLC, Compuserve Interactive Services Inc., Netscape Communications Corporation, United States Cellular Corporation, TDS Telecommunications Corporation, TDS Metrocom LLC, Cabletelevision Systems Corporation, CSC Holdings Inc., Cablevision Systems New York City Corporation, Cablevision of Brookhaven Inc., Cablevision of Connecticut

---

[1]    United States Patent No. 4,792,968 issued on December 20, 1988.

[2]    The asserted patents are: 4,792,968 ("the '968 patent); 4,930,150 ("the '150 patent"); 4,939,773 ("the '773 patent"); 4,987,590 ("the '590 patent"); 5,128,984 ("the '984 patent"); 5,251,252 ("the '252 patent"); 5,297,197 ("the '197 patent"); 5,351,285 ("the '285 patent"); 5,442,688 ("the '688 patent"); 5,684,863 ("the '863 patent"); 5,787,156 ("the '156 patent"); 5,815,551 ("the '551 patent"); 5,828,734 ("the '734 patent"); 5,835,576 ("the '576 patent"); 5,898,762 ("the '762 patent"); 5,917,893 ("the '893 patent"); 5,974,120 ("the '120 patent"); 6,035,021 ("the '021 patent"); 6,148,065 ("the '065 patent"); 6,335,965 ("the '965 patent"); 6,349,134 ("the '134 patent"); 6,424,703 ("the '703 patent"); 6,434,223 ("the '223 patent"); 6,449,346 ("the '346 patent"); 6,512,415 ("the '415 patent"); and 6,678,360 ("the '360 patent") (collectively "the asserted patents").

1

Corporation, Cablevision of Hudson County Inc., Cablevision of Litchfield Inc.,
Cablevision of Monmouth Inc., Cablevision of New Jersey Inc., Cablevision of Oakland
LLC, Cablevision of Rockland/Ramapo LLC, Charter Communications Inc., Charter
Communications Holding Company LLC, Charter Communications Operating LLC,
Charter Communications Entertainment LLC, Qwest Communications International Inc.,
Qwest Wireless, L.L.C., Qwest Communications Corporation, Qwest LD Corp., Qwest
Broadband Services, Inc., and Qwest Interprise America, Inc. (collectively
"Defendants")) move this Court to stay this action pending reexamination by the United
States Patent and Trademark Office ("the PTO") of seven patents-in-suit, at least four
other related but unasserted patents, and the possible reexamination of one other patent-
in-suit.3 This Court should stay the proceeding because: (1) Katz will not be prejudiced,
much less unduly prejudiced, by a stay; (2) a stay will simplify the proceedings based
upon the reexamination findings and conserve this Court's and the parties' resources by
postponing extensive discovery relating to patent claims which are likely to be amended
or even cancelled during reexamination; and (3) this case has not progressed much past
the initial pleading stage, discovery has not yet begun and no trial date has been set.

Defendants therefore respectfully request that this Court stay all proceedings in
this matter pending reexamination of the Katz patents, and that this Court enter
Defendants' Proposed Order attached hereto.

---

3    United States Patent Nos. currently being reexamined are: 5,255,309, 5,259,023, 5,351,285,
5,561,707, 5,684,863, 5,787,156, 5,815,551, 5,828,734, 5,974,120, 6,292,547, and 6,434,223.
United States Patent No. 5,128,984 has been submitted for reexamination but as of the date of
this motion, the PTO had not acted on the request.

2

## II.    SUMMARY OF ARGUMENT

1.  The PTO is currently reexamining seven patents-in-suit, and four other related Katz patents.  In addition, one patent-in-suit has a request for reexamination pending.  As this Court is aware, during a reexamination, the PTO reviews cited prior art and determines whether claims in the patent should be cancelled or amended.  Statements made during reexamination by the PTO and the patent owner become part of the prosecution history and are crucial to claim construction.  Moreover, terms found in other patents' claims, even patents that are not themselves subject to reexamination, will also be affected by the PTO's and patent owner's positions during the reexamination process and the PTO's conclusions regarding the reexamined patents' claims.  Finally, in these reexamination the Patent Office is undertaking a complex review regarding the priority dates to which the patents are entitled.  This review may have significant impact on the prior art applicable to the patents.

2.  The decision to stay a case, including pending patent reexamination, is within this Court's discretion.

3.  As this Court has repeatedly stated,[4] courts look to several factors when determining whether to exercise their discretion in granting a stay, those factors include:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party (in this case Katz);

> (2) whether a stay will simplify the issues in question and trial of the case; and

> (3) whether discovery is complete and whether a trial date has been set.

4.  All of these factors weigh heavily in favor of granting a stay pending the outcome of the PTO's reexamination of the Katz patents.

---

[4]  *See e.g., Abbott Diabetes Care, Inc., v. Dexcom, Inc*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006) (citing *Xerox Corp. v. 3 Com Corp*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)); *Applera Corp v. Thermo Electron Corp*, 04-CV-1230 (GMS), (D. Del. Dec. 28, 2005) (ORDER); *Alloc, Inc v. Unilin Decor N.V.*, No. Civ.A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (same); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073, at * 2 (D. Del. May 14, 2003) (same); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1-2 (D. Del. Jan 29 2001) (same).

3

5. *First*, a stay would not prejudice, much less unduly prejudice, Katz because: (1) Katz's delay in filing this and its other actions demonstrates that time is not of the essence; and (2) Katz is only entitled to monetary damages (if anything), which will be sufficient to offset any supposed "damages" which may accrue during a stay.

6. *Second*, a stay may simplify or reduce the issues for this Court's consideration, or it may dispense with the litigation entirely, and staying this case pending reexamination of the several Katz patents will conserve this Court's as well as the parties' resources.

7. *Third*, in light of the case's early posture, no effort will be wasted because discovery has not begun, no case management order has been issued and a trial date has not been set.

## III.  STATEMENT OF FACTS

### A.  Katz and Katz Patents

Ronald A. Katz is the alleged inventor of the patents-in-suit and founder of Ronald A. Katz Technology Licensing L.P., a limited partnership formed for the purpose of licensing the Katz patents. D.I. #1, Complaint at ¶ 40. According to Katz, the claimed inventions are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services. *Id.* at ¶ 43. The collective prosecution history of the Katz patents (which have been before the PTO for more than twenty years) runs into the thousands of pages. To Defendants' knowledge, Katz does not make or market any of the alleged inventions claimed in the myriad of claims.

In this matter, Katz claims that the thirty Defendants have infringed or are infringing one or more claims of twenty-six Katz patents. Complaint at ¶¶ 51-77. Of the twenty-six asserted patents, eighteen were already expired when Katz filed suit. *Id.* at ¶¶ 52, 53, 59, 61-63, 65-67, and 69-77.

**B.    History of Katz's Licensing/Litigation Campaign**

Katz claims that it has licensed its patented technology to over 150 companies while also filing "several" patent infringement cases. *See* Ex. 1, Katz Resp. to Mot. to Trnsfr. & Consolidate Pursuant to 28 U.S.C. § 1407 at 3.[5]  In past litigation, Katz has repeatedly demonstrated its desire to avoid litigation by settling and granting licenses as only three actions progressed beyond the initial stages of litigation.  No case that Katz has filed has ever reached trial.  Katz has never even filed a motion for preliminary injunctive relief.  *Id.*  For example, in *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.*, No. 97-CV-4452 (E.D. Pa.) Katz asserted infringement of several of the patents at issue in this case.  The Pennsylvania case progressed through the claim construction phase but settled shortly thereafter.    In *Verizon California, Inc.* v. *Ronald A. Katz Technology Licensing, L.P.*, No. 01-CV-09871 (C.D. Cal.), a non-infringement and invalidity declaratory judgment action that included a related counterclaim for infringement, the court construed several terms of the patents in this case and ruled on several motions for summary judgment, following which (approximately six weeks prior to trial) the parties settled.  In *Ronald A. Katz Technology Licensing, L.P. v. Citibank, N.A.* (5:06-CV-142), which is still pending, the District Court for the Eastern District of Texas has heard arguments regarding claim construction but has not, as of this date, issued a claim construction ruling.

---

[5]    Unless otherwise indicated, all citations to Exhibits refer to the exhibits attached to the declaration of Kelly E. Farnan filed concurrently herewith.

## C.     Present Status of Pending Katz Litigation

Nationwide, Katz litigations presently involve twenty-five actions asserting a total of twenty-seven patents against more than 170 different defendants before four different judges in two separate districts. *See* Ex. 1, Katz's Resp. to Mot. to Trnsfr. and Consolidate at ¶ ¶ 1 and 9-12. Of the twenty-five pending actions, eighteen were initiated on August 21, 2006 and the five actions pending before this Court[6] were filed on September 1, 2006. The five actions in this Court involve over 90 defendants and twenty-one of the twenty-six patents Katz asserted in this action are also asserted in at least one of the four other actions.

Katz's other twenty separate actions are presently pending in the Eastern District of Texas. Target Corporation, a defendant in one of the Texas proceedings, No. 5:06-CV-188 (E.D. Tex) (Texarkana Division), asked the Joint Panel on Multidistrict Litigation ("JPML") to transfer and consolidate *all* twenty-five of the pending Katz actions to the Central District of California, pursuant to 28 U.S.C. § 1407. Katz opposed this motion, as did virtually all of the defendants in the Delaware actions.[7]

---

[6]   *Ronald A. Katz Tech. Licensing, L.P. v. Reliant Energy, Inc. et al* (1:06-cv-00543), *Ronald A. Katz Licensing, L.P. v. TD Banknorth Inc. et al* (1:06-cv-00544), *Ronald A. Katz Tech. Licensing, L.P. v. Ahold USA Inc. et al* (1:06-cv-00545), *Ronald A. Katz Tech Licensing, L.P. v. Time Warner Cable Inc. et al* (1:06-cv-00546), and *Ronald A. Katz Tech. Licensing, L.P. v. Am Int'l Group Inc. et al* (1:06-cv-00547).

[7]   In this action, oppositions were filed by the following defendants (encompassing all related named entities): Time Warner, AOL, Charter, U.S. Cellular, Cablevision and Qwest. In the other Delaware actions, oppositions were filed by the following defendants (encompassing all related named entities): CIGNA, AIG, Aquila, Experian, National City Bank, Comerica, DHL, Express Scripts, Jean Coutu, Maxi Drug, Eckerd, Brooks Pharmacy, TD Banknorth, Wilmington Trust, La Salle Bank, ABN, AMRO, Rite-Aid, Duke Energy and Ahold.

6

### D.    Patent Office Reexamination Proceedings

Pursuant to 35 U.S.C. § 302, any person may at any time request that the PTO reexamine an issued patent. 35 U.S.C. § 302. Within three months of receiving a request for reexamination, the Patent Office must decide if the request raises "a substantial new question of patentability affecting any claim of the patent." 35 U.S.C. § 303. Alternatively, the Director of the Patent Office may determine "on his own initiative" whether "a substantial new question of patentability is raised by patents and publications discovered by him...." *Id.*

The PTO is presently reexamining eleven Katz patents; another request for reexamination is pending PTO approval. Seven of the eleven patents currently being reexamined are patents Katz asserts in this case. The one pending request for reexamination is also a patent-in-suit. The Director of the Patent Office ordered the four remaining reexaminations on his own. In the Director-ordered reexaminations, the patents at issue are related to the patents-in-suit but are not asserted here.

## IV.    LEGAL STANDARDS

The decision to stay a case is within this Court's discretion. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This Court's authority to grant a stay also applies to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination") (internal citations omitted). Indeed, staying litigation pending the outcome of a patent reexamination is consistent with the underlying purpose of the reexamination procedure — *i.e.*, the

7

promotion of a speedy and cost effective patent validity assessment. *Abbott Diabetes Care,* 2006 WL 2375035, at *6; *Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.,* No. 89 C 8696, 1990 WL 37642, at *1 (N.D. Ill. Mar. 20, 1990) ("The reexamination procedure was created to promote the speedy and less costly review of the validity of patents in certain limited situations."); *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("[T]here is a liberal policy in favor of granting motions to stay pending the outcome of USPTO reexamination or reissuance proceedings.").

Courts look to several factors to determine whether to order a stay, including: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Com Corp.,* 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999) (citing cases); *see also United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test). This Court has assessed these factors on several other occasions and determined that stays were appropriate. *See supra* n. 4.

## V.    ARGUMENT

Each factor weighs in favor of staying this case pending the outcome of the Katz patents currently subject to PTO reexamination.

### A.    A Stay Would Neither Prejudice, Much Less Unduly Prejudice Katz, Nor Would A Stay Present Katz With A Clear Tactical Disadvantage.

An examination of the non-movant's prejudice typically involves a determination of the harm suffered should the non-movant be deprived its expeditious day in court. *See e.g., Pegasus Dev.,* 2003 WL 21105073, at * 2 (noting that the Court was "sensitive to

8

the plaintiffs' right to have their day in court" but nevertheless granting a stay).  In this case, Katz's almost eighteen year delay in filing suit against the 95 defendants in the five actions pending before this Court belies any claim of prejudice that Katz may make. Indeed, Katz's mass September 1, 2006 filings demonstrate that this case is part of an end-game strategy, implemented after the expiration of eighteen of the patents-in-suit, devised to collect any remaining royalties that Katz claims to be owed.

In any event, Katz is not entitled to injunctive relief.  Katz is an intellectual-property licensing company that does not compete in the industry.  As such, assuming *arguendo* that Katz is entitled any relief whatsoever, Katz will only be entitled to monetary damages.  *See eBay v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1841 (2006) (reversing the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances" and applying the traditional four-factor test for determining whether injunctive relief is warranted, which includes assessing whether monetary damages are adequate, when determining whether to grant a permanent injunction); *see also id.* at 1842 (Kennedy J. concurring) (recognizing that where patents are asserted by entities which do not use them for production but rather primarily for obtaining licensing fees, "legal damages may well be sufficient…and an injunction may not serve the public interest); *z4 Tech , Inc. v. Microsoft Corp*, 434 F. Supp. 2d 437, 441-42 (E.D. Tex. 2006) (finding monetary damages adequate because plaintiff was not precluded from licensing its patent to others); *Paice LLC v. Toyota Motor Corp*, No. 2:04-CV-211, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) (finding that the plaintiff's supposed "inability to license" was not sufficient to find monetary damages inadequate where plaintiff did not compete in the market or produce the patented

9

product). Accordingly, no monetary prejudice prevents this Court from granting a stay. *See Gioello Enter.*, 2001 WL 125340, at *2 ("Gioello is not selling or actively licensing goods or services related to [its] patent; money damages is an adequate remedy for any delay in redress."); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, 48 U.S.P.Q. 2d 1058, 1061, No. CV 97-7681 LGB (Ex), 1998 WL 670240 (C.D. Cal. July 15, 1998) (ordering a stay because money damages would adequately compensate the plaintiff).

Because Katz will suffer no prejudice, much less "undue" prejudice, this factor weighs heavily in favor of granting a stay.

### B.    A Stay Will Simplify The Issues In Question And Trial Of This Case.

Katz claims that Defendants infringe one or more claims of the patents-in-suit. This Court will need to examine the validity of the patents (based on prior art and deficiencies in the patents' specifications). During a reexamination, the PTO reviews cited prior art and determines whether it renders one or more of the claims, in their originally issued form, unpatentable as well as whether information added or deleted during the reexamination proceeding comports with 35 U.S.C. § 112. 37 C.F.R. 1.552. The PTO can cancel or amend one or more claims of a reexamination patent in light of newly considered prior art. 35 U.S.C. § 307(a).[8] Katz may also amend claims. But more importantly, the PTO may cancel some or all of the claims at issue in the reexaminations. PTO statistics demonstrate that in the twenty-five years since the start of

---

[8]    35 U.S.C. § 307(a) (Upon completion of the reexamination process, the PTO "will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amendment of new claim determined to be patentable.").

*ex parte* reexaminations, the claims are either cancelled outright or changed 74% of the time. *See* Ex. 2, PTO *Ex Parte* Reexamination Filing Data - March 31, 2006.[9] Thus, the PTO's reexamination will impact the entire basis for this action. For example, during the reexaminations the PTO will evaluate prior art and priority dates and Katz will likely take positions, to be recorded in the reexamination prosecution histories, regarding the prior art. Katz has already taken positions regarding priority dates and will likely take additional positions.

Moreover, reexamination of these patents will undeniably impact this Court's resolution of many of the issues relating to all of the patents-in-suit because the patents arise from related applications,[10] refer to the same subject matter,[11] and share many of the same terms.[12] *See also Alloc*, 2003 WL 21640372, at *2 (explaining that even though

---

[9]  Exhibit 11 is a copy of "Exhibit A" to Katz's Supplemental Claim Construction Brief Addressing New Evidence filed in the Eastern District of Texas (5:05-CV-142-DF) on December 4, 2006.

[10]  For example, twenty-two of the twenty-six asserted patents all allegedly relate to telephone control systems and arose from Katz's first patent application. The remaining four asserted patents arose from Katz's '773 patent application and allegedly relate to multiple party telephone control systems. Eleven of the asserted patents are either being reexamined or are direct descendants of one or more patents currently being reexamined.

[11]  All of the asserted patents allegedly relate to telephone control systems, public communications facilities, telephone call processing, or telephone interfaces as demonstrated by their various patent titles.

[12]  As one example, the PTO has determined that one prior art publication ("Barger") discloses the use of three Katz claim terms ("analysis control system," "communication facility," and "remote terminals") found in just one claim of one of the reexamination patents (claim 27 of the '863 patent). For this one claim to survive reexamination, Katz must either amend the claim to further narrow it, acknowledging that Barger discloses the three terms, or distinguish Barger thereby further defining the meaning of the three terms. Importantly, the term "analysis control system" is found in one or more claims of three other patents-in-suit (*i.e.*, the '762, '021, and '346 patents); the term "communication facility" is found in one or more claims of fourteen other patents-in-suit (*i.e.*, the '968, '984, '150, '252, '197, '576, '762, (Continued...)

11

asserted patent was not subject to reexamination, because a related patent was in reexamination and because patents were "alike in subject matter as well as in many of their claims" there was "a sufficient correlation among all of the patents" warranting a stay). Accordingly, the PTO's reexamination findings will simplify the case, and serve to conserve this Court's resources should this Court grant a stay.

At the very least, the PTO's analysis and application of asserted prior art will further inform this Court of the applicability and scope of the art as well as inform the Court regarding the claim construction of common terms found throughout the Katz patents. *Guthy-Renker*, 48 U.S.P.Q. 2d at 1060-1061 (noting that the expertise of the PTO in reexamining the claims of the patents-in-suit will be instructive to the Court's claim construction, warranting a delay of *Markman*).

### 1. A Stay Will Conserve Judicial Resources And Party Resources.

This Court has previously recognized that it can conserve its scarce resources by staying cases pending the outcome of concurrent PTO reexamination proceedings. *See e.g.*, *Abbott Diabetes Care,* 2006 WL 2375035, at *6; *Applera*, 04-CV-1230 (GMS), D.I. 81, *Alloc*, 2003 WL 21640372, at *2; *Pegasus Dev*, 2003 WL 21105073, at * 2; *Gioello Enters.*, WL 2001 125340, at *1-2. The facts of the present case are consistent with the facts of these cases and support conserving this Court's resources by postponing resolution of issues entirely dependent upon the patent claims — many of which will be affected in some manner by the PTO's reexamination findings.

---

'893, '021, '965, '134, '703, '346, and '415 patents); and the term "remote terminals" is found in one or more claims of thirteen other patents-in-suit (*i e.*, the '150, '773, '590, '984, '252, '197, '688, '762, '893, '021, '965, '134, and '346 patents).

*First*, because the claims' scope may change, this Court should not review and decide claim construction until any reexamination decision is rendered. *Vitronics Corp. v. Conceptronic Inc.*, 36 F. Supp.2d 440, 442 (D. N.H. 1997). Indeed, addressing and deciding the claim construction prior to the PTO's findings in reexamination would deprive this Court of the PTO's expertise, something this Court has been reluctant to do in the past. *Pegasus Dev.*, 2003 WL 21105073, at * 2. A premature claim construction ruling would also run the risk of inconsistent rulings or this Court issuing in effect, advisory opinions. *Abbott Diabetes Care*, 2006 WL 2375035, at *6 (citing *Gioello Enters.*, No. C.A. 99-375 GMS, WL 2001 125340, at *1). *Second*, because this Court's claim constructions will impact both infringement and validity, the reexamination will affect this Court's involvement in all remaining aspects of the case (*e.g.*, discovery, summary judgment, and possibly trial). *See Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q. 2d 1765, 1758, No. 02-74796, 2003 WL 22870902 (E.D. Mich. Oct. 7, 2003) ("[T]he PTO's determination will be beneficial to the efficient resolution of this action. The PTO may resolve any remaining disputes [and] simplify the issues . . . ."); *Softview Computer Prods. Corp. v. Haworth Inc.*, No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) ("[I]f the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified."). *Third*, because Katz has dozens of other patent infringement cases pending against more than 140 defendants in this and other District Courts, it is likely that dispositive results (from another District or from the Federal Circuit) will impact the case before this Court during the pendency of a stay. *Fourth*, it is likely that asserted claims of some of the patents-in-suit will be cancelled, or amended such that discovery

13

into certain of Defendants' accused devices would be irrelevant and wasteful, and other asserted defenses (*e.g.*, laches, estoppel, waiver, unclean hands, etc.) would be mooted as to such claims. *Loffland Bros. Co. v. Mid-Western Energy Corp.*, No. Civ-83-2255-E, 1985 WL 1483, at *2 (W.D. Okla. 1985) ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled.").

In short, absent a stay, this Court's resources would be drained by motion practice relating to issues which may eventually become moot and discovery disputes relating to claims that may either change or not exist after reexamination. *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994 at *2 (N.D. Cal. May 5, 1993) ("[C]ourts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."); *Target Therapeutics, Inc. v. Scimed Life Sys., Inc*, No. C-94-20775, 1995 WL 20470 at *2 (N.D. Cal. Jan. 13, 1995) ("Absent a stay [pending reexamination], …the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination.").

In addition, the costs of *all* parties (including Plaintiff) will be reduced if this Court grants a complete stay. *Target Therapeutics,* No. C-94-20775, 1995 WL 20470 at *2 ("Absent a stay [pending reexamination], the parties may end up conducting a significantly wider scope of discovery than necessary….).

### 2. The Issues Will Be Narrowed And Simplified After The PTO Completes Reexamination.

In addition to the preservation of judicial and party resources that a stay would provide, the PTO's decisions on the pending reexamination applications will also

14

simplify and narrow many issues that will eventually be before this Court. Specifically, a stay will aid this Court by narrowing issues relating to claim construction, patent validity based upon prior art, priority issues, and whether certain asserted claims and patents will remain.

### a. Reexamination Will Affect Claim Construction.

The impact of the current reexamination proceedings on the construction of claims in the patents-in-suit is clear. During reexamination there is typically a give-and-take between the Patent Examiner and the applicant in which claims that have been rejected as unpatentable are amended. Therefore, it is likely that during the current reexamination proceedings, the particular claim language in the reexamination patents-in-suit will either be changed or the claims cancelled altogether should those claims be found unpatentable over the prior art.[13]

Even if the claim language is not changed or deleted, Katz's representations to the PTO will inform this Court as to the meaning of similar terms found in the other non-reexamination patents. The PTO's and the patentee's actions during the reexamination procedure become part of the prosecution history. *See e.g., E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements made

---

[13] Indeed, many of Katz's infringement contentions may simply be rendered moot by a cancellation or modification of the claims presently being reexamined. *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because, [sic] the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."); *Middleton, Inc. v. Minn. Mining & Mfg., Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *10 (S.D. Iowa Aug. 24, 2004) (*citing Gioello Enters Ltd., v. Mattel, Inc.*, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (finding that PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment)).

15

during PTO proceedings "are relevant prosecution history when interpreting claims"). And the prosecution history is a valuable source of intrinsic evidence which may be used for claim construction purposes. *Phillips v. AWH Corp*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). The prosecution history of related, but unasserted patents, may also inform this Court as to the meaning of terms used consistently throughout the Katz family of patents. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-1350 (Fed. Cir. 2004) (holding that statements made in prosecution of one patent are relevant to the scope of all sibling patents); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1460 & n.2 (Fed. Cir. 1998) (noting that it was proper to consider the prosecution histories of two related re-examination patents originating from the same parent, to determine the meaning of a term used in both patents); *Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997) (recognizing that common terms in separate but related patents should be construed in like manner). Accordingly, the interactions between Katz and the PTO will undeniably impact this Court's claim construction. *Guthy-Renker*, 48 U.S.P.Q. 2d at 1060-1061 (noting that the expertise of the PTO in reexamining the claims of the patents-in-suit will be instructive to the court's claim construction, warranting a delay of *Markman*); *Vitronics*, 36 F. Supp. 2d at 442 ("The reexamination process could more precisely define the scope of claim 1, or it could leave claim 1 unchanged. Because determining the scope of the disputed claim is central to the resolution of this case, it would be inefficient for the court to expend time and resources engaging in claim interpretation while the scope of the claim is still under review at the PTO.").

The current reexaminations of the '156 and '707 patents demonstrate how the PTO's actions in the ongoing reexaminations have an immediate impact on the

16

construction of claim terms found in the patents in suit. As recently as July 2006, in connection with the '707 reexamination, Katz submitted an argument to the PTO regarding the meaning of a particular term found in numerous claims of the patents in suit: "consumable participation key." Katz argued that that term was broad enough to encompass a participation key that, once consumed, could nonetheless be refreshed under certain circumstances (e.g., not automatically). Ex. 3, Reexam Control No. 90/006,978, Response filed by Katz on July 17, 2006 at 53. In September, first in connection with the '156 reexamination and then in connection with the '707 reexamination, the Examiner determined that "[t]he consumable key number cannot ever—for any reason—be refreshed or recharged or renewed once the predefined number of uses have been used …" Ex. 4, Reexam Control No. 90/007,697, Office Action dated September 8, 2006 at 4-5; Ex. 5, Reexam Control No. 90/006,978, Office Action dated September 29, 2006 at 92. In response, in October, faced with the Examiner's claim construction, Katz abandoned its prior construction and adopted the Examiner's narrow definition. Ex. 6, Reexam Control No. 90/007,697, Response filed by Katz on October 26, 2006 at 21-22. This single example demonstrates the benefits and efficiencies of allowing the PTO to conclude the reexaminations before the Court takes up these issues.

The impact of the communications between Katz and the PTO as well as the findings of the PTO on this Court's future claim construction was further demonstrated in another Katz action pending in the Eastern District of Texas (5:05-cv-00142-DF). In that case, *Markman* briefing was complete and a two day *Markman* hearing was held on September 19th and 20th of this year. One month later, a PTO decision during reexamination of one of the patents-in-suit prompted Defendants to move for leave to file

17

supplemental *Markman* briefing. On December 5, 2006, the Eastern District of Texas Court granted the motion and accepted supplemental *Markman* briefing from Katz and the defendants. This scenario aptly demonstrates how the ongoing Katz reexaminations will provide valuable intrinsic evidence that this Court will eventually utilize when construing various terms found throughout the twenty-six asserted patents in this case. Absent a stay, and with patents both asserted and unasserted in reexamination, Katz's ongoing representations and the findings of the PTO during reexaminations process will, like the Texas action above, affect this Court's ability to render its *Markman* ruling.

### b. Reexamination Will Impact the Prior Art Analysis.

In addition, reexamination will also impact Defendants' prior art-based invalidity defenses. During reexamination, the PTO assesses the prior art and compares it to the claims of the patents being reexamined. Should the PTO determine that prior art renders one or more claims of the reexamination patents unpatentable, the PTO will cancel those claims. Likewise, the PTO may also ascertain whether the specification provides support for the claims of the reexamination patent. If not, the claim will be rendered unpatentable and cancelled. Indeed, with regard to the reexamination of the '156 patent, the PTO is currently determining whether there was support for the "consumable key number" term in the original specification. *See* Ex. 7, Reexam Control No. 90/007,697, Examiner Interview Summ. Record October, 12, 2006.

### c. Reexamination Will Also Impact Priority Issues.

Apart from the PTO's expertise in examining the prior art during reexamination, the PTO will also narrow the issues before this Court by determining the priority dates for the inventions claimed in the Katz patents. All but two of the twenty-six asserted

18

patents arose from either continuation, continuation-in-part or divisional applications. As such, only claims that were supported by the original specification are entitled to the original specification's priority date. 35 U.S.C. §§ 119-121. Should the PTO determine, for example during the pending '156 patent reexamination, that one or more claims are not entitled to an earlier priority date, this would drastically affect what is and what is not prior art to many of the claims of the patents-in-suit.

### d. Amendments Made During Reexamination Will Directly Impact Whether Certain Patents Remain In This Litigation.

As discussed above, it is very likely that Katz will have to amend one or more claims of any reexamination patent or patents to overcome a prior art rejection, and the amendments result in claims that are not substantially identical to the original claims, the original claims of the patent or patents will be deemed surrendered. 35 U.S.C. § 307 (stating that 35 U.S.C. § 252 applies to amended reexamination claims). Accordingly, during the reexamination of Katz's expired patents (*i.e.*, the '285, '863, '156, and '551 patents) should Katz submit claim amendments resulting in claims that are not substantially identical to the original claims, those patent claims will be surrendered and no longer at issue because Katz cannot collect damages relating to any purported infringement of those claims. *See Seattle Box Co. v. Indus. Crating & Packaging Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) (noting that under § 252 "[a]n original patent cannot be infringed" if the new claims are not substantially identical to the original claims because "the original patent is surrendered"); *Intest Corp. v. Reid-Ashman Mfg., Inc.*, 66 F. Supp. 2d 576, 583 (D. Del. 1999) ("[I]f the reexamined and original claims are not identical, then the patentee has no right to damages for infringement prior to the reissue or reexamination date, because the original patent has been surrendered and is

19

extinguished."). Thus, entire patents could be removed from this litigation if, as is statistically likely, amendments are made to the claims of those patents.

In short, granting a stay will conserve this Court's and the parties' resources, allow this Court the benefit of the PTO's amendment, cancellation or affirmation of the claims' scope prior to the Court conducting its own claim interpretation, and narrow the issues to be decided as they may eventually be rendered moot. As this Court previously recognized under similar circumstances:

> [A] stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and…related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources.

*Pegasus Dev.*, 2003 WL 21105073, at * 2 (citations omitted).

For all of the foregoing reasons, this factor also weighs heavily in favor of granting a stay.

### C. Discovery Has Not Begun And A Trial Management Order Has Not Been Issued.

"Stays are more likely to be granted if requested early in litigation before substantial discovery and trial preparation and less likely to be granted if requested late." 4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][b][iv] (Mathew Bender & Co. 2004). In *Target Therapeutics*, 1995 WL 20470 at *2, the court ordered a stay because no significant discovery or trial preparation had taken place. And in *Guthy-Renker*, 48 U.S.P.Q. 2d at 1060, the court noted that "the relevant factors weigh heavily in favor of

20

staying the proceedings pending the conclusions of the reexamination" when the parties had not yet engaged in expensive discovery and a trial date had not been set.

In this case, the parties have done no discovery. The Court has not entered a case management order much less set a trial date. Other than the service of the Complaint, the filing of Answers, and the submission of *pro hac* petitions, virtually every aspect of the case remains (*e.g.,* written discovery, depositions, *Markman* briefing, *Markman* ruling, expert reports, dispositive motions and rulings, pretrial papers, and setting a trial date). Moreover, even if this case were at a later stage, courts have frequently determined that a stay is nevertheless warranted pending patent reexamination.[14] As discovery has not even begun, much less a trial date set, this third and final factor also strongly supports Defendants' request for a stay. *See, e.g., Alloc*, 2003 WL 21640372, at *3 (granting a stay where discovery had not begun, a discovery schedule not been entered, and no trial date had been set).

---

[14] *Ralph Gonnocci*, 68 U.S.P.Q.2d at 1756-1760 (granting defendant's motion to stay filed less than two months before trial was scheduled to commence and after extensive discovery); *Softview Computer Prods.*, No. 97 CIV. 8815 2000 WL 1134471, at * 3 (granting motion to stay after burdensome discovery); *Bausch & Lomb*, 914 F. Supp. at 953 (granting motion to stay after fact discovery was completed and trial date set); *Robert H. Harris Co. v. Metal Mfg Co.*, Civ. No. J-C-90-179, 1991 WL 217666, at * 4 (E.D. Ark. June 21, 1991) (granting motion to stay approximately one month before trial was scheduled to begin); *Grayling Indus., Inc. v. GPAC, Inc.*, Civ. No. 1:89-CV-451-ODE, 1991 WL 236196, at * 3 (N.D. Ga. Mar. 25, 1991) (granting motion to stay after action had been pending for two years and pretrial order was signed); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85 C 7565, 1987 WL 6314, at *4 (N.D. Ill. Feb. 2, 1987) (granting motion to stay after discovery was completed); *Loffland Bros.*, 1985 WL 1483, at * 2 (granting motion to stay after substantial discovery, issuance of the pretrial order, and continuance of original trial date).

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Stay Action Pending the Patent And Trademark Office's Reexamination of the Katz Patents, and that this Court enter Defendants' Proposed Order attached hereto.


                                                */s/ Jeffrey L. Moyer*

OF COUNSEL:

David K. Callahan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Qwest
Communications Int'l Inc., Qwest Wireless,
L.L.C., Qwest Communications Corp., Qwest LD
Corp., Qwest Broadband Services, Inc., and
Qwest Interprise America, Inc.*

Dated:  December 18, 2006

22

_/s/ Frederick L. Cottrell, III_ _____
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
_Attorneys for Defendants Time Warner Cable_
_Inc., Time Warner NY Cable LLC, Time Warner_
_Entertainment Company LP, AOL LLC,_
_Compuserve Interactive Services Inc., Netscape_
_Communications Corporation, United States_
_Cellular Corporation, TDS Telecommunications_
_Corporation, TDS Metrocom, LLC, Cablevision_
_Systems Corporation, CSC Holdings, Inc.,_
_Cablevision Systems New York City_
_Corporation, Cablevision of Brookhaven, Inc.,_
_Cablevision of Connecticut Corporation,_
_Cablevision of Hudson County, Inc., Cablevision_
_of Litchfield, Inc., Cablevision of Monmouth,_
_Inc., Cablevision of New Jersey, Inc.,_
_Cablevision of Oakland, LLC, Cablevision of_
_Rockland/Ramapo, LLC, Charter_
_Communications, Inc., Charter Communications_
_Holding Company, LLC, Charter_
Dated: December 18, 2006             _Communications Operating, LLC, and Charter_
_Communications Entertainment I, LLC_

23

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

## BY ELECTRONIC MAIL AND HAND DELIVERY

Mary B. Graham
Julia Heaney
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899-1347

I hereby certify that on December 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

## BY ELECTRONIC MAIL

Patrick J. Flinn
Kristen L. Melton
Jeffrey A. Cooper
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

David Maxwell
William R. Hubbard
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Angela Payne James
Cherri Gregg
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000

John W. Kozak
Steven P. Petersen
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601

Josh Krevitt
Charles J. Boudreau
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

1

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA  94104-2878

Jeffrey S. Standley
James L. Kwak
F. Michael Speed, Jr.
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH 43017

_Kelly E. Farnan_
Kelly E. Farnan (#4395)
farnan@rlf.com

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br><br>        Plaintiffs,<br><br>        v.<br><br>THERMO ELECTRON CORPORATION,<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 04-1230 (GMS) |
| THERMO FINNIGAN LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-110 (GMS) |

## **ORDER**

1.    On September 7, 2004, Applera Corporation, MDS Inc., and Applied Biosystems/MDS

Sciex Instruments (collectively, "AB/Sciex") filed Civil Action No. 04-1230 against Thermo

Electron Corporation ("Thermo Electron"), alleging infringement of U.S. Patent No.

4,963,736 (the "'736 patent"). On February 23, 2005, Thermo Finnigan LLC ("Thermo"),

a subsidiary corporation of Thermo Electron, filed the above-captioned countersuit, Civil

Action No. 05-110, against AB/Sciex, alleging infringement of U.S. Patent No. 6,528,784

(the "'784 patent"). On April 27, 2005, the court consolidated the 04-1230 action with the

05-110 action to streamline the discovery process and prevent duplicative litigation. Presently before the court, is AB/Sciex's motion to stay the 05-110 action pending reexamination of the '784 patent by the Patent and Trademark Office (the "PTO").[1] The present motion arises out of the parties' correspondence with the PTO following the filing of the 05-110 lawsuit.

2.    On March 4, 2005, Thermo filed a request with the PTO for a broadening reissue of the '784 patent. On July 29, 2005, AB/Sciex filed a protest with the PTO regarding the reissue filing. Subsequently, on September 16, 2005, AB/Sciex filed a Request for Reexamination of the '784 patent with the PTO. On November 4, 2005, the PTO granted AB/Sciex's request. On November 18, 2005, AB/Sciex filed the present motion to stay the litigation of the '784 patent pending the outcome of the reexamination procedure.

3.    AB/Sciex contends that a stay is appropriate because it would avoid a waste of the court's and the parties' resources. (D.I. 43, at 2.) According to AB/Sciex, waiting until the patent emerges from reexamination would focus the case for the following reasons: (1) the court will not need to revisit claim construction of the '784 patent to take into consideration the new intrinsic record created during the reexamination; (2) if the patent is declared invalid, the suit will, in all likelihood, be dismissed; (3) the outcome of reexamination may encourage settlement; (4) the reexamination record may focus the litigation and reduce the trial issues; and (5) the cost to the parties and court will most likely be reduced. (*Id.* at 3.) AB/Sciex further contends that allowing the case to proceed to trial without the

---

[1] For convenience, and because AB/Sciex's motion requests a stay of the 05-110 case, the court will cite to case documents using the D.I. number from the 05-110 case.

reexamination record would create a substantial risk of inconsistent rulings or the issuance of an advisory opinion if the PTO concludes that the patent is invalid. (*Id.*) Lastly, AB/Sciex contends that it is not attempting to gain a tactical advantage, and that a stay would not unduly prejudice Thermo.

4.     Conversely, Thermo maintains that AB/Sciex's motion is merely a litigation tactic crafted by AB/Sciex to cause delay. (D.I. 56, at 1.) Thermo further asserts that granting the stay would be inefficient in that it would "undo the very efficiencies the court created by consolidati[ng the two cases]." (*Id.*) Additionally, Thermo asserts that it will be prejudiced if the court stays the case because it will be "delay[ed] in its ability to stop AB/Sciex's infringement." (*Id.* at 12.) Finally, Thermo asserts that if AB/Sciex "were sincere in its assertion that a stay is not prejudicial to the patentholder, it would offer to stay its claim on the '736 patent until the reexamination of the '784 patent is over, so that the parties and the [c]ourt can continue to benefit from the efficiencies of consolidation." (*Id.*)

5.     After having considered the parties submissions on the issue (D.I. 42, 43, 56, 64), the court concludes that staying both cases best serves the interests of justice, and is the most efficient approach to the consolidated schedule that the court has envisioned for the litigation. The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.*,

69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

6.   In the present case, Thermo asserts that a stay will prejudice it in that it will be unable to enforce its patent. The court is not persuaded. First, Thermo's position assumes that the PTO will leave the claims of the '784 patent unaltered after reexamination. Further, while Thermo may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice Thermo, or present a clear tactical disadvantage. On the other hand, granting the stay will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the '784 patent are invalid, then many of the issues in the litigation would become moot. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency. Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions. *See Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001).

7.   Additionally, due to the consolidated nature of the instant cases, as well as the legal and factual overlap of issues, and technology disclosed in the '736 and '784 patents, the court believes that the most efficient and practical way to proceed with the litigation is to stay both cases until the '784 patent reexamination ends.

8.   Lastly, fact discovery is not scheduled to close until March 17, 2006 and, although already set, the trial of these matters is not scheduled to take place until December 4, 2006. Thus, the court concludes that the balance of harms weighs in favor of granting the stay for both cases.

4

Therefore, IT IS HEREBY ORDERED that:

1.    AB/Sciex's Motion to Stay This Action Pending Reexamination of the Patent in Suit

       (D.I. 42) is GRANTED.

2.    Thermo's request to stay the 04-1230 litigation pending reexamination of the '784

       patent (D.I. 56) is GRANTED.

3.    The parties shall notify the court when the PTO issues its reexamination decision.

Dated: December 28, 2005                             /s/ Gregory M. Sleet
                                                                      UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 06-546-GMS<br>)<br>)   JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF KELLY E. FARNAN IN SUPPORT OF
DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO STAY ACTION PENDING THE PATENT AND
TRADEMARK OFFICE'S REEXAMINATION OF THE KATZ PATENTS**

I, Kelly E. Farnan declare under penalty of perjury under the laws of the State of

Delaware that the following is true and correct:

1.    I am an associate at Richards, Layton & Finger, P.A., One Rodney Square

Wilmington, Delaware  19801, and I am Defendants' counsel in the above-captioned

litigation.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Plaintiff's,

Ronald A. Katz Technology Licensing, L.P., ("Katz"), November 6, 2006, Response to

Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing

Patent Litigation Pursuant to 28 U.S.C. § 1407, filed in Ronald A. Katz Technology

Licensing, L.P. v. Cox Communications, Inc. et al, 9:06-cv-00191-RHC (E.D. Tex.

2006).

3.    Attached hereto as Exhibit 2 is a true and correct copy of the PTO's *Ex Parte* Reexamination Filing Data (March 31, 2006), which was "Exhibit A" to Katz's December 4, 2006, Supplemental Claim Construction Brief Addressing New Evidence, (5:05-CV-142-DF)(E.D. Tex. 2006).

4.    Attached hereto as Exhibit 3 is a true and correct copy of excerpts from Katz's July 17, 2006 Reexamination Response (Reexam Control No. 90/006,978).

5.    Attached hereto as Exhibit 4 is a true and correct copy of excerpts from the PTO's September 8, 2006, Office Action (Reexam Control No. 90/007,697).

6.    Attached hereto as Exhibit 5 is a true and correct copy of excerpts from the PTO's September 29, 2006, Office Action (Reexam Control No. 90/006,978).

7.    Attached hereto as Exhibit 6 is a true and correct copy of excerpts from Katz's October 26, 2006 Reexamination Response  (Reexam Control No. 90/007,697).

8.    Attached hereto as Exhibit 7 is a true and correct copy of the PTO's October, 12, 2006, Examiner Interview Summary (Reexam Control No. 90/007,697).

Executed this 18th day of December, 2006, in Wilmington, Delaware.

Kelly E. Farnan
Kelly E. Farnan

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

**BY ELECTRONIC MAIL AND HAND DELIVERY**

Mary B. Graham
Julia Heaney
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19899-1347

I hereby certify that on December 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**

Patrick J. Flinn
Kristen L. Melton
Jeffrey A. Cooper
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

David Maxwell
William R. Hubbard
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Angela Payne James
Cherri Gregg
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC  28280-4000

John W. Kozak
Steven P. Petersen
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601

Josh Krevitt
Charles J. Boudreau
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166-0193

1

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA  94104-2878

Jeffrey S. Standley
James L. Kwak
F. Michael Speed, Jr.
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH 43017

Kelly E. Farnan (#4395)
farnan@rlf.com

2

EXHIBIT 1

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re:

Katz Interactive Call Processing Patent
Litigation

MDL Docket No. 1816

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S
RESPONSE TO DEFENDANT TARGET'S MOTION FOR TRANSFER AND
CONSOLIDATION OF KATZ INTERACTIVE CALL PROCESSING PATENT
LITIGATION PURSUANT TO 28 U.S.C. § 1407**

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Plaintiff
Ronald A. Katz Technology Licensing, L.P.

In accordance with 28 U.S.C. Section 1407 and Rules 7.1(b) and 7.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz"), respectfully submits this Opposition to the Motion for Transfer and Consolidation of Katz Technology Licensing Patent Litigation ("Motion") filed by Defendants Target Corporation, Target Bank, and Target National Bank (collectively "Target"), dated October 17, 2006. Katz' Opposition is supported by the accompanying Memorandum of Law, the Declaration of Nathan K. Cummings (Exhibit 1), the Declaration of Christine K. Hsieh (Exhibit 2) and Exhibits 3 through 38; all exhibits are contained in the Appendix of Exhibits, served and filed herewith.

1.      Katz admits that Target's Motion seeks to transfer and consolidate twenty-five actions and that Target attaches a schedule of twenty-five actions as Exhibit A. Katz denies that it initially filed twenty-five actions for patent infringement and that it filed twenty-three of those actions within the last two months as stated by Target. As pertinent to the Motion, Katz filed ten patent infringement actions, five in the Eastern District of Texas, five in the District of Delaware (the "Katz Actions") and, as subsequently amended, the actions name 175 defendants. Katz filed two of those actions in the Lufkin Division of the Eastern District of Texas: *Ronald A. Katz Tech. Licensing, L.P. v. Chevron Corporation, et al.,* No. 9:06-CV-178 (Lufkin Division); and *Ronald A. Katz Tech. Licensing, L.P. v. Alltel Corporation, et al.,* No. 9:06-CV-177 (Lufkin Division). The assigned judge in Lufkin *sua sponte* divided those two cases into fifteen separate actions, indicating that he intends to jointly administer the cases. Katz further admits that each of the Katz Actions was designated as a related case to the earlier filed case, *Ronald A. Katz Tech. Licensing L.P. v. Citibank, N.A.,* 5:05-CV-142 ("Citibank Action").

2.      Katz admits that it is a limited partnership organized under the laws of the State of California and having a principal place of business in Los Angeles, California and further admits that Ronald A. Katz is the founder of Katz and is the sole named inventor of each of the patents asserted in the Katz Actions.

3.      Katz admits that each of the Katz Actions involves patents Katz refers to as

"interactive call processing patents." Katz further admits that more than fifty United States patents have issued to Ronald A. Katz for his inventions in the interactive call processing field, including the twenty-seven patents asserted in the Katz Actions.

4.   Katz admits that the Katz Actions assert that each of the defendants infringe certain of Katz's interactive call processing patents by making, using, offering to sell and/or selling automated telephone systems.

5.   Katz admits that it has previously filed two infringement actions involving some of its interactive call processing patents and that the two courts in which those actions were filed have some experience with some of Katz's interactive call processing patents.   Katz further admits that some of the patents involved in this litigation were previously asserted in *Katz v. AT&T Corporation* and related companies in the United States District Court for the Eastern District of Pennsylvania in 1997 and that Judge Lowell A. Reed issued a 63-page claim construction order in connection with that case found at 63 F.Supp.2d 583 (E.D. Pa. 1999) and which speaks for itself.   Katz denies that the order construed claim terms from five of the patents; Judge Reed's order construed terms from six of the patents.

6.   Katz admits that fourteen of its patents involved in the Katz Actions were the subject of a declaratory judgment action and related counterclaim in the United States District Court for the Central District of California styled *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 1-CV-9871 (C.D. Cal.) ("the *Verizon* case"), and that two additional Katz patents were at issue in that case which are not at issue in the Katz Actions.   Katz further admits that the case was assigned to Judge R. Gary Klausner and that the case was pending in that Court for two years and eight months.   Katz denies Target's characterization of the *Verizon* case as "closely-related" to the Katz Actions in that, while certain overlapping patents were at issue, the defendants in that action were different and those defendants' systems were unique to each defendant in that case.   Katz admits that the *Verizon* case settled six weeks before trial was set to commence.

7.      Katz admits that in the claim construction order issued in the *Verizon* case on
June 23, 2003, which can be found at 326 F.Supp.2d 1060 (C.D. Cal. 2003) and which speaks for
itself, Judge Klausner construed some of the same terms from the Katz patents at issue in the
*AT&T* case, as well as some terms not previously construed by Judge Reed in the *AT&T* case.
Judge Klausner construed terms from only ten of the patents involved in the Katz Actions.

8.      Katz admits that cross motions for summary judgment were made in the *Verizon*
case.  Judge Klausner's orders and the proceedings including the dismissals subsequent thereto
are matters of record in the *Verizon* action and speak for themselves.

9.      Katz admits that it filed a lawsuit in July 2005 styled *Ronald A. Katz Tech.*
*Licensing, L.P. v. Citibank N.A., et al.*, No. 5:05-CV-142 (E.D. Tex.) (Texarkana Division)
against multiple defendants.  Katz further admits that its amended complaint in the *Citibank* case
asserted twenty-two (22) of the Katz interactive call processing patents.  Katz admits that Judge
Folsom on August 1, 2006 issued the following Order:

> ORDERED that in addition to the 10 patent claims selected by Plaintiff on
> May 16, 2006 (Docket No. 128), Plaintiff is permitted to select up to 8 additional
> patent claims under the following restrictions: (1) each additional patent claim
> selected by Plaintiff must come from a patent not previously asserted in the
> patent claims selected on May 16, 2006 (Docket No. 128); (2) only one claim per
> patent may be selected; (3) each additional claim selected must come from the set
> of 48 claims asserted by Plaintiff against the Defendants in Plaintiff's
> Supplemental Disclosures of Asserted Claims and Preliminary Infringement
> Contentions, served on February 27, 2006; and (4) each of the additional selected
> claims may only be asserted against a defendant against whom that claim was
> previously asserted pursuant to Plaintiff's Supplemental Disclosures of Asserted
> Claims and Preliminary Infringement Contentions.  It is further
>
> ORDERED that with respect to patents from which Plaintiff did not select any of
> its 10 claims on May 16, 2006 (Docket No. 128) and for which Plaintiff does not
> select any of its up to 8 additional claims, the claims and counterclaims of all
> parties shall be severed pursuant to Rule 21 of the Federal Rules of Civil
> Procedures, and the severed action along with any corresponding discovery shall
> be stayed.

10.     Katz admits that on August 21, 2006, Katz filed five actions in three different
divisions of the United States District Court for the Eastern District of Texas and that
subsequently the district court in the Lufkin Division *sua sponte* split two of these actions into
fifteen separate actions, with the Court noting that it would manage the cases in a coordinated

fashion. Katz admits that twenty separate actions are now pending in the Eastern District of Texas.

11. Katz admits that on September 1, 2006, it filed five additional actions in the United States District Court for the District of Delaware.

12. Katz admits that all of the twenty five actions were filed in federal court.

13. Katz admits that each of the actions alleges infringement of patents from Katz's interactive call processing patent portfolio and that some of the patents are asserted in more than one of the Katz Actions. Katz admits that attached to Target's Motion are two tables, Exhibits B and C which purport to show the asserted patents and the Katz Actions in which they are asserted in Texas and Delaware, respectively.

14. Katz admits that some of the answers and counterclaims filed to date in the Katz Actions assert some overlapping defenses of invalidity and unenforceability. Katz lacks sufficient information and knowledge to allow it to answer the balance of the purported averments set forth in paragraph 14 of Target's Motion and therefore denies them.

15. Katz denies that no answers have been filed in the Katz Actions and states that all defendants in some cases and the large majority of defendants across all cases have answered and counterclaimed and at least two case management conferences have been scheduled and one court has issued orders as part of his announced plan to jointly administer the cases. Katz admits that no trial date has yet been set in the Katz Actions. Katz admits that the *Discover* case resulting from Judge Folsom's August 1 Order was stayed in August 2006, pending final resolution of the *Citibank* case. Katz denies all remaining allegations in paragraph 15 of Target's Motion.

16. Katz admits that an Amended Docket Control Order dated May 8, 2006 in the *Citibank* case reflects that summary judgment motions are due to be filed February 2, 2007, and that trial is set to begin May 8, 2007.

17. Katz denies that there have been no substantive orders made in the *Citibank* or *Discover* cases. Judge Folsom has issued case management orders, orders regarding claim

selection, an order severing and staying claims and certain discovery orders. Judge Folsom has also presided over extensive briefing, a tutorial and a hearing on claim construction under the *Markman* decision and is expected shortly to issue his claim construction order. Katz admits that the *Citibank* case is not within six weeks of trial as was the *Verizon* case at the time it settled but states that it is far advanced toward trial with extensive substantive work accomplished to date. Katz further states that the claim construction order which is imminent will trigger deadlines that will move the *Citibank* case quickly toward trial.

18.    Katz admits that a claim construction hearing was held in the *Citibank* case on September 20, 2006 and admits that Target and American Airlines filed emergency motions in the *Citibank* case seeking consolidation with the *Citibank* case of the cases in which Target and American Airlines, respectively, are defendants and continuance of that hearing. Katz admits that it opposed those motions and states that those motions were denied by Judge Folsom. Katz lacks information and knowledge sufficient to admit or deny the remaining allegations in this paragraph and therefore denies the averments.

19.    Katz denies that Judge Klausner is the most experienced judge in the country with regard to the Katz patents. Katz submits that Judge Folsom is the judge with the most current and extensive knowledge of the Katz patents based on his management of the *Citibank* case for the past fifteen months, his substantive rulings on claim selection, his appointment of a technical expert, and the extensive briefing, tutorial and hearing before him on claim construction.

20.    Katz admits that, due to the overlapping patents at issue in the Katz Actions, there will be some common issues of fact as to the technology underlying the patents and on validity and unenforceability issues but submits that, even as to those issues, there will be facts unique to each defendant and further submits that those common issues of fact are not so numerous as to warrant consolidation, particularly in light of the more numerous, complex and unresolved issues of infringement unique to each of the defendants.

21.    Katz denies that common issues of fact on damages predominate and, although Katz admits that Katz will seek damages in the form of a reasonable royalty, Katz submits that

fact issues on damages unique to each defendant will predominate because the majority of the Georgia-Pacific factors are defendant specific.

22.     Denied.  Consolidation and transfer of the Katz Actions is inappropriate because (i) insufficient common issues of fact exist in that each defendant's accused system is unique and presents individualized infringement and damages issues, (ii) the inconvenience to the parties, witnesses, and courts outweigh any purported efficiencies to be gained by consolidation and transfer, and (iii) the substantial disruption and delay of consolidation and transfer would impede the resolution of all the cases.

23.     Denied.  If the Panel decides that consolidation is appropriate, transfer to the Eastern District of Texas is the most logical because: (i) it has the greatest number of pending Katz Actions, (ii) it has the most recent knowledge and experience with the legal and factual issues; (iii) it is the most convenient and efficient venue for the largest number of parties; (iv) it is one of the most experienced patent litigation trial courts in the country and has implemented patent litigation rules to streamline such cases; (v) and has more docket capacity and ability to absorb these cases than the Central District of California.

Dated: November 3, 2006

By: _____
ANTHONY M. STIEGLER (126414)
STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
Ronald A. Katz Technology Licensing, L.P.

RESPONSE TO MOTION FOR TRANSFER AND CONSOLIDATION (CASE NO 1816)

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re:

Katz Interactive Call Processing Patent
Litigation

**MDL Docket No. 1816**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TARGET'S MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") submits this Memorandum of Law in Opposition to the Motion of Defendants Target Corporation, Target Bank, and Target National Bank (collectively "Target") for Transfer and Consolidation of Katz Technology Licensing Patent Litigation Pursuant to 28 U.S.C. § 1407 ("Motion").

## I.    INTRODUCTION

Consolidation and transfer of these patent infringement cases is not warranted because: (1) insufficient common issues of fact exist in that each defendant's accused system is unique and presents individualized infringement and damages issues; (2) neither convenience nor judicial efficiency would be achieved by imposing these numerous cases on a single court in an already over-burdened judicial district where no related case is currently pending; and (3) the substantial disruption and delay of consolidation and transfer would impede the resolution of all cases. Many of the defendants join Katz in opposing this motion and are working towards proposed stipulations to avoid duplicative discovery and to coordinate case management among the segregated cases. This indicates that many of those most familiar with these cases believe that the motion should be denied and would not yield efficiencies for the parties or courts.

Consolidation and transfer is particularly inappropriate because of the status of one of the cases, *Ronald A. Katz Tech. Licensing, L.P. v. Citibank, et. al.*, (the "*Citibank* case"), which is currently pending before the Hon. David Folsom in the Eastern District of Texas ("E.D. Texas") and is set for trial on May 8, 2007. The parties and the court have invested substantial resources on numerous substantive motions and case management matters, including issuance of a comprehensive scheduling order and case management plan, appointment of a technical expert for the court, a tutorial hearing, extensive *Markman* patent claim construction briefing and argument and multiple discovery activities and motions. Judge Folsom's *Markman* order is anticipated shortly and will inform the parties about the scope and interpretation of the patents, shape the litigation for expeditious movement to trial, and may foster settlement discussions, all of which would be disrupted and delayed by consolidation and transfer. Thus, while Katz urges that consolidation and transfer is not necessary at all, if the Panel concludes otherwise, the

*Citibank* case should be excluded from such an order.

If the Panel determines that consolidation and transfer is appropriate, the transferee court should be the E.D. Texas because it: (i) is in the state where more defendants reside than any other; (ii) is centrally located and most accessible to the largest number of parties and witnesses; (iii) has the infrastructure to support MDL litigation; (iv) has enacted and regularly administers a set of patent litigation rules enabling the expeditious and efficient resolution of patent cases; (v) is one of the plaintiff's two chosen venues; (vi) has the least crowded docket of any of the relevant districts which would likely be a transferee court; (vii) is the district in which the most cases are currently pending involving the Katz patents; and (viii) has current and extensive legal and practical experience with the Katz patents by virtue of the time and resources that the Court and its technical advisor have invested to manage and decide issues in the *Citibank* case. By contrast, Target's proposed venue, the Central District of California ("C.D. California"), has no Katz patent case currently pending, is one of the most over-burdened courts in the country and is inconvenient to the overwhelming majority of the defendants and witnesses.

The Katz cases are presently distributed among four federal judges who are well versed and skilled in patent litigation and who are already actively managing the cases. Contrary to the picture painted by Target, the cases are progressing expeditiously. Answers and counterclaims have been filed in most of the cases, at least two case management conferences are scheduled, and pre-discovery Rule 26 communications among counsel are well underway. Moreover, to the extent common issues exist about the technology, the patents, or their validity and/or enforceability, the potential for duplicative discovery is minimal because of the extensive prior litigation of the Katz patents, and because of the willingness of the non-movant parties to enter into stipulations to share and otherwise coordinate discovery and manage the cases. Conversely, consolidation of the patent actions, which undisputedly present unique issues of infringement and damages as to 175 defendants, and transfer of those cases to a single judge, would create an overwhelmingly complex proceeding certain to result in delay and added expense for all parties.

## II.    FACTUAL BACKGROUND

Katz is the plaintiff in actions pending in the E.D. Texas (filed in 2005 and 2006) and in the District of Delaware (filed in 2006). In total, there are dozens of defendant groups and 175 separate corporate defendants in these various actions, most of whom are large corporations with widespread businesses. Given the number of defendants, their size and their reach, it was not feasible for a single law firm to represent Katz against all of the defendants. Instead, Katz has two primary outside law firms handling these matters: (1) Cooley Godward Kronish LLP is counsel in all of the Texas cases; and (2) Heller Ehrman LLP is counsel in all of the Delaware cases. While jurisdiction and venue were the primary factors considered in selecting the two venues, ethical conflicts were also considered in dividing the defendants and filing in separate venues.[1]

### A.    The Katz Patent Actions in the E.D. Texas

Katz owns a portfolio of interactive call processing patents which are directed to the integration of telephone systems with computer databases and live operator call centers to provide interactive call processing services, which are sometimes referred to as interactive voice response, or "IVR", systems. Katz has licensed its patents to over 150 companies and filed several patent infringement cases, all resolved prior to trial, including the *AT&T* and *Verizon* cases cited in Target's motion. There is also an extensive record of proceedings on the Katz patents before the United States Patent and Trademark Office ("USPTO"). In 2005 and again in 2006, Katz filed additional cases in the E.D. Texas and in the District of Delaware, as follows:

### 1.    RAKTL v. Citibank et al., Civ. Action No. 5:05-CV-142-DF

In July 2005, Katz filed in the E.D. Texas, Texarkana Division, against defendants in three different industries, namely Citibank entities, Discover entities, T-Mobile entities and Wal-Mart entities (collectively the "*Citibank* Defendants"). The *Citibank* case was assigned to the

---

[1] While it would be possible to manage the conflict issues if the cases are consolidated, proper management of those ethical issues would be facilitated by allowing the cases to proceed in separate courts. We are aware of no prior published motion or proceeding before the JPML raises this type of conflict issue, it should be an appropriate factor for consideration and one that militates against consolidation of these cases.

Honorable David Folsom.[2] The *Citibank* case alleges infringement of 22 patents and is far advanced toward its May 8, 2007 trial date. In accordance with the Local Patent Rules implemented in E.D. Texas, on December 15, 2005, Katz served its preliminary infringement contentions. Each defendant then served its invalidity contentions, alleging indefiniteness, anticipation and obviousness and seeking to invalidate each of the claims asserted by Katz.[3]

In connection with the court's January 2006 Scheduling Conference, Judge Folsom gave considerable thought to managing a case involving the infringement of hundreds of claims in 22 patents, by scores of infringing systems, operated by different defendant groups in different industries, and took early steps to streamline the case. *See, e.g.,* Ex. 3, Joint Conference Report at 3, 8, 9, and Ex. 4, Defendants' Report in Response to Court's May 24, 2006 Order at 7-8. Judge Folsom set an aggressive schedule and has held the parties to it. Ex. 5, May 8, 2006 Amended Docket Control Order. Judge Folsom also identified and appointed a technical advisor, Mr. Gale R. Peterson, to advise the court on technology issues, and the court has now overseen all aspects of the *Citibank* case for more than 15 months, including all claim construction and discovery issues.

### a. Judge Folsom's Management of the Number of Asserted Claims and Severance of the *Discover* Action

After extensive briefing in May and June 2006 Judge Folsom ordered that the parties would litigate representative claims from among the hundreds at issue in the case. At Judge Folsom's direction, Katz selected 18 representative claims from 16 different patents.[4]

### b. Discovery and Other Pretrial Matters

Discovery in the *Citibank* case has progressed for almost a year. The parties have

---

[2] The facts concerning the *Citibank* case are supported by the Declaration of Nathan C. Cummings, Ex. 1, filed and served herewith ("Cummings Decl.").

[3] In the course of these filings, the Citibank entities took a license to the Katz patents and were dismissed, leaving the Discover, T-Mobile and Wal-Mart entities as defendants.

[4] On August 16, 2006 Judge Folsom issued a further order to preserve Katz's due process rights to assert additional patents infringed by the *Citibank* Defendants, severing the remaining patents into a separate action, which is stayed pending resolution of the current action. *See* Ex. 6, August 16, 2006 Order Severing Certain of Plaintiff's Claims and Defendants' Defenses and Counterclaims & Staying the Severed Action.

collectively produced over two million pages of documents and the defendants' document productions are ongoing. The parties have served, answered and supplemented their interrogatories and Katz has served Rule 34 notices to inspect defendants' call center premises and Rule 30(b)(6) deposition notices on various topics and recently took the depositions of T-Mobile, Wal-Mart and Discover employees. Judge Folsom has heard and decided a number of discovery issues throughout the case and currently has a number of issues under consideration.

       **c.**    **The September 19-20, 2006 *Markman* and Tutorial Hearing**

      On September 19-20, 2006 Judge Folsom and his technical advisor held the court's *Markman*[5] hearing and a technical tutorial presented by the parties. The court presently has those *Markman* issues under submission and the parties are awaiting the court's order. Defendants originally identified over 1600 terms for construction, and ultimately briefed about 40 terms, with one defendant, T-Mobile, briefing approximately 20 additional claim terms, and Katz briefing about 60 claim terms.[6] The claim construction briefing took place between July through September 2006 and included 160 pages of detailed explanations of the IVR and call center services and technology to support the parties' claim term contentions.

      Once the court issues its *Markman* order, a series of events and deadlines will be set in motion under the court's local rules that will put the *Citibank* case on the fast-track to trial.[7] Consolidation and transfer would disrupt this case at a critical juncture, impose significant delay, and potentially waste substantial work product.

       **2.**    **Recent Additional Patent Actions in the E.D. Texas**

      On August 21, 2006, Katz filed five new actions in the E.D. Texas, in different divisions to avoid overburdening any one judge, naming defendants who were selected and organized

---

[5] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370; 116 S.Ct. 1384 (1996).
[6] T-Mobile's addition of proposed terms reflects that differences in accused systems among defendants produce additional terms for construction, raising the potential for a very large number of claims for construction in a proceeding with 175 defendants.
[7] For example, fact discovery closes 80 days after the order and the close of expert discovery is 60 days thereafter. Accordingly, the *Citibank* parties will be actively engaged in final fact and expert discovery, as well as in dispositive motion briefing over the next three to six months, all culminating in trial starting on May 8, 2007. Ex. 5, Amended Docket Control Order.

largely according to industries and/or use of similar accused systems.[8]  This grouping was designed to achieve case specific efficiencies, including allowing the selection of representative claims that are common to a discrete set of defendants.

> **a.    RAKTL v. American Electric Power, et al.; RAKTL v. American Airlines, et al.**

Two of the actions are pending before Judge Folsom:  *Ronald A. Katz Tech. Licensing, L.P. v. American Electric Power Company, Inc.*, No. 5:06-CV-188 (E.D. Tex.) (Texarkana Division); and *Ronald A. Katz Tech. Licensing, L.P. v. American Airlines*, No. 2:06-CV-334. (E.D. Tex.) (Marshall Division).  Including the severed *Discover* action, Judge Folsom presides over four of the Katz actions in the E.D. Texas.  The *American Electric* action asserts 20 patents against 9 defendants in the energy/utility industries.  All defendants have answered and counterclaimed and the Magistrate has set the Rule 26(f) conference for December 12, 2006.  Ex. 7, Docket.  The *American Airlines* action asserts 20 patents against 12 defendants in the travel and hospitality industry.  All defendants but one have answered and counterclaimed.  Ex. 8, Docket.

> **b.    RAKTL v. Aetna**

On August 21, 2006, Katz filed the *Ronald A. Katz Tech. Licensing, L.P. v. Aetna, Inc.*, No. 2:06-CV-335 (E.D. Tex.) (Marshall Division) case against defendants who provide automated prescription refills.  This case was assigned to Judge Ward and asserts 19 patents against 15 defendants.  All defendants but one have answered and counterclaimed.  Ex. 9, Docket.

> **c.    RAKTL v. Alltel; RAKTL v. Chevron**

On August 21, 2006, Katz filed two actions in the Lufkin Division of the E.D. Texas: *Ronald A. Katz Tech. Licensing, L.P. v. Chevron Corp., et al.*, No. 9:06-CV-178 (E.D. Tex.) (Lufkin Division); and *Ronald A. Katz Tech. Licensing, L.P. v. Alltel Corp., et al.*, No. 9:06-CV-

---

[8] Katz filed a sixth action, *RAKTL v. Genesys Conferencing, Inc.*, E.D. Tex. Case No. 5:06-CV-187; Target appropriately excluded the *Genesys* Case from its Motion because different patents are asserted in that case.

177 (E.D. Tex.) (Lufkin Division). The *Chevron* case focuses primarily on defendants in the financial services area, while the *Alltel* case focuses on defendants in the communications industry. The cases were assigned to Judge Clark who, on September 7, 2006, *sua sponte* divided them into fifteen separate actions "to promote efficiency and administrative ease" for the Court. *See* Target Ex. 13, *Chevron* Order, and Target Ex. 12, *Alltel* Order. Judge Clark has indicated that he will jointly administer these cases "to promote efficient use of judicial and party resources." *Id.* All defendants in the *Chevron* case have answered and counterclaimed. All defendants but three in the *Alltel* case have answered and counterclaimed. Exs. 10 to 24, Dockets.

### B.      The Katz Patent Actions in the District of Delaware

On September 1, 2006, Katz, through the Heller Erhman LLP firm for the aforementioned conflict of interest purposes, filed an additional five cases in the District of Delaware against defendants with a jurisdictional nexus to that venue. These actions are all pending in the Wilmington Division before Judge Gregory Sleet, who is an experienced jurist well able to manage large patent litigation cases with multiple parties. In four of the actions, all defendants have already answered and counterclaimed. In the fifth action, Katz filed a first amended complaint on October 25, 2006. Exs. 25 to 29, Dockets. Katz understands that a significant majority of the Delaware defendants oppose Target's motion for consolidation and desire to remain in Delaware.

### III.   CONSOLIDATION IS NOT APPROPRIATE FOR THESE CASES AND WOULD FRUSTRATE THE CONVENIENCE OF THE PARTIES AND JUDICIAL EFFICIENCY

To grant a motion for transfer and consolidation the Panel must find that (a) the actions involve common issues of fact, (b) transfer would be for the convenience of the parties and witnesses, and (c) transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407. Transfer and consolidation are, however, not automatic even where multiple actions raise some similar issues. *In re Truck Accident Near Alamogordo,* 387 F. Supp. 732, 733 (J.P.M.L. 1975) ("the existence of common, if not identical, common questions of fact ... is not

sufficient, by itself to warrant transfer"). The crucial question on this motion is whether Target has shown that, even notwithstanding some overlap in questions of fact, the economies of transfer outweigh the resulting inconvenience to the parties. *In re "East of the Rockies" Concrete Pipe,* 302 F. Supp. 244, 253 (J.P.M.L. 1969).

Target fails to show that common questions of fact are sufficiently numerous, complex or unresolved to justify consolidation and Target does not explain how common issues of patent validity and enforceability will predominate, given that unique issues of fact about infringement and damages will exist for each of the 175 defendants. Target also fails to show that consolidation and transfer would be more convenient or produce efficiencies for the parties and witnesses. Finally, Target also fails to address the willingness of the non-movant parties to cooperate and coordinate in discovery and case management, as well as the disruption and delay certain to follow any consolidation of cases with 175 defendants in an already burdened and geographically inconvenient forum.

### A. The Issues are Not Sufficiently Numerous, Complex, or Unresolved to Justify Consolidation and Transfer

The moving party has the burden of demonstrating that common factual questions are sufficiently complex, or that the associated discovery is so time consuming, that transfer is justified. 28 U.S.C. § 1407; *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,* 446 F. Supp. 242, 243-44 (J.P.M.L. 1978). If movant fails to carry its burden, consolidation and transfer should be denied, even for a large number of actions in several districts. *See In re Dupont Benelate Settlement Agreement Litig.,* No. 1340, 2000 U.S. Dist. Lexis 7378 (J.P.M.L. 2000).

### 1. Proof of Patent Infringement Presents Unique Fact Questions for Each Defendant

As a matter of law, proof of patent infringement is distinct as to each defendant and its technology. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 374; 116 S.Ct. 1384, 1388, (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the

alleged infringer's product or process'..."); *Southwall Technologies, Inc. v. Cardinal I G Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (proof of infringement is a question of fact and requires establishing that every limitation of a claim is found in an accused product or method). Here, each defendant operates different customized systems and processes and, accordingly, there will be few if any common factual questions about the 175 defendants' infringement.[9] The challenge would be greatly exaggerated in a consolidated case with 175 defendants, in different industries, employing different IVR systems and methods, all or many of which implicate infringement of different patent claims.

## 2. Proof of Patent Infringement Damages Presents Unique Fact Questions for Each Defendant

Target asserts that the reasonable royalty factors used in calculating patent damages under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) will present common fact questions among the actions. In fact, of the 15 *Georgia Pacific* factors considered when assessing a patent "reasonable royalty" measure of damages, nine factors involve facts particular to each separate defendant. Only six focus on the plaintiff or the general industry.[10] Thus, the focus of damages discovery and analyses will be far

---

[9] Target concedes that "... there will be differences in the telephone services of the defendants involved in the various actions ..." (Mot. at 12.), thus recognizing that different systems will necessarily require different discovery and proof of infringement. Target glosses over this issue by citing cases where the Panel found that overlapping patents in several actions could be expected to present common fact questions, including *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005); *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005); and *In re MLR, LLC, Patent Litig.* 269 F. Supp. 2d 1380 (J.P.M.L 2003). These cases are distinguishable, however. In *Acacia*, there were only 64 defendants, the majority of whom were in the same industry and all parties agreed to, or did not contest, consolidation. *Acacia*, 360 F. Supp. 2d at 1378. Similarly, in *Pharmastem*, there were only 31 defendants, all of whom were in the same industry, and only three parties opposed transfer and consolidation. *Pharmastem*, 360 F. Supp. 2d at 1363. In *MLR*, there were only 11 defendants, all in the same industry, and only two parties opposed the MDL motion. *MLR*, 269 F.Supp.2d at 1380. In contrast, the present case involves 175 defendants in different industries, a substantial number of whom oppose consolidation.

[10] The nine defendant-specific factors include: (1) the rates paid by the defendant for use of comparable patents; (2) the territory and customers of the licensee for the licensed technology; (3) the effect of using the patented specialty in promoting sales of the licensee's other goods or services; (4) the licensee's commercial success with the patented technology; (5) the extent of the licensee's infringing use of the patented technology; (6) the portion of licensee's profit attributable to use of the patented technology; (7) the opinion testimony of qualified experts retained by each

more heavily directed to each defendant's discrete infringement and the value that each defendant derived from its use of the patented inventions.

### 3. Patent Validity and Enforceability Have Been Previously and Thoroughly Discovered and Litigated

Target asserts that issues of validity,[11] enforceability and prosecution history estoppel[12] will be common among the cases due to the overlapping patents at issue. On the facts of these cases, however, consolidation is not likely to produce significant efficiencies. During prior litigations over the Katz patents, defendants have raised numerous affirmative defenses, most of which overlap with the current defendants' contentions. Defendants in the prior cases identified and filed voluminous information on the prior art and all of that prior case material is readily available to Target and the other defendants and can be shared. There is likewise an extensive public record of proceedings on the Katz patents before the USPTO and given this extensive history and publicly available collections of documents, it is unlikely that validity or unenforceability issues will produce significant additional discovery or fact issues.

### 4. The Risk of Inconsistent Rulings on Claim Construction or Other Issues Does Not Warrant Consolidation

Target incorrectly argues that risk of inconsistent pretrial rulings on the issue of patent claim construction justifies transfer and consolidation, but as Target admits, "it is the obligation of each district court to construe the claims of a patent as a matter of law." (Mot. at 15); *see also, Markman, supra.,* 517 U.S. at 388-391. Claim construction is a pretrial issue of law

---

licensee; (8) the nature and scope of the license; and (9) the amount the prudent licensee would have been willing to pay for a license in an arm's length negotiation. *Georgia-Pacific Corp., supra.*

[11] Validity is primarily a matter of prior art and expert opinion. *Union Oil Co. of California v. Atlanta Richfield Co.,* 208 F.3d 989, 994-95 (Fed. Cir. 2000), cert. denied, 531 U.S. 1183 (2001) (Proving a patent invalid under 35 U.S.C. §102 requires showing that allegedly invalidating prior art contains each and every element of a claim); *Koito Mfg. Co Ltd. v. Turn-Key-Tech LLC,* 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("typically, testimony concerning anticipation must be testimony from one skilled in the art....").

[12] Unenforceability and the application of prosecution history estoppel concern prior art and the record of prosecution of the patent before the USPTO. *See FMC Corp v. Manitowoc Co., Inc.* 835 F.2d 1411, 1415 (Fed. Cir. 1987) (establishing unenforceability through inequitable conduct requires clear and convincing proof of knowing failure to disclose material information, such as prior art, to the PTO in prosecution of the patent.) *Festo Corp. v. Shoketsu Kinzoku Kogyuo Kabushiki Co, Ltd.,* 535 U.S. 722, 735 (2002) ("[Prosecution history] estoppel has been discussed most often in the context of amendments made to avoid the prior art.").

reserved by the U.S. Supreme Court to each district court. *Id.* An issue of law, of course, is not an appropriate basis for MDL consolidation. *In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1406-07 (J.P.M.L. 1976) (transfer of actions for consolidated pretrial proceedings is unwarranted where common questions of law, rather than fact, predominate). Thus, while each defendant will have an opportunity to litigate the claim construction issues it believes are critical to its case, it is likely that the number of claim terms necessary to be construed will be reduced as a result of these prior rulings, including the expected ruling in the *Citibank* case.

Likewise, the May 8, 2007 trial in the *Citibank* case is fast-approaching. Resolution of issues in *Citibank* case may thus obviate or reduce the need for further litigation and allowing the *Citibank* case to proceed to trial will conserve judicial resources and reduce expense and inconvenience to the litigants.

### B. Consolidation and Transfer Would Not Promote Convenience and Judicial Economy

#### 1. Many of the Parties Do Not Support Consolidation and Transfer

To date, many of the 175 defendants have expressed the intention to oppose Target's motion. Consolidation and transfer has been denied where not all parties in the relevant actions support it. *In re Accuscan, Inc., Automatic Background Contrast Control Patent Litig.*, No. 1145, 1996 U.S. Dist. LEXIS 17696 (J.P.M.L. Nov. 26, 1996). The parties are best situated to evaluate the benefits and disadvantages of transfer and consolidation and the significant opposition here speaks volumes about the parties' evaluations that the current separate cases presents the most convenient and efficient means of managing and resolving these cases.

#### 2. The E.D. Texas and the District of Delaware Chose Not to Consolidate the Katz Actions Pending In Those Districts.

Districts have the discretion to *sua sponte* consolidate pending actions if they believe that consolidation would promote convenience, efficiency and administrative ease. *See* F.R.C.P. 42(a); *Devlin v. Transportation Communications Int'l Union*, 175 F.3d 121, 130 (2nd Cir. 1999).

To date, neither the E.D. of Texas or the District Court of Delaware has chosen to consolidate the Katz actions within their districts, and at least Judge Clark in the E.D. Texas *severed* the cases pending in his court to promote efficiency and administrative ease, while acknowledging that he will manage the cases in a coordinated fashion.[13]

> **3. Alternative Methods Are Available to Achieve Efficiencies That Do Not Entail the Burdens and Delay Inherent in Consolidation**

Where there are alternative methods to prevent duplicative discovery and inconsistent pretrial rulings, consolidation is not warranted. *In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*, 395 F.Supp. 2d 1357-58 (J.P.M.L. 2005). This is especially true when the parties have displayed past willingness to coordinate their discovery efforts. *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1353 (J.P.M.L. 1980). That cooperation exists here, where many parties are considering proposed stipulations to avoid duplicative discovery and to coordinate case management across all cases. It is the goal that the stipulations will encompass at least the following:

- coordinated document production by Katz with a protocol to be developed for common Bates numbering;

- coordinated deposition discovery on common issues to avoid duplicative examination of witnesses;

- coordinated third-party subpoena practice with respect to licensees, prior art witnesses and vendors;

- adoption of protective orders with common terms;

- admissibility of third-party discovery, including licensees, prior art witnesses and vendors.

The parties also have the mutual goal to work towards coordinated protocols or stipulations regarding *Markman* briefing and case management including:

- streamlining the claim selection process;

---

[13] The five cases in Delaware were all assigned to Judge Gregory Sleet and are pending separately as independent cases. Exs. 25 to 29, Dockets.

-12-

- agreeing to sequential patent disclosures and other features of a set of acceptable local court patent rules addressing claim construction and case management, subject to court approval;

- coordinating claim construction briefing schedules to the extent possible and avoiding duplication of effort on common construction issues;

- agreeing to the appointment of a technical advisor for the courts.

The parties intend to further explore and develop a consolidated and/or coordinated summary judgment procedure on common issues to the extent possible to avoid duplication of effort. It is contemplated that a steering committee made up of representatives of both sides of the actions in the E.D. Texas and the District of Delaware will be selected to finalize the details of these coordination activities for the pretrial proceedings in all cases.

**IV. IF THE PANEL BELIEVES CONSOLIDATION IS JUSTIFIED, THE *CITIBANK* CASE SHOULD BE EXCLUDED FROM THE CONSOLIDATION AND TRANSFER ORDER.**

The Panel should exclude the *Citibank* case from any multidistrict litigation order because of its advanced state. It appears that no party to the *Citibank* case has joined Target's motion. The anticipated *Markman* ruling from Judge Folsom will likely inform all parties about the merits of their cases and pave the way for summary judgment and/or trial or, as many defendants in other cases have chosen, settlement. Such considerations are precisely why the Panel recognizes that advanced actions are inappropriate for consolidation with recently filed cases. *In re Nifedipine Capsule Patent Litig.*, No. 774, 1988 U.S. Dist. LEXIS 17025, at *2 (J.P.M.L. Oct. 13, 1988) (excluding from transfer one action which was nearing close of discovery on the basis that it was distinct from more recently filed actions).

**V. IF CONSOLIDATION IS ORDERED THE E.D. TEXAS SHOULD BE THE TRANSFEREE COURT**

If the Panel concludes that consolidation and transfer are appropriate, it should transfer the cases to Judge Folsom in the E.D. of Texas.

## A.   The E.D. Texas Has the Greatest Number of Pending Katz Actions

Target's proposal to transfer all of the Katz cases to a district that is already overburdened, where no action is pending and where the cases have no substantial nexus, is disfavored and without basis.[14]   The Panel regularly transfers actions to the District Court having the *greatest* number of relevant pending actions. *See, e.g., In re Fosamax Prods. Liab. Litig.,* 444 F. Supp. 2d 1347, 1349-50 (J.P.M.L. 2006).   The Panel has traditionally been reluctant to send consolidated cases to a district where *no* actions are pending. *In re Mailblocks, Inc.,* 279 F. Supp. 2d 1379, 1381 (J.P.M.L. 2003).   As of September 30, 2006, there were 280 pending multidistrict litigations, and only thirteen of these were transferred to a district where no actions were pending.   Hsieh Decl. ¶ 3; Ex. 30, Statistical Analysis of Multidistrict Litigation 2006.   In 2005, only nine out of 259 pending multidistrict litigations were transferred to a district where no actions were pending.   Hsieh Decl. ¶ 3; Ex. 31, Statistical Analysis of Multidistrict Litigation 2005.   In those rare instances of transfer to a district where no action was pending, the Panel has acknowledged that its selection of that transferee court was the exception, and that its decision to do so was premised on the strong factual nexus between the action and the forum. *See, e.g., In re Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1020 (J.P.M.L. 1978).

When Judge Clark's severance of the *Alltel* and *Chevron* cases is taken into account, there are 20 Katz cases pending in the E.D. Texas, five pending in the District of Delaware, and *none* pending in the C.D. California.[15]   Transfer to the district where the most actions are pending requires the fewest parties to be displaced.   The C.D. California should be excluded from consideration because there are no currently pending actions in that district and because, as discussed below, transfer there would significantly inconvenience all parties.   Such a transfer would further impose an undesired burden on one of the busiest District Courts in the country— and on the particular judge requested—and would squander the substantial judicial resources

---

[14] Other than *In re Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1020 (J.P.M.L. 1978), Target cites no authority supporting its proposal. Although in *Sunstrand* the Panel did transfer actions to a district with no action pending, it did so because of the substantial nexus between the Western District of Washington and the common fact questions. *Id.* at 1021. Further, the Panel noted that none of the actions were significantly further advanced than the others.

[15] Even if Judge Clark's severance orders were not considered there are seven cases pending in the E.D. of Texas.

invested by Judge Folsom and his court in the *Citibank* case.

**B.     The E.D. Texas is the Forum With the Most Recent Knowledge and Experience with the Legal and Factual Issues**

The E.D. Texas has the most current judicial knowledge and experience with the Katz patents.  The Panel has often transferred consolidated patent cases to the court having the greatest technological and legal familiarity with the issues involved.  *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005).

Judge Folsom, his clerks, and particularly his technical advisor, have developed the most current detailed knowledge about the Katz patents and the parties' infringement and invalidity contentions as a result of the activities in the *Citibank* and *Discover* cases. Judge Folsom already has experience with twenty-two of twenty-seven patents alleged in all the cases.

In contrast, Judge Klausner's knowledge in the C.D. California is nearly three years old and he only construed claims from 10 of the Katz patents, compared to the 16 patents that Judge Folsom is currently construing in the *Citibank* case.  Given Judge Folsom's recent and detailed knowledge of the Katz Actions, and given that he has four Katz Actions before him, the E.D. Texas would be the most logical choice of transferee districts.

**C.     The E.D. Texas is the Most Convenient and Efficient Venue**

The location of the parties, witnesses, and evidence are important factors in choosing a transferee court.  *In re Columbia University Patent Litig.*, 313 F. Supp. 2d 1383 (J.P.M.L. 2004). In most instances, and particularly in these cases, if consolidation is ordered, a geographically central location best serves the convenience of the parties.  *In re Papst Licensing, GmbH Patent Litig.*, No. 1298, 1999 U.S. Dist. LEXIS 15871 (J.P.M.L. Oct. 12, 1999).

Texas is the most central forum for the greatest number of defendants.  Seventeen defendants reside in Texas, which is more than in any other state; 90 are located in the South and Midwest, and 56 are in the East.  By comparison, only 29 of 175 defendants reside in the Western United States.  84% of defendants are closer to Texas than to California.  *See* Hsieh Decl. ¶ 2; Ex. 32, Location of Defendants by Region and by Suit.

Further, the E.D. Texas has established a substantial infrastructure to host, house, and manage complex patent litigation. It has suitable hotels, restaurants, office space and amenities for the parties and their counsel and is accessible within a few hours from all corners of the country. Indeed, it has managed some of the highest profile and most complex patent litigation matters recently litigated, including: *Echostar Technologies v. TiVo, Inc., et al.; Broadcom Corp. v. Intel Corp.;* and *Ericsson, Inc. v. Qualcomm, Inc.*[16]

Target places undue emphasis on Katz's presence in Los Angeles and the possibility that some third party witnesses may be located there. However, the physical location of Katz's documents is irrelevant because they are digitized and ready for production anywhere in the country. Further, the possible presence in Los Angeles of a small number of third-party witnesses, many of whom are unidentified by Target, is substantially outweighed by the inconvenience transfer would impose on the parties to these cases.[17]

The E.D. Texas is also one of the plaintiff's selected venues and is the first-filed venue. The Panel has recognized the merit in transferring a consolidated patent case to the district with the first-filed case. *In re Mosaid Techs., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1361 (J.P.M.L. 2003).

### D. The E.D. Texas is One of the Most Experienced Patent Litigation Trial Courts in the Country and Has Implemented Patent Litigation Rules to Streamline Patent Cases

The E.D. Texas regularly presides over some of the most sophisticated and high-stakes patent matters in the nation. Judge Folsom alone has handled 110 patent cases over his career, and is well versed in patent law and procedures.[18] Hsieh Decl. ¶ 4; Ex. 33, excerpt from LegalMetric Initial Judge Report of Judge Folsom Patent Cases.

---

[16] In fact, Judge Folsom presided over all these cases. A list of the 110 patent litigation matters Judge Folsom has handled is attached as Ex. 33; see Hsieh Decl. ¶ 4.

[17] To the extent these witnesses include the Katz patent prosecutors, they have been deposed in prior litigations and the transcripts of their testimony are available to Target.

[18] Judge Klausner in the C.D. California has handled less than half as many patent cases as Judge Folsom. Ex. 34, excerpt from LegalMetric Initial Judge Report of Judge Klausner Patent Cases.

The E.D. Texas has implemented specific patent litigation rules designed to streamline and aid in the management of patent cases.[19] Ex. 35, E.D. Texas Local Patent Rules, Appendix M. Cases expeditiously reach resolution or trial in the E.D. Texas, faster than in other districts. The median time to trial in the E.D. Texas is just 15.9 months, compared to 20.5 months in the C.D. California. *See* Hsieh Decl. ¶ 36; Exs. 36 to 38, Judicial Caseload Profile Statistics of the Administrative Office of the U.S. District Court.

### E.    A Comparison of Dockets Favors the E.D. Texas

The E.D. Texas is more capable of absorbing a consolidated case of the magnitude proposed than the C.D. California. The Panel ordinarily looks to the caseloads of the possible transferee districts to select the district with the most available resources. *Papst Licensing, supra.,* 1999 U.S. Dist. LEXIS at *5-6. The Panel usually transfers consolidated actions to districts which have been "less burdened by the Panel with multidistrict dockets" than the other transferee fora. *In re Gemstar Dev. Corp. Patent Litig.,* No. 1274, 1999 U.S. Dist. LEXIS 5905, at *4 (J.P.M.L. Apr. 26, 1999).

The E.D. Texas has only 379 pending cases per judge. The judges in the C.D. California are much busier, with 471 cases and thus the C.D. California case loads are nearly 25% heavier than that of the E.D. Texas. The lighter docket and specialized patent rules likely explain why cases resolve more quickly in the E.D. Texas.[20] In 2005, only 2.6% of cases in the E.D. Texas were over three years old, compared to 7.1% of cases in the C.D. California. Exs. 37 to 38, Judicial Caseload Profile Statistics of The Administrative Office of the U.S. Courts. The E.D. Texas also has a superior "weighted filings" metric compared the C.D. California (511 versus 575), meaning that each judge in the E.D. Texas manages fewer complex litigation matters than do the judges in the C.D. California. The E.D. Texas has more available resources to devote to a patent action of this magnitude and, as such, is a far superior choice of forum to efficiently and effectively manage these cases.

---

[19] Notably, the C.D. California has no such patent case specific rules.
[20] The C.D. California has a faster median time to civil disposition, which likely reflects far more Americans with Disabilities Act of 1990 (ADA) and other relatively simple civil cases associated with a much larger urban area.

## VI. THE DISTRICT OF DELAWARE WOULD ALSO BE AN APPROPRIATE TRANSFEREE COURT IF THE PANEL ELECTS TO CONSOLIDATE THE TEXAS AND DELAWARE CASES.

The District of Delaware also would be a sound choice for the transferee court, as compared to the C.D. California. The District of Delaware's 116 case annual case load per judge is significantly less than the 185 cases per judge for judges in the Central District of California.[21] However, the Delaware judges handle a larger number of patent cases. Based upon PACER records for the five-year period ending September 30, 2006, there were 642 patent cases filed in the District of Delaware, which on average was 32 per year for each judge as compared to approximately 11 a year for judges in the C.D. California. Judge Sleet, who has been assigned the five related Delaware cases, has considerable experience with patent cases. In fact, the J.P.M.L. assigned a consolidated patent litigation to Judge Sleet just last year. *See In re Pharmastem Therapeutics, Inc., Patent Litigation*, 360 F. Supp. 2d 1362 (J.P.M.L. 2005). The District of Delaware also regularly assigns patent cases to a very experienced magistrate judge for mediation, who has mediated hundreds of patent cases.[22]

## VII. CONCLUSION

Target's motion should be denied because it fails to demonstrate that any purported efficiencies to be gained by consolidation and transfer outweigh the inconvenience to the parties, witnesses, and the Courts. In fact, there would be few, if any, efficiencies and the burdens to the parties would substantially outweigh those efficiencies. Fact issues, like patent infringement and damages, are unique to each defendant and the legal patent claim construction issues are irrelevant to the MDL decision. Moreover, it would be substantially more complex for one court to manage these disparate cases, as evidenced by the current Judges' decisions to keep the actions separate and in several instances to further divide the cases.

---

[21] This is based upon the three-year period ending September 30, 2005 as reported by Administrative Office of the U.S. Courts, with the data available at www.uscourts.gov at judbus2005/appendices/x1a.pdf, judbus2004/appendices/x1a.pdf, and judbus2003/ appendices/x1a.pdf.

[22] In addition, the District of Delaware would be more convenient than the C.D. of California for the parties and witnesses. Almost half of the 175 individual defendants are within 500 miles of the District of Delaware's Wilmington courthouse; in contrast, there are only 16 defendants located in California.

Should the Panel decide consolidation is warranted, it should exclude the *Citibank* case from any consolidation. That case is in the advanced stages of pretrial preparation and any orders derailing it now would unduly burden the parties with needless delay and expense, would be wasteful of the parties' and judicial resources, and would eliminate an effective case management tool for the remaining cases.

Finally, should the Panel decide that transfer and consolidation is warranted, transfer to the E.D. Texas is most logical because it: (i) has the greatest number of pending Katz Actions; (ii) has the most recent knowledge and experience with the legal and factual issues; (iii) is the most convenient and efficient venue for the largest number of parties; (iv) is one of the most experienced patent litigation trial courts in the country and has implemented patent litigation rules to streamline cases; (v) and has more docket capacity and ability to absorb these cases than the C.D. California.

Dated: November 3, 2006

By: _____
STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
Ronald A. Katz Technology Licensing, L.P.

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re:** | **MDL Docket No. 1816** |
| **Katz Interactive Call Processing Patent Litigation** | |

**APPENDIX OF THE TABLE OF AUTHORITIES OF PLAINTIFF'S OPPOSITION TO TARGET'S MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION**

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

# TABLE OF AUTHORITIES

## CASES

*In re Acacia Media Techs. Corp. Patent Litig.*,
   360 F. Supp. 2d 1377 (J.P.M.L. 2005)...................................................................... 9

*In re Accuscan, Inc., Automatic Background Contrast Control Patent Litig.*,
   No. 1145 U.S. Dist. LEXIS 17696 (J.P.M.L. Nov. 26, 1996) ............................ 11

*In re Cable Tie Patent Litig.*,
   487 F. Supp. 1351 (J.P.M.L. 1980)....................................................................... 12

*In re Columbia University Patent Litig.*,
   313 F. Supp. 2d 1383 (J.P.M.L. 2004).................................................................. 15

*In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*,
   395 F. Supp. 2d 1357 (J.P.M.L. 2005).................................................................. 12

*Devlin v. Transp. Comm'ns Int'l Union*,
   175 F.3d 121 (2nd Cir. 1999)................................................................................ 11

*In re Dupont Benelate Settlement Agreement Litig.*,
   No. 1340, 2000 U.S. Dist. Lexis 7378 (J.P.M.L. 2000)........................................ 8

*In re "East of the Rockies" Concrete Pipe*,
   302 F. Supp. 244 (J.P.M.L. 1969)........................................................................... 8

*Festo Corp. v. Shoketsu Kinzoku Kogyuo Kabushiki Co, Ltd.*,
   535 U.S. 722 (2002)............................................................................................... 10

*FMC Corp. v. Manitowoc Co., Inc.*
   835 F.2d 1411 (Fed. Cir. 1987)............................................................................. 10

*In re Fosamax Prods. Liab. Litig.*,
   444 F. Supp. 2d 1347 (J.P.M.L. 2006).................................................................. 14

*In re Gemstar Dev. Corp. Patent Litig.*,
   No. 1274, 1999 U.S. Dist. Lexis 5905 (J.P.M.L. Apr. 26, 1999) ......................... 17

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)....................................................................... 9

*Koito Mfg. Co. Ltd. v. Turn-Key-Tech LLC*,
   381 F.3d 1142 (Fed. Cir. 2004)............................................................................. 10

*In re Mailblocks, Inc., 279*
   F. Supp. 2d 1379 (J.P.M.L. 2003).......................................................................... 14

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370; 116 S.Ct. 1384,   (1996)................................................5, 8, 10, 11, 12, 13

*In re MLR, LLC, Patent Litig.*
   269 F. Supp. 2d 1380 (J.P.M.L 2003).................................................................... 9

*In re Mosaid Techs., Inc. Patent Litig.*,
   283 F. Supp. 2d 1359 (J.P.M.L. 2003).................................................................. 16

*In re Nifedipine Capsule Patent Litig., No.*
   No. 774, 1988 U.S. Dist. LEXIS 17025 (J.P.M.L. Oct. 13, 1988) ....................... 13

# TABLE OF AUTHORITIES
## (continued)

*In re Papst Licensing, GmbH Patent Litig.*,
  No. 1298 U.S. Dist. LEXIS 15871 (J.P.M.L. Oct. 12, 1999) ........................................ 15, 17

*In re Pharmastem Therapeutics, Inc. Patent Litig.*,
  360 F. Supp. 2d 1362 (J.P.M.L. 2005)....................................................................... 9, 15, 18

*Southwall Technologies, Inc. v. Cardinal I G Co.*,
  54 F.3d 1570 (Fed. Cir. 1995).................................................................................... 9

*In re Sundstrand Data Control, Inc. Patent Litig.*,
  443 F. Supp. 1019 (J.P.M.L. 1978)............................................................................ 14

*In re Truck Accident Near Alamogordo*,
  387 F. Supp. 732 (J.P.M.L. 1975)............................................................................. 7

*Union Oil Co. of California v. Atlanta Richfield Co.*,
  208 F.3d 989 (Fed.Cir. 2000).................................................................................... 10

*In re U.S. Navy Variable Reenlistment Bonus Litig.*,
  407 F. Supp. 1405 (J.P.M.L. 1976)........................................................................... 11

## STATUTES

28 U.S.C. § 1407..................................................................................................... 7, 8

F.R.C.P. 42(a) ......................................................................................................... 11

**Certificate of Service**

I hereby certify that true and correct copies of the following documents:

**Plaintiff's Response to Defendants Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation,**

**Plaintiff's Memorandum of Law in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation,**

**Appendix of the Table of Authorities in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation, and**

**Appendix of Exhibits in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation**

were served on all counsel in compliance with Rule 5.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Ronald A. Katz Technology Licensing L.P.'s Response and Opposition to Defendant Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation Pursuant to 28 U.S.C. § 1407 were served via U.S. Mail on this 4th of November, 2006 according to the attached Panel Attorney Service List, and supplemented by the attached Service List.

Christine Hsieh

Docket: 1816 - In re Katz Interactive Call Processing Patent Litigation
Status: Pending on / /
Transferee District:          Judge:                                                      Printed on 10/27/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Abn Amro Mortgage Group,<br>777 East Eisenhower Parkway<br>Suite 700<br>Ann Arbor, MI 48108 | => <br>ABN AMRO Mortgage Group, Inc. |
| Alltel Communication Wire,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br>Alltel Communications Wireless, Inc. |
| Alltel Communications,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br>Alltel Communications of Texarkana, Inc. |
| Alltel, Corp.,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br>ALLTEL Corp. |
| Arroyo, Blas P.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1012 Fax: (704) 444-1111<br>Time Warner Cable, Inc.*; Time Warner Entertainment Co., L.P.*; Time Warner NY Cable, LLC* |
| Barner, Sharon R.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500 Fax: (312) 832-4700<br>U.S. Bancorp.*#; U.S. Bank, N.A.* |
| Barquist, Charles S.<br>Morrison & Foerster, LLP<br>555 W. Fifth Street<br>Suite 3500<br>Los Angeles, CA 90013 | => Phone: (213) 892-5200 Fax: (213) 892-5454<br>Express Scripts, Inc.* |
| Beane, Jerry L.<br>Andrews & Kurth<br>BankOne Center<br>1717 Main Street<br>Suite 3700<br>Dallas, TX 75201 | => Phone: (214) 659-4400 Fax: (214) 659-4401<br>Aetna RX Home Delivery, LLC* |
| Boice, William H.<br>Kilpatrick & Stockton<br>1100 Peachtree Street<br>Suite 2800<br>Atlanta, GA 30309 | => Phone: (404) 815-6464<br>Cox Communications, Inc.*#; Coxcom, Inc.*#; Earthlink, Inc.*# |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

**Cablevision Systems Corp.,**
1111 Stewart Avenue
Bethpage, NY 11714

=>
  Cablevison Systems Corp.

**Capshaw, III, S. Calvin**
Brown, McCarroll, LLP
P.O. Box 3999
Longview, TX 75606-3999

=> Phone: (903) 236-9800  Fax: (903) 236-8787
  Anthem Prescription Management, LLC*; Precision RX, Inc.*; Professional Claim Services, Inc. dba
  Wellpoint Pharmacy Management, Inc.*; Wellpoint, Inc.*

**Cerdian Corporation,**
3311 East Old Shakopee Road
Minneapolis, MN 55425

=>
  Ceridian Corp.

**Comdata Corporation,**
5301 Maryland Way
Brentwood, TN 37027

=>
  Comdata Corp.

**Cox, Juliet A.**
Sonnenschein, Nath & Rosenthal, LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111

=> Phone: (816) 460-2400  Fax: (816) 531-7545
  Aquila, Inc.*

**Cullum, Janet L.**
Cooley, Godward, Kronish, LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

=> Phone: (650) 843-5000  Fax: (650) 857-0663
  Ronald A. Katz Technology Licensing, LP*

**Devito, Daniel A.**
Skadden, Arps, Slate, Meagher & Flom, LLP
4 Times Square
New York, NY 10036

=> Phone: (212) 735-3000  Fax: (212) 735-2000
  Comerica Bank & Trust, NA*; Comerica Securites, Inc.*; Comerica, Inc.*

**Elsevier, MD, J. Patrick**
Alston & Bird, LLP
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA 30309-3424

=> Phone: (404) 881-7000  Fax: (404) 881-7777
  T-Mobile USA, Inc.*

**Ferguson, Brian E.**
McDermott, Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 20005

=> Phone: (202) 756-8371  Fax: (202) 756-8087
  21st Century Casualty Co.*; 21st Century Insurance Co.*; 21st Century Insurance Group*; AIG Annuity
  Insurance Co.*; AIG Federal Savings Bank*; AIG Life Insurance Co.*; AIG Markting, Inc.*; AIG
  Retirement Services, Inc.*; AIG SunAmerica Asset Management Corp.*; American General Assurance
  Co.*; American General Indemnity Co.*; American General Life & Accident Insurance Co.*; American
  General Life Insurance Co.*; American International Group, Inc.*; Cigna Corp.*; Cigna Health Corp.*;
  Cigna Healthcare of Delaware, Inc.*; Tel-Drug of Pennsylvania, LLC*; Tel-Drug, Inc.*; United States
  Life Insurance Co. in the City of New York*; VALIC Financial Advisors, Inc.*; VALIC Retirement
  Services Co.*; Variable Annuity Life Insurance Co.*

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | New York City Corp.*; CSC Holdings, Inc.* |
| LaSalle Bank Corporation,<br>135 LaSalle Street<br>Chicago, IL 60603 | => <br>LaSalle Bank Corp.; LaSalle Bank National Association |
| Lasalle Financial Service,<br>135 LaSalle Street<br>Chicago, IL 60603 | => <br>LaSalle Financial Services, Inc. |
| Lee, Robert L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>Ahold USA, Inc.*; Giant Food Stores, LLC*; Giant Food, LLC*; Stop & Shop Supermarket Co., LLC* |
| Lukin, Mitchell D.<br>Baker Botts, L.L.P.<br>One Shell Plaza<br>910 Louisiana<br>Houston, TX 77002-4995 | => Phone: (713) 229-1733 Fax: (713) 229-7733<br>Reliant Energy Retail Services, LLC*; Reliant Energy, Inc.* |
| Maxwell, David M.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>AOL, LLC*; CompuServe Interactive Services, Inc.*; Netscape Communications Corp.* |
| McDermott, Richard M.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1000 Fax: (704) 444-1111<br>Cinergy Corp.*; Duke Energy Corp.* |
| McElhinny, Harold J.<br>Morrison & Foerster, LLP<br>425 Market Street<br>San Francisco, CA 94105-2482 | => Phone: (415) 268-7000 Fax: (415) 268-7522<br>Target Bank*; Target Corp.*; Target National Bank* |
| McGrath, Robin L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>Safeco Corp.*#; Safeco Insurance Co. of America* |
| McKool, Jr., Mike .<br>McKool & Smith, P.C.<br>300 Crescent Court<br>Suite 1500<br>Dallas, TX 75201 | => Phone: (214) 978-4000<br>American Airlines, Inc.*; American Beacon Advisors, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Miller, Camille M.<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103 | => Phone: (215) 665-7273  Fax: (215) 701-2273<br>Wilmington Brokerage Services Co.*; Wilmington Trust Co.* |
| Moore, Matthew J.<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2402 | => Phone: (202) 783-0800  Fax: (202) 383-6610<br>Cullen/Frost Bankers, Inc.*; Ford Motor Co.*#; Ford Motor Credit Co.*#; General Electric Capital<br>Services, Inc.*#; General Electric Consumer Finance, Inc.*#; General Motors Acceptance Corp.*#;<br>General Motors Corp.*#; GMAC Residential Capital Corp.*#; Hilton H Honors Worldwide, L.L.C.*;<br>Hilton Hotels Corp.*; Hilton Reservations Worldwide, L.L.C.*; Marriott International, Inc.*; Marriott<br>Worldwide Reservation Services, L.L.C.*; PNC Financial Services Group, Inc.*#; Randall's Food &<br>Drug, L.P.*; Randall's Food Market, Inc.*; Safeway, Inc.*; Whirlpool Corp.* |
| Moyer, Jeffrey L.<br>Richards, Layton & Finger<br>P.O. Box 551<br>Wilmington, DE 19899 | => Phone: (302) 651-7525  Fax: (302) 651-7701<br>Qwest Broadband Services, Inc.*; Qwest Communications Corp.*; Qwest Communications<br>International, Inc.*; Qwest Interprise America, Inc.*; Qwest LD Corp.*; Qwest Wireless, LLC* |
| Najim, Samuel J.<br>Jones Day<br>1420 Peachtree Street<br>Suite 800<br>Atlanta, GA 30309-3053 | => Phone: (404) 521-3939  Fax: (404) 581-8330<br>Centerpoint Energy Houston Electric, LLC*; Centerpoint Energy Resources Corp*; Centerpoint Energy,<br>Inc.*; Chevron Corp.*; Chevron Credit Bank, N.A.*; Chevron Products Co.*; Experian Information<br>Solutions, Inc.*; National City Bank*; National City Bank of Indiana*; National City Corp.*; Regions<br>Bank, NA*#; Regions Financial Corp.*# |
| National Railroad Passeng,<br>60 Massachusetts Avenue, N.E.<br>Washington, DC 20002 | =><br>National Railroad Passenger Corp. dba Amtrak |
| Norrod, Gregory S.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>Sam's East, Inc.*; Sam's West, Inc.*; Wal-Mart Store, Inc.*; Wal-Mart Stores East, LP*; Wal-Mart<br>Stores Texas, LP*; Wal-Mart.com, Inc.* |
| PNC Bank, NA,<br>One PNC Plaza<br>249 Fifth Avenue<br>Pittsburg, PA 15222 | =><br>PNC Bank, N.A. |
| Petersen, Steven P.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza<br>Suite 4900<br>Chicago, IL 60601 | => Phone: (312) 616-5600  Fax: (312) 616-5700<br>Aetna, Inc.*; TDS Metrocom, LLC*; TDS Telecommunications Corp.*; United States Cellular Corp.* |
| Roodman, David A.<br>Bryan Cave, LLP<br>One Metropolitan Square<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-2750 | => Phone: (314) 259-2000  Fax: (314) 259-2020<br>Dillard Investment Co., Inc.*; Dillard's, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Rooklidge, William C.<br>Howrey LLP<br>2020 Main Street<br>Suite 1000<br>Irvine, CA 92614-8200 | => Phone: (949) 721-6900<br>Discover Bank*; Discover Financial Services, Inc.* |
| Seary, III, Marshall M.<br>Quinn Emanuel Urquhart Oliver & Hedges<br>865 South Figueroa Street<br>10th Floor<br>Los Angeles, CA 90017 | => Phone: (213) 443-3000  Fax: (213) 443-3100<br>DirecTV Enterprise, LLC*#; DirecTV Group, Inc.*#; DirecTV Holdings, LLC*#; DirecTV, Inc.*# |
| Selsberg, Steven R.<br>Mayer, Brown, Rowe & Maw, LLP<br>700 Louisiana<br>Suite 3400<br>Houston, TX 77002 | => Phone: (713) 238-2664  Fax: (713) 238-4888<br>Tracfone Wireless, Inc.*# |
| Spivey, Jonathan R.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>Caremark Inc. dba Caremark Prescription Services*; Caremark RX Inc.* |
| Standley, Jeffrey S.<br>Standley Law Group, LLP<br>495 Metro Place South<br>Suite 210<br>Dublin, OH 43017-5319 | => Phone: (614) 792-5555  Fax: (614) 792-5536<br>Delmarva Power & Light Co.*; Humana, Inc.*#; Pepco Holdings, Inc.*; PHI Service Co.* |
| Stroup, Richard L.<br>Finnegan, Henderson, Farabow, Garrett, et al.<br>901 New York Avenue, N.W.<br>Washington, DC 20001-4413 | => Phone: (202) 408-4000  Fax: (202) 408-4400<br>Federal Express Corp.*; FedEx Corp.*; FedEx Corporate Services, Inc.*; FedEx Customer Information Services, Inc.* |
| Wade, William J.<br>Richards, Layton & Finger<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 | => Phone: (302) 658-6541<br>TD Banknorth, Inc. |
| Worthington, Stayton L.<br>Coghlan Crowson, LLP<br>1127 Judson Road, Suite 211<br>Longview, TX 75606 | => Phone: (903) 758-5543  Fax: (903) 753-6989<br>American Electric Express Power Co., Inc.*; American Electric Power Co., Inc.*; American Electric Power Service Corp.; American Electric Power WR; Southwestern Electric Power Co.* |

Note: Please refer to the report title page for complete report scope and key.

IN RE: KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION
SUPPLEMENTAL SERVICE LIST

**Counsel Not Included in Panel Service List**

Robert Christopher Bunt
Robert M. Parker
Charles Ainsworth
Parker, Bunt & Ainsworth
100 E. Ferguson, Suite 1114
Tyler, TX 75702
Tel: (903) 531-3535
Fax: (903) 533-9687
**Attorneys for PNC Bank, NA; PNC
Financial Services Group, Inc.; General
Electric Capital Corporation; General
Electric Capital Services, Inc.; General
Electric Consumer Finance, Inc.,
Cullen/Frost Bankers, Inc.; The Frost
National Bank, NA**

Brian C. McCormack
Baker & McKenzie
2001 Ross Avenue, Suite 2300
Dallas, TX 75201
Tel: (214) 978-3007
Fax: (214) 978-3099
**Attorneys for Alltel Communications
Wireless, Inc.; Alltel Corporation; Alltel
Communications of Texarkana, Inc.**

Jeffrey J. Cox
Jeffrey S. Patterson
Thomas J. Adair
Harline, Dacus, Barger, Dreyer & Kern,
LLP
6688 North Central Expressway
Suite 1000
Dallas, TX 75206
Tel: (214) 369-2100
Fax: (214) 369-2118
**Attorneys for National Railroad
Passenger Corporation dba Amtrak**

**Parties Not Included on Panel Service List**

Rite Aid Corporation
Rite Aid of Delaware, Inc.
30 Hunter Lane
Camp Hill, PA 17011

The Jean Coutu Group (PJC) USA
Eckerd Corporation
Brooks Pharmacy, Inc.
Maxi Drug, Inc.
Maxi Drug North, Inc.
50 Service Road
Warwick, RI 02886

EXHIBIT 2

# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data  - March 31, 2006

1. Total requests filed since start of ex parte reexam on 07/01/81 ...................................... 7991

|   |                            |      |     |
|---|----------------------------|------|-----|
| a. | By patent owner           | 3283 | 41% |
| b. | By other member of public | 4543 | 57% |
| c. | By order of Commissioner  | 165  | 2%  |

2. Number of filings by discipline

|   |                       |      |     |
|---|-----------------------|------|-----|
| a. | Chemical Operation   | 2476 | 31% |
| b. | Electrical Operation | 2561 | 32% |
| c. | Mechanical Operation | 2954 | 37% |

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 248 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation................................................................1858   23%

5. Determinations on requests .......................................................................... 7772

   a. No. granted .................................................................................7088....................91%

   |   |                          |      |
   |---|--------------------------|------|
   | (1) | By examiner            | 6982 |
   | (2) | By Director (on petition) | 106 |

   b. No. denied ....................................................................................684......................9%

   |   |                |     |
   |---|----------------|-----|
   | (1) | By examiner  | 649 |
   | (2) | Order vacated | 35 |

6.  Total examiner denials (includes denials reversed by Director) ........................................ 755

    a.  Patent owner requester                              428            57%
    b.  Third party requester                               327            43%


7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                              22.6  (mos.)
    b.  Median pendency                               17.5  (mos.)


8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |


9.  Total ex parte reexamination certificates issued (1981 - present) .................................... 5316

    a.  Certificates with all claims confirmed          1385     26%
    b.  Certificates with all claims canceled             543     10%
    c.  Certificates with claims changes                 3388     64%


10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER .................................................... 2317

        (1)  All claims confirmed                         538     23%
        (2)  All claims canceled                          168      7%
        (3)  Claim changes                               1611     70%

    b.  Certificates _ 3rd PARTY REQUESTER ................................................. 2864

        (1)  All claims confirmed                         830     29%
        (2)  All claims canceled                          345     12%
        (3)  Claim changes                               1689     59%

    c.  Certificates _ COMM'R INITIATED REEXAM ...................................................... 135

        (1)  All claims confirmed                          17     13%
        (2)  All claims canceled                           26     19%
        (3)  Claim changes                                 92     68%


C:\WINDOWS\Temporary Internet Files\OLK7\rexstats z xp Mar2006.doc

# EXHIBIT 3

# REMARKS

## Table Of Contents

PAGE

I.    Claim Status Summary ..................................................................................41

II.   Summary of Legal Argument ........................................................................44

  A.   The Claims Must be Construed to Sustain Their Validity......................................44

  B.   Proper Application of the Law of Claim Construction in This
       Reexamination Proceeding Would Render the Claims Valid................................46

  C.   The Examiner Improperly Ignored Prosecution Histories Which Inform
       and Validate the Claim Term "Consumable Participation Key" .........................51

III.  The Rejections Under 35 U.S.C. § 102 are Improper and Should be Withdrawn.............54

  A.   General Comment................................................................................54

  B.   Governing Criteria .............................................................................54

  C.   "PRODUCT CLAIMS 1-36 and 96-207"........................................................55

       1.   Rejection of Claims 1, 4, 9, 12, 13, 18, 19, 22-24, 26, 32-34, 96-
            102, 106-108, 115, 119-123, 131, 132, 135, 137, 141-147, 150-
            153, 165, 166, 183-190, 196-200, 202, 203, and 206 as Anticipated
            by De Bruyn (SOA, page 9). ...........................................................55

       2.   Rejection of Claims 1, 4, 9, 12, 24, 137, 141, 143, 150, 151, 153,
            169, 176-178, 181, and 182 as Anticipated by Yoshizawa (SOA,
            page 25). ..............................................................................67

       3.   Rejection of Claims 1, 4, 9, 12, 24, and 25 as Anticipated by
            Emerson (SOA, page 33)..............................................................71

       4.   Rejection of Claims 96, 111-114, 183, 201, 206 as Anticipated by
            Daudelin (SOA, page 38) ............................................................74

       5.   Rejection of  Claims 26, 27, 36, 96, 97, 100, 115, 116, 119-123,
            130, 132-134 as Anticipated by Kaplan (SOA, page 43) .........................77

       6.   Rejection of Claims 169, 170, 172, 176-180 as Anticipated by
            Moosemiller (SOA, page 48)........................................................79

7.    Rejection of Claims 9, 12, 22-24, 25, 137, 141, 144-146, 150, 151,
      154, 156, and 167 as Anticipated by Barger (SOA, page 53) ...................83

D.    "PROCESS CLAIMS 37-95" ...............................................................................86

1.    Rejection of Claims 37-39, 42-54, 56-68, 70, 74-76, and 87 as
      Anticipated by Moosemiller (SOA, page 76)...........................................86

2.    Rejection of Claims 69, 84-86, and 88-93 as Anticipated by De
      Bruyn (SOA, page 85) ..............................................................................88

3.    Rejection of Claims 69, 76, 84-86, 90, 91, 94, and 95 as
      Anticipated by Yoshizawa (SOA, page 90)...............................................89

4.    Rejection of Claims 69, and 77-83 as Anticipated by Emerson
      (SOA, page 93) .........................................................................................90

IV.   The Rejections Under 35 U.S.C. § 103 are Unsupported and Should be
      Withdrawn ...........................................................................................................91

A.    Governing Criteria ...............................................................................................91

B.    "PRODUCT CLAIMS 1-36 and 96-207"...........................................................92

1.    Rejection of Claims 18, 19, 26, 32-34, 96-102, 106-108, 115, 119-
      123, 131, 132, 135, 183-190, 196-200, 202, 203, and 206 as
      Unpatentable Over De Bruyn in View of Maxon, et al., and De
      Bruyn in View of Streisand) (SOA, page 62)...........................................92

2.    Rejection of Claims 2, 3, 10, 11, 16, 109, 110, 163, 164, and 168
      as Unpatentable Over De Bruyn in View of St. Jean (SOA, page
      63)..............................................................................................................96

3.    Rejection of Claims 2, 3, 10, 11, 16, 163, 164, 168, 173-175 as
      Unpatentable Over Yoshizawa in View of St. Jean (SOA, page 64) .......98

4.    Rejection of Claims 2, 3, 10, 11, 16, 137, 154, and 156-168 as
      Unpatentable Over Emerson in View of St. Jean (SOA, page 65)..........100

5.    Rejection of Claims 173-175 as Unpatentable Over Moosemiller in
      View of St. Jean (SOA, page 67)............................................................101

6.    Rejection of Claim 5 as Unpatentable Over Any of De Bruyn,
      Yoshizawa, and Emerson, in View of Feistel (SOA, page 68)................102

- 37 -

Case 1:06-cv-00543-GMS    Document 36-4    Filed 12/20/2006    Page 51 of 77

Reexam. Nos. 90/006,978 & 90/007,074

7.    Rejection of Claims 6, 14, 15, 17, 28, 29, 103, 104, 124, 138-140,
       191-195 as Unpatentable Over De Bruyn in View of Moosemiller
       (SOA, page 69) ........................................................................................ 103

8.    Rejection of Claims 7 and 8 as Unpatentable Over Emerson in
       View of Gentile (SOA, page 71) ............................................................ 104

9.    Rejection of Claims 117 and 118 as Unptentable Over Kaplan in
       View of Gentile (SOA, page 71) ............................................................ 105

10.   Rejection of Claim 155 as Unpatentable Over Emerson in View of
       St. Jean and Gentile (SOA, page 72) ..................................................... 105

11.   Rejection of Claim 35 as Unpatentable Over De Bruyn in View of
       Flanagin (SOA, page 72) ........................................................................ 106

12.   Rejection of Claims 128, 129, and 136 as Unpatentable Over
       Kaplan in View of Emerson (SOA, page 72) ......................................... 107

13.   Rejection of Claims 170 and 172 as Unpatentable Over Yoshizawa
       in View of Moosemiller (SOA, page 73) ............................................... 108

14.   Rejection of Claim 171 as Unpatentable Over Yoshizawa in View
       of Kaplan (SOA, page 74) ...................................................................... 108

15.   Rejection of Claims 179 and 180 as Unpatentable Over Yoshizawa
       in View of Emerson (SOA, page 75) ...................................................... 108

C.  "PROCESS CLAIMS 37-95" ............................................................................ 108

1.    Rejection of Claims 40, 41, and 71-73 as Unpatentable Over
       Moosemiller in View of Hutton (SOA, page 98) ................................... 108

2.    Rejection of Claims 48-52 and 64-68 as Unpatentable Over
       Moosemiller in View of Emerson (SOA, page 99) ................................ 109

3.    Rejection of Claim 55 as Unpatentable Over Moosemiller in View
       of Flanagan (Office Action, page 101) .................................................. 109

4.    Rejection of Claims 69, 84-86, and 88-93 as Unpatentable Over De
       Bruyn in View of Maxon, et al., and De Bruyn in View of
       Streisand (SOA, page 101) ..................................................................... 110

V.    REJECTIONS ADDED BY the EXAMINER ............................................................... 112

A.  Additional Rejections to address "encoding means" arguments ......................... 112

1.     Rejection of Claim 1 as Unpatentable Over Any of De Bruyn,
       Yoshizawa, and Emerson, in View of Feistel (SOA, page 103).............. 113

2.     Rejection of Claims 2 and 3 as Unpatentable Over Each of De
       Bruyn, Yoshizawa, and Emerson, Each in View of St. Jean and
       Feistel (SOA, page 103) ......................................................................... 113

3.     Rejection of Claim 6 as Unpatentable Over De Bruyn in View of
       Moosemiller and Feistel (SOA, page 103) ............................................. 114

4.     Rejection of Claims 7 and 8 as Unpatentable Over Emerson in
       View of Gentile and Feistel (SOA, page 103) ........................................ 115

B.     Additional Rejections to address "computer-generated numbers indicative
       of sequence data" arguments ........................................................................... 115

1.     Rejection of Claims 30, 31, 105, 125-127, 204, 205, and 207 as
       Unpatentable Over De Bruyn in View of Yoshizawa (SOA, page
       108) ........................................................................................................ 116

C.     Additional Rejections to address "products carrying participation number"
       arguments ........................................................................................................ 116

1.     Rejection of Claims 37, 38, 42-51, 53-59, 64, 65, 70, 74, 76, and
       87 as Unpatentable Over Norris in View of Moosemiller (SOA,
       page 110) ................................................................................................. 117

2.     Rejection of Claims 62, 63, and 68 as Unpatentable Over Norris in
       View of Moosemiller and Further in View of Yoshizawa (SOA,
       page 110) ................................................................................................. 117

D.     Additional Rejections to address "consumable participation key" and its
       equivalents arguments ..................................................................................... 118

1.     Rejection of Claim 206 as Unpatentable Over Norris in View of
       Moosemiller (SOA, page 120)................................................................. 118

2.     Rejection of Claim 207 as Unpatentable Over Norris in View of
       Moosemiller and Further in View of Yoshizawa (SOA, page 120) ........ 119

VI.    Third Party Evidence Further Supports the Unobviousness of the Rejected Claims ...... 119

A.     Overview.......................................................................................................... 119

B.     Governing Criteria to Establish Commercial Success......................................... 120

Reexam. Nos. 90/006,978 & 90/007,074

      **C.**     Evidence of Commercial Success.....................................................................120

      **D.**     Industry Recognition and Adoption................................................................158

VII.  Conclusion ...............................................................................................................159

**APPENDIX A**.........................................................................................................161

| Examiner's Rejection (in the SOA) | Patentee's claim construction | Examiner's claim construction |
|---|---|---|
| 33. Claims 94 and 95 rejected under 35 USC 102(b) over *Yoshizawa* (p. 90)<br><br>34. Claim 68 rejected under 103(a) over *Moosemiller* in view of *Emerson* (p. 99)<br><br>Additional rejections<br><br>35. Claims 30, 31, 105, 125, 126, 204, 205, and 207 rejected under 103(a) over *De Bruyn* in view of *Yoshizawa* (p. 108)<br><br>36. Claims 62, 63, and 68 rejected under 103(a) over *Norris* in view of *Moosemiller* and further in view of *Yoshizawa* (p. 110)<br><br>37. Claim 207 rejected under 103(a) over *Norris* in view of *Moosemiller* and further in view of *Yoshizawa* (p. 120) | *(pages 55, 57, 60, 66, 71-73, 77, 98-100 of February 6 Response)* | |
| 38. Claim 25 rejected under 35 USC 102(b) over *Emerson* (p. 33)<br><br>39. Claim 25 rejected under 35 USC 102(b) over *Barger* (p. 53) | **"check digit"**<br><br>Claim 25 ; "check digit" must be interpreted for example, a key having a precise number of digits that always total a particular numerical value<br><br>*(e.g. page 65 of February 6 Response)* | **"check digit"**<br><br>Claim 25; "check digit" is interpreted as expressing a key with digits.<br><br>*(e.g. pages 38, 59, 155 and 165 of SOA)* |

**C.**    *The Examiner Improperly Ignored Prosecution Histories Which Inform and Validate the Claim Term "Consumable Participation Key"*

    An additional, and equally compelling ground, for review of the SOA is that the Examiner erred in ignoring the prosecution history in the Patent Office. As noted in TABLE 1,

the SOA rejected claims 12, 13, 17, 24, 25, 152 and 206 of the '707 patent based on interpreting "consumable participation key" as a limit that can be refreshed on a weekly basis (e.g. pages 18, 19, 30, 38, 58-59, 70-71, 113-114, 117-118, 120-121, 132-134, 144, 149, 151, 155, 158, 160, 164-166, 192-193 of SOA).  This interpretation is totally at odds with not only the prosecution of the '707 patent but also with those of related patent histories that inform on this claim term.

The meaning of a claim term is ascertained by reference to intrinsic and extrinsic sources, with the extrinsic sources being consulted only if the intrinsic sources cannot resolve ambiguity. Intrinsic sources are the claims themselves, the specification and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317, 75 USPQ.2d 1321 (Fed. Cir. 2005).  The *Phillips* Court explained:

> In addition to consulting the specification, we have held that a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980; *see also Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ("[A]n invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."). The prosecution history, which we have designated as part of the "intrinsic evidence," consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent. *Autogiro,* 384 F.2d at 399. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. *See Lemelson v. Gen. Mills, Inc.,* 968 F.2d 1202, 1206 (Fed.Cir.1992). Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent. … [T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be. *Vitronics,* 90 F.3d at 1582-83; *see also Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1384 (Fed.Cir.2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.' "), *quoting ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1580 (Fed.Cir.1988); *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed.Cir.1995).

The reason that the intrinsic evidence, the claims, specification and prosecution history, is crucial is that it is the public record of the Patentee's claim, a record on which the public is entitled to rely. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978-79, 34 USPQ2d 1321, 1329 (Fed. Cir. 1995), *aff'd* 517 US 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

Moreover, when a patent has the same or virtually identical disclosure as another patent, comments made during prosecution of either patent bear on the public's interpretation of like terms, *Depuy Orthopaedics Inc. v. Androphy*, 53 USPQ2d 1941, 1950 (N.D. Ill 2000), citing *Augustine Medical Inc. v. Gaymar Industries, Inc.*, 81 F.3d 1291, 1300, 50 USPQ2d 1900 (Fed. Cir. 1999); *Loral Fairchild Corp. v. Sony Corp.,* 50 USPQ2d 1865 (Fed. Cir. 1999) (court found support for construing plaintiff's terms used in the claims of plaintiff's method patent by examining the prosecution history of plaintiff's contemporaneous prosecution of a divisional application directed to the apparatus).

TABLE 2 (see attached at the end as APPENDIX) presents the places in the prosecution histories of the 5,561,707; 5,684,863; 6,016,344; 5,359,645; 5,365,575; 5,787,156; 5,828,734; 5,898,762; 6,035,021; 6,335,965; 6,349,134; 6,434,223; 6,449,346; and 6,512,415 patents ("Related Patents") that inform construction of the term "consumable participation key" because they either share the same priority, disclosure or specification as the '707 patent or claims to priority from a parent that shares the same disclosure and specification. A review of the prosecution history of those Related Patents with regard to the term "consumable participation key," as summarized in TABLE 2, confirms that the term must be construed to mean a finite number of uses accorded to a caller in a defined or nonrecurring period of time that once consumed are not automatically refreshed. This interpretation is the only construction consistent with the intrinsic evidence and thus must be given deference. It is not, as the references cited by the SOA teach, something that is automatically refreshed each week (see e.g. De Bruyn, page 18 of the SOA).

As further demonstrated in detail below (Section III), when the term "consumable participation key" is properly construed, claims 12, 13, 17, 24, 25, 152, and 206 of the '707 patent are patentably distinct from the references cited in the SOA. Indeed, the prosecution histories themselves show that the De Bruyn and Barger references cited were distinguished (see TABLE 3, attached at the end as APPENDIX) on the same grounds. Accordingly, reinstatement of these claims is also consistent with the presumption that the Examiner correctly performed its duties during prosecution of the teaching patents, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327, 75 USPQ 2d 1321 (Fed Cir. 2005); and with only considering new questions of patentability during a reexamination procedure rather than revisiting the same issues considered during the original prosecution (MPEP 2216).

# EXHIBIT 4

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,697 | 08/30/2005 | 5787156 | 2890-140 | 3448 |

| 35554 | 7590 | 09/08/2006 | |
|---|---|---|---|

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA  90069

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 09/08/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Martin M. Zoltick, Esq.

Rothwell, Figg, Ernst & Manbeck, PC

1425 K Street N.W., Suite 800

Washington, D.C. 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/007,697*.

PATENT NO. *5787156*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No. 90/007,697 | Patent Under Reexamination 5787156 |
|---|---|---|
| | Examiner Erik Kielin | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on _____ .          b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.        3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO-1449.              4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-54* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☒ Claims *2-5,7-9,11,23 and 28-54* are patentable and/or confirmed.

4. ☒ Claims *1,6,10,12-22 and 24-27* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

      a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

      1☐ been received.

      2☐ not been received.

      3☐ been filed in Application No. _____ .

      4☐ been filed in reexamination Control No. _____.

      5☐ been received by the International Bureau in PCT application No. _____.

      * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/007,697                                    Page 2
Art Unit: 3992

## DETAILED ACTION

### *References*

(1) Article by Eileen Norris entitled "Phone offers action at push of button," in <u>Advertising Age</u>, February 6, 1986 (*Norris*, hereafter)

(2) Article by Yoshizawa et al. entitled "Voice Response System for Telephone Betting" in <u>Hitachi Review</u> 26(6), June 1977, pp. 215-220 (*Yoshizawa*, hereafter)

(3) US 4,797,911 to Szlam et al. (*Szlam*, hereafter)

(4) US Patent No. 3,622,995 to Dilks et al. entitled "Automatic Ticket/Credit Card Check-In System," filed March 21, 1969 (*Dilks*, hereafter)

(5) Article by Moosemiller entitled "AT&T's Conversant™ I Voice System" in <u>Speech Technology</u>, Mar/Apr 1986, pp. 88-93 (*Moosemiller*, hereafter)

(6) US Patent No. 4,922,519 to Daudelin entitled "Automated Operator Assistance Calls With Voice Processing" filed September 30, 1988, which is a continuation of Serial No. 860,651 filed May 7, 1986 (*Daudelin*, hereafter)

(7) An industry report published by The Yankee Group entitled "Cable and the Telcos: From Confrontation to Détente," pp. 162-167 (June 1983), (*Yankee*, hereafter).

(8) Patent No. US 4,755,872 to Bestler et al. entitled "Impulse Pay Per View System and Methods" filed July 29, 1985 (*Bestler*, hereafter).

(9) The Voice, VCT Quarterly Newsletter, vol. 2, no. 3, Winter 1987 (*VCT*, hereafter).

(10) US Patent No. 3,725,956 to Maxon et al. entitled "PBX Automatic Number Identification System," filed November 12, 1971 (*Maxon*, hereafter).

(11) US Patent No. 4,438,824 to Mueller-Schloer entitled "Apparatus and Method for Cryptographic Identity Verification," filed April 22, 1981 (*Mueller*, hereafter)

Application/Control Number: 90/007,697                          Page 3
Art Unit: 3992

### Table of Contents

*Status of Patent Being Reexamined*                                         p. 4

   Narrowed claim construction of "consumable key number"          p. 4

*Priority Date for various claim features*                                   p. 5

   *1. The feature "consumable key number" has **two different
priority dates***                                                           p. 5

   *2. ANI and DNIS has an earliest effective priority date of 16 May 1988*   p. 8

*Rejections*                                                                p. 9

   *35 USC 102*

      1. Claims 10, 14, and 20-22 over *Norris*                      p. 9

   *35 USC 103*

      2. Claims 1 and 6 over *Yoshizawa* in view of *Szlam*          p. 13

      3. Claims 10, 12, 13, 17, 20-22, and 24-26 over *Dilks*
in view of *Yoshizawa*                                                      p. 17

      4. Claims 15 and 16 over *Dilks* in view of *Yoshizawa* and
further in view of *Moosemiller*                                            p. 24

      5. Claims 18 and 19 over *Dilks* in view of *Yoshizawa* and
further in view of *Moosemiller*                                            p. 25

      6. Claim 27 over *Dilks* in view of *Moosemiller*             p. 26

*Examiner's Response to Rejections Proposed in the Request*                  p. 32

*Statement of Reasons for Patentability and/or Confirmation*                p. 36

*Conclusion*                                                               p. 38

*Exhibit A*                                                                p. 40

Application/Control Number: 90/007,697                                    Page 4
Art Unit: 3992

### Status of Patent Being Reexamined

The patent being reexamined is US 5,757,156 to Ronald Katz (the '156 patent, hereafter). The '156 patent expired on 20 December 2005 by terminal disclaimer. With respect to expired claims under reexamination, MPEP 2258(G) states in pertinent part,

> G. Claim Interpretation and Treatment
>
> In a **reexamination proceeding involving claims of an expired patent,** which are not subject to amendment, a **policy of narrow construction** should be applied. Such a policy **favors a construction of a patent claim that will render it valid;** i.e., a **narrow construction,** over a broad construction that would render it invalid. See *In re Papst-Motoren*, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986). (Emphasis added.)

However, there exist prohibitions to the *Papst-Motoren* rule.

> "It is recognized that the *Papst-Motoren* rule is **limited** by the prohibition against **reading limitations from the specification into the claims,** apart from the need to interpret **what the patentee meant by the words** of the claims." *Ex parte Bowles*, 23 USPQ2d 1015 (BPAI 1991) and the prohibition against **revising or ignoring the explicit language** of the claims. *Elekta Instrument S.A. vs. O.U.R. Scientific International, Inc.,* 214 F3d 1302, 1309 (Fed. Cir. 2000). (Emphasis added.)

Accordingly, a narrow claim construction is the standard, but such construction must avoid the prohibitions of (1) "reading limitations from the specification into the claims", and (2) "revising or ignoring the explicit language of the claims".

### Consumable Key Number

The term "consumable key number" or equivalent "consumable participation key" is particularly at issue in this and related proceedings and is therefore being discussed. Given the requirement for narrow construction, the term consumable key number is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history of the term in related applications and proceedings.

The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key", which in the context of the claims of the '156 patent is synonymous with "consumable key number". The Court construed "consumable key number" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged**." (*Katz et al. v. AT&T Corp. et al.*, 63 F.supp.2d 623). Although not binding on the Office during reexamination proceedings, it is noted that the Courts

give terms a narrower construction (rather than a broad construction) consistent with the specification and therefore provide guidance in interpreting what "patentee means by the words of the claims", as consistent with *Ex parte Bowles, supra.*

Similarly, Patent Owner has argued in a reexamination proceeding directed to a related patent (US 5,255,309, proceeding nos. 90/006,976 merged with 90/007,092) a definition consistent with the finding of the Court, as above. In this regard, in a response filed after final in the reexamination proceedings, 90/006,976 merged with 90/007,092, Patent Owner presents a compilation of the prosecution history in related applications directed to the meaning of the term "consumable participation key". In each instance, Patent Owner argues a meaning consistent with the Court, above. (See Patent Owner's Response in proceeding 90/007,092 filed 5 June 2006 pages 104-124 which is attached herein as Exhibit A.)

With the above in mind, then, the narrowed construction of the term "consumable participation key" or equivalent "consumable key number" is that meaning given by the Court above. The consumable key number cannot ever --for any reason-- be refreshed or recharged or renewed once the predefined number of uses have been used --not even if the consumable key number is implemented using a use-rate calculator.

### Priority Date for various claim features

*1. The feature "consumable key number" has* **two different priority dates**

Requester argues that the feature "consumable key number" has an earliest priority date of 16 May 1988 (Request, beginning at p. 12, last sentence). In this regard, the Request states (bold emphasis added),

> With respect to the limitation of a **consumable key number** recited in the claims of the '156 patent, this limitation only finds support in the benefit applications dating back to May 16, 1988. The earliest benefit applications, including application Serial No. 018,244, filed February 24, 1987, now U.S. Patent No. 4,792,968 ("the '968 patent"), which is a continuation-in-part of application Serial No. 753,299 ("the '299 application"), filed July 10, 1985, now abandoned, **do not provide support for the scope and the meaning of this claim term as recited in the '156 claims**, or as determined by the court in *Katz et al. v. AT&T Corp. et al.*, 63 F.supp.2d 583 (E.D.Pa. 1999). Attached to this request as Appendix F are copies of the '968 patent and the '299 application.
>
> ...
>
> The specifications of the earliest benefit applications, namely, the '299 application and the '968 patent, refer to a consumable key number in the context of selecting a group of callers, or polling or surveying a select group of callers. Callers use a "key number" to access a telephonic system, such as for polling or

# EXHIBIT 5

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/006,978 | 03/26/2004 | 5561707 | 6646-140EERE | 3470 |

35554     7590     09/29/2006

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA  90069

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 09/29/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

## 1. Narrowed interpretation of "consumable participation key"

In the first row, center col. of Table 1 on pp. 46-47, Patent Owner argues that the feature, "consumable participation key" "must be interpreted as a finite number of uses accorded to a caller in a defined or a non-recurring period of time that once consumed are not automatically refreshed by the system".

The term "consumable participation key" has been particularly at issue in this and related proceedings. Given the requirement for narrow construction, the feature "consumable participation key" is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history in related applications for patent.

The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged**" (*Katz et al. v. AT&T Corp. et al.*, 63 F.supp.2d 623). Although not binding on the Office during reexamination proceedings, it is noted that the Courts give terms a narrower construction (rather than a broad construction) consistent with the specification and therefore provide guidance in interpreting what "patentee means by the words of the claims", as consistent with *Ex parte Bowles, supra.* Given that the '707 patent has expired, the claims are to be construed narrowly rather than broadly (MPEP 2258(I)(G)), so the Court's narrow interpretation is considered particularly relevant here.

During the prosecution of related applications, Patent Owner has argued a definition consistent with the finding of the Court, as above. In this regard, Patent Owner presents a compilation of the prosecution history in related applications for patent directed to the meaning of the term "consumable participation key". In each instance, Patent Owner argues a meaning consistent with the Court, above. (See Patent Owner's Response filed 17 July 2006, pages 161-194, "Appendix A".)

With the above in mind, then, the narrowed construction of the term "consumable participation key" is taken to be that given by the Court, *supra*. Consistent with the narrowed interpretation resulting from the expiration of the patent, the consumable key number **cannot ever --for any reason-- be refreshed or recharged or renewed once the predefined number of uses have been used --not even if the consumable key number is implemented using a use-rate calculator**.

*1. None of De Bruyn, Yoshizawa, Emerson, and Daudelin disclose the feature, "consumable participation key" consistent with the narrowed interpretation*

Although each of *De Bruyn* and *Yoshizawa* provide participation key numbers (the telephone number and/or secret code in *De Bruyn* and the customer number and/or password in *Yoshizawa*) limiting use of the IVR (interactive voice response) systems, the participation key numbers providing access are automatically refreshed on a given period, each week in *De Bruyn* (*De Bruyn*, p. 5, lines 11-19)

and each day in *Yoshizawa* (*Yoshizawa*, p. 219, left-hand col., first ¶). Because the participation key numbers are refreshed, they are not consumable participation keys within the narrowed meaning discussed above.

> Similarly, *Daudelin* provides a participation key, as a calling card number, but the calling card can be refreshed by paying the telephone bill.

This position is consistent with Patent Owner's arguments in the Response at pages 43-46 (directed to *De Bruyn*), 56-57 (directed to *Yoshizawa*) and 61, last paragraph (directed to *Daudelin*).

*Emerson* provides a participation key, as an access code to the IVR system, but the participation key is not consumed and therefore fails to read on the narrowed interpretation.

*2. Norris discloses a "consumable participation key" consistent with the narrowed interpretation*

Notably Patent Owner has included *Norris* in the list of references and **incorrectly** indicated that Examiner indicates that *Norris's* consumable participation key is refreshable when it is abundantly clear from *Norris* that the PIN can be used only one time and never again and is therefore **not refreshable**.

*Norris* states,

> Dial Info also is preparing a promotion for a cereal marketer that features a telephone sweepstakes. Consumers will use a toll-free line to **call in a personal identification number that has been placed in each box of cereal**. The computer will announce whether the number wins a prize. The computer will announce whether the number wins a prize. "Again, this idea focuses on the instant win possibility and instant gratification of the telephone," Mr. Hertel says. "But the really nice part of this idea is that **the computer will be able to keep track of the personal identification numbers so that if someone tries to call in a second time with the same number the computer would merely inform the caller the number has already been used**. That would encourage consumers to make more purchases of the product." (*Norris*, p. 2, 2[nd] col.)

**The "personal identification number" reads on the "consumable participation key" because it can only be used one time and is then "consumed".** Accordingly, Patent Owner's Table 1 is in error in this regard.

EXHIBIT 6

# REMARKS

## Table Of Contents

|  |  | PAGE |
|---|---|---|
| I. | Claim Status Summary | 16 |
| II. | Summary of Legal Argument | 17 |
| A. | The Claims Must be Construed to Sustain Their Validity | 17 |
| B. | Proper Claim Construction in This Reexamination Proceeding Would Render Rejected Claims Valid | 18 |
| C. | Prior Prosecution Histories Inform and Validate Claim Terms, for example, "Consumable Key Number" and "Sequence" | 19 |
| III. | The Rejections Under 35 U.S.C. § 102 Are Unsupported and Should Be Withdrawn | 20 |
| A. | Governing Criteria | 20 |
| B. | Rejection of Claims 10, 14, and 20-22 are Rejected Under 35 U.S.C. 102(b) as Anticipated by Norris (FOA, page 9). | 21 |
| 1. | The meaning of a "consumable key number" is established (by the Court, by prior prosecution histories, and by the Examiner as indicated in the OA) given the requirement for narrow construction. | 21 |
| 2. | It is improper to accord the term "consumable key number" two different priority dates simply on the basis of whether the "predefined limited number of uses" is a single or plural uses. | 23 |
| IV. | The Rejections Under 35 U.S.C. § 103 Are Unsupported and Should Be Withdrawn | 25 |
| A. | Rejection of Claims 1 and 6 over Yoshizawa in view of Szlam (FOA, page 13) | 25 |
| B. | Rejection of Claim Claims 10, 12, 13, 17, 20-22, and 24-26 over Dilks in view of Yoshizawa (FOA, page 17) | 28 |
| C. | Rejection of Claims 15 and 16 Under Dilks in view of Yoshizawa and further in view of Moosemiller(FOA, page 24) | 32 |
| D. | Rejection of Claims 18 and 19 Under Dilks in view of Yoshizawa and further in view of Szlam (FOA, page 25) | 33 |
| E. | Rejection of Claim 27 Under Dilks in view of Moosemiller (FOA, page 26) | 34 |
| V. | Third Party Evidence Further Supports the Non-obviousness of the Rejected Claims | 35 |
| A. | Overview | 35 |
| B. | Governing Criteria to Establish Commercial Success | 35 |
| C. | The Prepaid Calling Card Industry, Credit Card Activation and Telephone Gaming Industry Have Commercially Benefited from the Inventions Claimed in the '156 Patent | 36 |
| D. | Nexus | 38 |
| E. | Industry Adoption and Licensing Success | 60 |
| VI. | Conclusion | 61 |

*Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education and Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003); *Rosco, Inc. v. Mirror Lite Co.*, 120 Fed. Appx. 832, 836 (Fed. Cir. 2005); *Animatics Corp. v. Quicksilver Controls, Inc.*, 102 Fed. Appx. 659, 670-71 (Fed. Cir. 2004). Respectfully, with respect to the claims rejected under 35 U.S.C. Section 102(b), the Patentee traverses the rejections and demonstrates below that the asserted art does not pre-date the Patentee's own earlier disclosure. With this response, the Patentee discloses a Declaration by Mr. Jerry Klein under Rule 132, an expert in the combined field of computers and telephony (Klein V, signed October 23, 2006). References to this declaration are made in the following arguments.

      B.    <u>Rejection of Claims 10, 14, and 20-22 are Rejected Under 35 U.S.C. 102(b) as Anticipated by Norris (FOA, page 9).</u>

In paragraph 1 of the office action, claims 10, 11, 14, and 20-22 are rejected under 35 U.S.C. 102(b) as being anticipated by the article by Eileen Norris entitled "Phone offers action at push of button," in Advertising Age, February 6, 1986. The Examiner has rejected these claims based on the premise that Norris (published 6 February 1986) pre-dates the "apparent" broadening disclosure "consumable key number to limit access...to a limited number of uses" in the application that became the '968 patent. The Examiner indicates that therefore, Norris qualifies as prior art under 35 U.S.C. 102(b) relative to at least claims 10, 14 and 20.

The Patentee assumes that the mention of claim 11 is an inadvertent error because claim 11 is indicated as patentable and confirmed on the summary page of this office action.

The Patentee demonstrates below why Norris is <u>not</u> prior art to at least claims 10, 14, and 20-21. Each of these claims is supported by the disclosure in the '299 application (July 1985) as also established in the expert declaration (see Klein V, paragraphs 12-20).

      1.    <u>The meaning of a "consumable key number" is established (by the Court, by prior prosecution histories, and by the Examiner as indicated in the OA) given the requirement for narrow construction.</u>

Claims 10, 14 and 20-22 include the limitation "consumable key number." The Examiner has indicated that this term as well as any equivalents should be construed in light of

the specification, the Markman hearing, and the prosecution histories of the term in related applications and histories. The Court's definition is, "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and which cannot be refreshed or recharged." (*Katz et al. v. AT&T Corp. et al., 63 F.supp. 2d 623*). The Examiner has indicated that:

> [g]iven the requirement for narrow construction, the term consumable key number is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history of the term in related applications and proceedings.

> The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key", which in the context of the claims of the '156 patent is synonymous with "consumable key number". The Court construed "consumable key number" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged.**" (*Katz et al. AT&T Corp. et al. 63 F.supp.2d 623*). Although not binding on the Office during reexamination proceedings, it is noted that the Courts give terms a narrower construction (rather than a broad construction) consistent with the specification and therefore provide guidance in interpreting what "patentee means by the words of the claims", as consistent with Ex parte Bowles, supra.

> Similarly, Patent Owner has argued in a reexamination proceeding directed to a related patent (US 5,255,309, proceeding nos. 90/006,976 merged with 90/007,092) a definition consistent with the finding of the Court, as above. In this regard, in a response filed after final in the reexamination proceedings, 90/006,976 merged with 90/007,092, Patent Owner presents a compilation of the prosecution history in related applications directed to the meaning of the term "consumable participation key". In each instance, Patent Owner argues a meaning consistent with the Court, above. (See Patent Owner's Response in proceeding 90/007,092 filed 5 June 2006 pages 104-124 which is attached herein as Exhibit A.)

This definition clearly establishes that a consumable key number allows access to a service or a part of a service **a predefined limited number of times,** which cannot be refreshed or recharged (emphasis by bold added). Therefore, the term "consumable key number" in claims 10, 14 and 20-22 must be construed as a predefined limited number of times, which would include any unspecified number of uses (including a single or plural uses).

:

# EXHIBIT 7



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

11/6/06

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

MARTIN M. ZOLTICK, ESQ.

ROTHWELL FIGG ERNST & MANBECK PC

1425 K STREET, NW, SUITE 800

WASHINGTON, DC  20005

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/007697

PATENT NO.   5,787,156

ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,697 | 08/30/2005 | 5787156 | 2890-140 | 3448 |

35554     7590     10/12/2006

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA  90069

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 10/12/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

| *Ex Parte Reexamination Interview Summary* | Control No. 90/007,697 | Patent Under Reexamination 5787156 | |
|---|---|---|---|
| | Examiner Erik Kielin | Art Unit 3992 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) _Erik Kielin_

(2) _Mark Reinhart_

(3) _Reena Kuyper_

(4) _Tom Pardini_

Date of Interview: _12 October 2006_

Type:  a)☐ Telephonic   b)☐ Video Conference
       c)☒ Personal (copy given to: 1)☐ patent owner   2)☐ patent owner's representative)

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☐ No.
    If Yes, brief description: _____

Agreement with respect to the claims  f)☐  was reached.  g)☒  was not reached.  h)☐  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to..."

Claim(s) discussed: _1,10 and 27_.

Identification of prior art discussed: _Norris, Dilks, and Moosemiller_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims
patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims
patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S
STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MEPP § 2281). IF A RESPONSE TO THE
LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS
INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW
(37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS
OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

cc: Requester (if third party requester)

MARK J. REINHART
SPRE-AU 3992

Examiner's signature, if required

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:  (1) Examiner agreed to consider Patent Owner's position that the original specification has support for the genus of the feature, "consumable key number", not just the species of "consumable key number" limiting a caller to a one time use only. (2) Patent Owner pointed out that Norris would not qualify as prior art based upon the reasoning in (1). (3) Examiner agreed to consider Patent Owner's position that Dilks is not an IVR system. (4) In regard, to (3) Examiner pointed out that that an agent interacted with the airline reservation system on behalf of the telephone caller, when reservations were made or changed in Dilks. (5) Examiner also pointed out that a potential passenger could make reservations, check in, etc. using an automated ticketing booth within the airport using the automated airline reservation system in Dilks .

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:06-cv-00543-GMS |
| RELIANT ENERGY, INC., RELIANT ENERGY RETAIL SERVICES, LLC; PEPCO HOLDINGS, INC.; PHI SERVICE COMPANY; DELMARVA POWER & LIGHT COMPANY; DUKE ENERGY CORPORATION; CINERGY CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER

On this ____ day of _____, 2007, came for consideration Defendants' Motion to Stay Action Pending the U.S. Patent and Trademark Office's Reexamination of Plaintiff's Patents. Having reviewed Defendants' Motion and Brief, Ronald A. Katz Technology Licensing L.P.'s Response thereto, and Defendants' Reply, the Court is of the Opinion that Defendants' Motion should be granted and this case stayed at least until the PTO's reexamination of patents assigned to Ronald A. Katz Technology Licensing L.P. is complete.

IT IS THEREFORE ORDERED that Defendants' Motion for a stay is GRANTED.

Accordingly, all aspects of this case are stayed.

SO ORDERED on this _____ day of _____, 2007.

_____
THE HONORABLE GREGORY M. SLEET
U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Joanne Ceballos, hereby certify that on the 20th day of December 2006, the foregoing Defendants' Motion to Stay Action Pending the U.S. Patent and Trademark Office's Reexamination of Plaintiff's Patents was filed electronically with the Clerk of Court and served via hand delivery to:

> Mary B. Graham, Esquire
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

Joanne Ceballos